UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| In re:<br><br>CONTINENTAL AMERICAN CORPORATION<br><br>DEBTOR. | CASE NO.: 23-10938-11 |
|---|---|
| In re:<br><br>PIONEER NATIONAL LATEX, INC.<br><br>DEBTOR. | CASE NO.: 23-10939-11 |

## DEBTORS' MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL AND PAYMENT OF ADEQUATE PROTECTION

### Concise Statement

Debtors Continental American Corporation ("CAC") and Pioneer National Latex, Inc. ("PNL") ("Debtors"), by and through their counsel Prelle Eron & Bailey, P.A., move the Court pursuant to 11 U.S.C. §363(c) for entry of a preliminary order authorizing the Debtors' use of cash collateral in the interim period prior to confirmation of a Plan of Reorganization. Debtors request that the Court authorize the Debtors to use their inventory, receivables, cash, cash equivalents, and proceeds generated by the sales of Debtors' goods and services (collectively "Cash Collateral") in the ordinary course of business in the amounts specified herein for the Debtors' immediate needs in funding their ongoing operations. In particular, Debtors, together with other subsidiaries and affiliates as reflected on **Exhibit 1**, must continue to pay for their regular expenses, including costs of goods, wages, leases, utilities, taxes, administrative expenses, and other ordinary operational costs. The Cash Collateral represents the only source of capital sufficient to fund these expenses.

White Oak Commercial Finance, LLC ("White Oak") holds a senior blanket security interest in and to the Debtors' Cash Collateral, together with a significant portion of the Debtor's

fixed assets (collectively the "Collateral"). CIBC Bank USA ("CIBC") also holds a blanket security interest in and to the Debtors' Cash Collateral, which is second to the lien of White Oak (and has been modified to eliminate a number of items). CIBC's claim of approximately $3.8 million is primarily secured by a lien on real estate owned by one of CAC's non-filing, non-subsidiary affiliates, Vlamis Enterprises Wichita, LLC ("VEW"), which holds a value of approximately $8.0 million. CIBC's claim is not impacted by the cases herein, and it will continue to receive payment post-petition through lease payments rendered by CAC to VEW for occupancy of the real estate. Finally, VFI KR SPE I, LLC ("VFI") holds a blanket security interest in and to the Debtors' Cash Collateral, as well as other personal property. White Oak holds a claim in the amount of approximately $7.7 million. VFI holds a claim in the amount of approximately $2.6 million.

The Cash Collateral pledged to White Oak and VFI has a present value of $34,948,183.00. Moreover, as reflected on **Exhibit 2**, the Debtors have a net equity position of approximately $30 million, inclusive of all assets and liabilities of CAC and all of its subsidiaries. Put simply, all creditors secured by the Cash Collateral hold equity cushions of more than 500%. When combined with the Debtors' other unencumbered assets, direct and indirect, the use of Cash Collateral by the Debtors will present no risk of loss to any secured creditor. This alone constitutes adequate protection.

Debtors are seeking to use approximately $17 million of cash collateral during the next 13 weeks ("Specified Period"), the use of which will directly benefit CAC and VFI by providing care and maintenance for their remaining Collateral and generating new Cash Collateral. Debtors anticipate that during the Specified Period, the net impact on Cash Collateral will be a reduction of approximately $3.25 million, but by the end of the Specified Period, Debtor will be operating

on a cash neutral basis and will be ready to reorganize its operations. In summary, all secured creditors will be assured to collect the full amount owed to them. Debtors further propose to provide White Oak, CIBC, and VFI with replacement liens on all future Cash Collateral, coupled with a Superpriority Administrative Claim, subject to a $150,000.00 professional fee Carve Out.

The material terms of the relief requested are set forth in paragraph 13 herein. In support of the Motion, the Debtors state the following:

### Jurisdiction and Venue

1.      This Court has jurisdiction of this Motion pursuant to 28 U.S.C. Sec. 1334. This matter is a core proceeding within the meaning of 28 U.S.C. Sec. 157. Venue is proper in this Court pursuant to 28 U.S.C. Secs. 1408 and 1409.

### Facts

1.      On September 22, 2023 ("Petition Date"), the Debtors filed their Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code. No chapter 11 trustee has been appointed herein. No creditors committee has been appointed herein. Debtors are debtors-in-possession.

2.      Debtors own and operate a multinational balloon business. Debtors' business is the oldest balloon company in the world and headquartered in Wichita, Kansas, with multiple plants across the United States and additional locations in Canada, Mexico, Brazil, Australia, and the United Kingdom. A complete corporate map is attached hereto as **Exhibit 1**. The Debtors affiliates and subsidiaries are critical components of the Debtors' business, but most of them are not debtors herein at this time. The Debtors intend to reorganize their business and restructure their liabilities.

3.      In order to reorganize their business and restructure their liabilities, Debtors must continue to pay their ongoing expenses for vendors, leases, labor, utilities, maintenance and repairs, professionals, and other ordinary operational costs.

4.      The Debtors seek authority to use income generated by the Debtors from the collection of accounts receivables and the sales of inventory ("the Cash Collateral"), all of which has been pledged to White Oak Commercial Finance, LLC ("White Oak"), among others, during the Specified Period (as defined in more detail below), in a manner consistent with the Debtors' budget attached hereto as **Exhibit 3** ("the Budget").

5.      The Debtors propose to deposit the Cash Collateral into the Debtors' existing bank accounts consistent with its pre-petition practices. Debtors request that all creditors deliver any proceeds from Debtors' ordinary operations and/or sales to Debtors, and endorse any Cash Collateral checks on which any of them are jointly listed as a payee so that such payments and proceeds may be deposited into the Debtors' bank accounts.

6.      Debtors shall grant a replacement lien and post-petition lien on post-petition assets to White Oak, CIBC, and VFI. Such replacement liens and continuing liens shall be in proportion to and to the extent that the Cash Collateral is used by Debtors on a post-petition basis, and in the same order and priority as such liens existed on the Petition Date. No secured creditor shall receive an improvement in position as a result of the liens granted hereunder. Nor shall any secured creditor have its claim subordinated nor its existing liens impaired by an order granting this Motion.

7.      Below is a summary of the nature of the Debtors' request and proposed use of Cash Collateral:

a.      <u>Parties with Interest in Cash Collateral and Value of Collateral</u>. White Oak asserts that it has a properly perfected first-priority security interest in the Cash Collateral,

as well as all other equipment, furniture, personal property, and other assets of the Debtors as included in White Oak's loan documents and UCC-1 filings (collectively the "Collateral"). CIBC appears to hold a properly perfected second priority security interest in the Collateral, subject to certain items in which CIBC released its security interest. CIBC is wholly secured by real property assets of VEW and has no risk of non-payment of its claims. VFI appears to hold a properly perfected third priority security interest in the Collateral Other creditors may assert first priority purchase money security interests in specific items of equipment, but none of these PMSI lienholders have any interest in Cash Collateral. As of the Petition Date, White Oak claims that the balance due to White Oak by Debtors was approximately $7.7 million. As of the Petition Date, VFI claims that the balance due to VFI by Debtors was at least $2.6 million.[1] Debtors believe that the current fair market value of its equipment and rolling stock, net of PMSI claims, is approximately $3.6 million. Debtors' Cash Collateral is collectively valued at approximately $14,252,752.00 for receivables and $20,695,431.00 for inventory. Debtors reserve the right to modify these values based on evidence presented at trial, if necessary.

b. <u>Use of Cash Collateral</u>. The Debtors seek authority to use Cash Collateral to pay expenses of their operation in accordance with the Budget, up to amounts not to exceed 125% of each line-item amount set forth in the Budget measured monthly, with a variance of up to two months for each monthly expense. The cumulative total amount set forth in the Budget shall be subject to 15% cumulative variance, except a) on account of moving an expense forward or backward by the two-month variance, in which case the monthly expense cap shall be considered cumulatively among the affected months, b) by agreement of White Oak, VFI, and Debtors, or c) as may be otherwise ordered by the Court. The consent of White Oak, VFI, and/or Debtors may be provided by and through counsel for each.

c. <u>Termination Date</u>. Debtors seek interim authority to use Cash Collateral only until a final hearing can be held. Thereafter, and subject to the Debtors' right to request additional cash collateral authority for further periods on proper notice, the Debtors seeks authority to use Cash Collateral through December 22, 2023, at 11:59 p.m. (the "Specified Period"). The Specified Period may be extended by agreement of the Debtors, White Oak, and VFI, or upon further order of the Court. It is anticipated that White Oak, CIBC, and VFI will be adequately protected during the Specified Period by virtue of a post-petition replacement lien in the Debtors' assets to the extent of any Cash Collateral used by the Debtors, in and to the same forms

---

[1] This does not include VFI's lease claim associated with HP equipment, which is being treated as a true lease, and is included for payment in the Budget.

of property to which the liens had attached pre-petition, and in the same order and priority as such liens currently exist. Such liens shall be of the same nature, extent, and validity as existed on the Petition Date. Nothing hereunder shall entitle any creditor to improve its position from its position on the Petition Date. Nothing herein or in any order authorizing use of Cash Collateral through the Specified Period shall prejudice any creditor's right to petition the Court to prohibit or restrict use of Cash Collateral.

d. <u>Events of Default</u>. The occurrence of any of the following events, unless waived in writing by White Oak, CIBC, and VFI shall constitute an event of default (the "Events of Default"):

1) the entry of an order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any of the Collateral, other than forms of Collateral in which such moving party has a senior priority lien;

2) dismissal of the case or conversion of the case to Chapter 7 case;

3) the sale after the Petition Date of any portion of any of the Debtors' assets outside the ordinary course of dealing and without approval by the Court under 11 U.S.C. §363;

4) the failure by the Debtors to perform, after notice from White Oak, CIBC, or VFI, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under the Order granting this Motion.

e. <u>Rights and Remedies Upon an Event of Default</u>. If the Debtors default in their financial, reporting or other obligations under the terms of the Order granting this Motion, then the Subchapter V Trustee, the United States Trustee, White Oak, CIBC, or VFI may, but shall not be required to, deliver a written Notice of Default to the Debtors by e-mail delivery of such Notice of Default to each of the Debtors' counsel of record, with copies of the Notice of Default also being emailed to counsel for White Oak, CIBC, and VFI (if not the party that delivers such Notice of Default). The Debtors and the party asserting the default shall attempt in good faith to informally resolve or rectify the default. If the Debtors and the objecting party are unable to informally resolve the default within five (5) business days of the delivery of the Notice of Default ("**Resolution Period**") then the Debtors' authority to use Cash Collateral as authorized by the Order granting this Motion

shall cease two (2) business days after the expiration of the Resolution Period, unless, prior to that date, the Debtors either (a) cure the Notice of Default to the satisfaction of the party sending the Notice of Default, or (b) file a motion with the Court requesting that its authority to use Cash Collateral continue, and obtain and notice out a hearing on the motion for a date that is no more than 14 days from the date of filing of the motion, or at the first available date thereafter if the Court's calendar will not accommodate a hearing within such period. If such a motion is filed with the Court and noticed out for hearing as required herein, then the Debtors' authority to use and spend Cash Collateral pursuant to the terms of the Order granting this Motion shall continue pending the Court's decision on the motion.

f.   <u>Adequate Protection</u>.

1)   Debtors assert that they will generate post-petition receivables and inventory, together with cash and deposit account balances, in an amount sufficient to maintain an equity cushion in an amount that will be more than sufficient to protect all parties secured by the Cash Collateral. As partial adequate protection, White Oak, CIBC, and VFI shall be granted a valid, automatically perfected replacement lien against the assets of the Debtors, for the full amount of the Cash Collateral which is utilized pursuant to the Order granting the Motion. The replacement liens shall have the same validity, avoidability and priority as the security interests and liens existing against the Cash Collateral as of the date of the Order on this Motion. The replacement liens shall be declared to be valid and perfected without the need for the execution, recording or filing of any further document or instrument or the taking of any further act otherwise required under non-bankruptcy law. Any statements or filings required to be filed to preserve or extend any lien held by White Oak, CIBC, or VFI may be filed or recorded at any time during the pendency of this case without a stay relief order or otherwise seeking or obtaining the permission of the Court.

2)   White Oak, CIBC, and VFI, in that order and priority, for their benefit, shall receive, (i) an additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interest in and lien (the "Post-Petition Adequate Protection Liens") on any and all presently owned and hereafter acquired personal property and all other assets of the Debtors and their estate, together with any proceeds thereof, including, without limitation, as set forth in the loan documents; (ii) to the extent provided by Sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in

the case and any Successor Case (the "Senior Adequate Protection Superpriority Claims"); and (iii) payments from the proceeds from the auction or sale of its Collateral (other than Cash Collateral) at the closing of the sale of any such transaction, with such payments to be made to each according to their relative priority in the assets as of the Petition Date.

g.  <u>Priority of Post-Petition Adequate Protection Liens and Adequate Protection Superpriority Claim</u>.  The Post-Petition Replacement Adequate Protection Liens granted herein shall have the same priority as the priority that each secured creditor enjoyed in the Debtors' assets as of the Petition Date, and nothing set forth herein is intended to grant White Oak, CIBC, and VFI or any other creditor a priming lien on or security interest in the Debtors' assets and property.  Further, except for the Carve Out, the Adequate Protection Superpriority Claims, in the respective order of their priority, shall have priority over all administrative expenses and unsecured claims against the Debtors and their estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code and, upon entry of the Final Order, the Senior Adequate Protection Superpriority Claim shall have priority over all claims pursuant to Section 506(c) of the Bankruptcy Code.

h.  <u>Carve Out</u>.  "Carve Out" means the following, in an amount not to exceed $150,000.00:

   1)  the allowed professional fees and disbursements for the Debtors' professionals in these cases; and

   2)  the allowed professional fees and disbursements for the professionals of any committee of general unsecured creditors appointed herein; and

   3)  any statutory fees of the United States Trustee; and

   4)  any costs of sale associated with the sale of the Collateral, including broker commissions, marketing fees, property taxes, escrow fees, recording costs, and similar expenses, to the extent authorized by any §363 order approving of such sales.

The Carve Out shall not constitute a limitation on any of the foregoing expenses and costs of the Estates, but shall merely constitute a maximum amount of such

costs that may take priority over the Senior Adequate Protection Superpriority Claims.

i. <u>Liens on Avoidance Actions</u>. From and after the date of entry of the Final Order, "Collateral" shall also include all proceeds of actions under Chapter 5 of the Bankruptcy Code. The Adequate Protection Liens secure the payment of the pre-petition obligations in an amount equal to any diminution in value of the applicable secured creditor's interest in the Cash Collateral from and after the commencement date, to the extent such diminution in value is not otherwise compensated by the other protections set forth herein. Such lien shall not apply to any adversary proceeding against the holder of the lien.

8. The Debtors do not have available sources of working capital and financing to carry on its operations and the liquidation of the Collateral without the use of Cash Collateral. In order to operate in Chapter 11 and maximize the value of the estates, the Debtors must have access to cash generated from the sale of inventory, the collection of the accounts receivable, and the generation of income in the ordinary course of business. Overall, the Debtors require the use of Cash Collateral to reorganize the operation. The use of Cash Collateral is therefore critical to maximize the value of the Estates and pay claims to the extent required or feasible.

9. The Debtors hereby request the authority to use Cash Collateral for operating capital and to pay the costs and expenses of administering this case, all in compliance with the Budget. All payments described in the Budget are necessary to maintain and continue the Debtors' operations and preserve the value of the Collateral for the benefit of their creditors. Without cash to make the payments outlined in the Budget as requested herein, immediate and irreparable harm will occur to the Debtors' operations, the value of the Collateral, and the interest of the Debtors, their Estate, and creditors.

10. In order to protect White Oak, CIBC, and VFI from any diminution in value of their interest in the Cash Collateral, the Debtor proposes to provide as adequate protection to White Oak

(hereinafter, the "Adequate Protection") (a) the Post-Petition Adequate Protection Liens; and (b) the Senior Adequate Protection Superpriority Claims, subject only to the Carve Out.

11.     As further adequate protection, upon the request of White Oak, CIBC, or VFI, the Debtors intend to provide proof of adequate insurance coverage for the Collateral and the Debtors' operations.

12.     Nothing herein, nor any order granting this Motion, shall constitute a determination concerning the nature, extent, validity, and/or priority of the liens and claims of White Oak, CIBC, and VFI as set forth herein, nor concerning the amount of any claims held by any creditor, nor concerning the value of any of the Debtors' assets.  To the extent that any other creditor of the Debtors holds an interest in any asset of the Debtors that is superior to the interest of White Oak, CIBC, or VFI, including but not limited to an interest in Cash Collateral, such interest(s) may be subsequently adjudicated by the Court and the order granting this Motion shall be without prejudice to such subsequent adjudication.  However, such subsequent adjudication shall not have the effect of disallowing Debtors' use of Cash Collateral, even to the extent that another creditor holds a more senior lien in and to the Cash Collateral.  Nor shall such adjudication modify the terms of the Carve Out as provided herein, which shall be applicable as to any creditor secured by the Cash Collateral.

13.     This motion is brought pursuant to 11 U.S.C. §§ 363(c)(1) and (2), 363(e) and 361. Specifically, 11 U.S.C. § 363(c)(1) provides that if the business of the debtor is authorized to be operated under Bankruptcy Code § 1108, unless the Court orders otherwise, the trustee (and the debtor exercising the powers of a trustee under § 1107) may enter into transactions, including the sale or lease of property of the estate, and may use property of the estate, in the ordinary course of business, without notice or a hearing.  Additionally, 11 U.S.C. § 363(c)(2) provides that the trustee

may not use, sell or lease cash collateral under subparagraph (c)(1) unless each entity that has an interest in such cash collateral consents or unless the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of § 363.

14.    11 U.S.C. § 363(e) provides that on request of an entity that has an interest in property used, sold or leased or proposed to be used, sold or leased by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest. 11 U.S.C. § 361 provides that when adequate protection of an interest of an entity in property is required under §§ 362, 363 or 364, "such adequate protection may be provided by-- (1) requiring . . . a cash payment or periodic cash payments to such entity, to the extent that . . . the use, sale or lease under section 363 of this title . . . results in a decrease in the value of such entity's interest in such property; or (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property; or (3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."

15.    Adequate protection must be determined on a case-by-case basis, permitting a debtor maximum flexibility in structuring its adequate protection proposal.[2] A reorganizing debtor "clearly has a compelling need to use 'cash collateral' in its effort to rebuild."[3]

16.    Courts have held that the existence of an equity cushion in collateral suffices as ample adequate protection to allow a debtor to use cash collateral.[4] The court in *In re Steffen* held

_____

[2] See *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985); *In re George Ruggerie Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).
[3] *George Ruggerie*, 727 F.2d at 1019.
[4] See, e.g., *In re Las Torres Dev., L.L.C.*, 413 B.R. 687, 696 (Bankr. S.D. Tex. 2009); *In re Triplett*, 87 B.R. 25, 27 (Bankr. W.D. Tex. 1988); *In re McCombs Properties VI, Ltd.*, 88 B.R.

that an equity cushion of 20% was sufficient to eliminate any requirement for adequate protection payments to a secured creditor.[5]

17.      In this case, CIBC is adequately protected by its collateral held by non-debtor entities, and the regular post-petition payments it will receive as lease proceeds from the real estate.

18.      White Oak and VFI (as well as CIBC) hold substantial equity cushions. White Oak holds a claim in the amount of approximately $7.7 million. White Oak holds a first priority security interest in the Debtors inventory valued at $20,695,431.00, all of the Debtors' receivables valued at $14,252,752.00, and all of the Debtors' equipment valued at approximately $3.6 million (after deducting the senior liens of PMSI equipment lenders). **Exhibit 4** attached hereto reflects the Debtors' inventory (and the values thereof) and the Debtors' receivables and funds on deposit (and the values thereof). Thus, White Oak's collateral is valued at approximately $38,548,183.00, or 500% of its claim. VFI holds a claim of approximately $2.6 million (not including its "true lease" claim for the HP Equipment). VFI holds a junior priority security interest in the foregoing assets, with a cumulative value of approximately $30,848,183.00 million, after deducting the White Oak claim. Thus, VFI's collateral is valued at approximately 1,186% of its claim. Therefore, Debtors submit that White Oak and VFI are already adequately protected and thus grounds exist to allow Debtors to use cash collateral.

19.      Debtors also have insurance protecting their assets, including protection against numerous forms of liability. Debtors shall keep such insurances in place in order to protect the estate and its creditors, including but not limited to White Oak, CIBC, and VFI.

_____

261, 266 (Bankr. C.D. Cal. 1988); *In re Harrington & Richardson, Inc.*, 48 B.R. 431, 433- 34 (Bankr. D. Mass. 1985).
[5] 275 B.R. 570, 577 (Bankr. D. Colo. 2002).

20.     Nothing set forth in the this Motion shall be construed or interpreted as a waiver or modification of any rights or arguments of the Debtors, White Oak, CIBC, VFI, or any other creditors or parties-in-interest concerning any matters or issues regarding the allowance or treatment of any claims or interests in the Debtors' bankruptcy cases or the treatment and payment of any such claims or interests in the Debtors' bankruptcy cases, whether under a proposed Chapter 11 plan or otherwise, including the allowed amounts of such claims or interests or the appropriate pre- or post-confirmation interest rates allowed thereon.

21.     Nothing set forth in this Motion shall be construed or interpreted as a waiver or modification of any rights that White Oak, CIBC, VFI, or any other creditors have or may assert against any non-debtor co-borrowers or guarantors.

22.     Nothing in this Motion shall prevent or prejudice White Oak, CIBC, VFI, or any other party in interest from requesting the Court, on an emergency basis, to terminate the Debtors' use of Cash Collateral, or from seeking any other relief including, without limitation, stay relief or dismissal or conversion of these cases or appointment of an Examiner or Chapter 11 Trustee.

WHEREFORE Debtors respectfully request the Court enter an Order authorizing the use of cash collateral, and for such other relief as the Court deems just and proper.

Respectfully Submitted:

PRELLE ERON & BAILEY, P.A.
Attorneys for Debtors

 */s/ David Prelle Eron*
David Prelle Eron, #23429
301 N. Main St., Suite 2000
Wichita, KS 67202
316-262-5500 / 316-262-5559 (fax)
david@eronlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023 a true and correct copy of the foregoing was electronically filed with the Court using the CM/ECF system, which sent notification to the Office of the U.S. Trustee and to all parties of interest participating in the CM/ECF system.

*/s/ Margaret R. Spangler*
MARGARET R. SPANGLER
Assistant to David Prelle Eron

EXHIBIT 1



Theodore Arthur
Vlamis

Mary Elizabeth
Hawes Vlamis

 50%

 50%

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Theodore A. Vlamis Irrevocable Trust 2<br><br>812,177 Shares of Class B Non-Voting stock | Theodore A. Vlamis Irrevocable Trust 3<br><br>1,360,569 Shares of Class B Non-Voting stock | Theodore A. Vlamis Revocable Trust<br>51,163 Shares of Class A Voting stock<br>2,776,091 Shares of Class B Non-Voting Stock | Mary Elizabeth Hawes Vlamis Revocable Trust<br>51,163 Shares of Class A Voting stock<br>2,776,091 Shares of Class B Non-Voting Stock | Mary Elizabeth Hawes Vlamis Irrevocable Trust 3<br><br>1,360,569 Shares of Class B Non-Voting Stock | Mary Elizabeth Hawes Vlamis Irrevocable Trust 2<br><br>812,177 Shares of Class B Non-Voting Stock | Vlamis Enterprises Wichita, LLC.<br>5,733 Shares of Class B Preferred Non-Voting Stock | Vlamis Enterprises, LLC.<br><br>3,205 Shares of Class B Preferred Non-Voting Stock | Corrie MacColl Holdings, Inc.<br>3,000 Shares of Class A Preferred Non-Voting Stock |

Pioneer Automation Technologies, LLC
1220 N Haverhill Rd., El Dorado, KS 67042,
United States
2871747
April 27, 2000

100%

Continental American Corporation dba Pioneer Balloon Company
5000 E 29th St. North, Wichita KS 67220
United States
0511584
November 18, 1977

51%

Emily's Bubble Plant, LLC
5000 E 29th, St. North, Wichita KS
67042, United States 67220
870894
July 31, 2017

 100%

| | | | | | |
|---|---|---|---|---|---|
| Pioneer Europe Limited<br>Pioneer House, 9 Stortford<br>Hall Industrial Park, Dunmow Road<br>Bishops Strortford. CM23<br>5GTZ.<br>England<br>2227318<br>March 7, 1988 | Pioneer Balloon Canada Limited<br>333 Kenora Avenue<br>Hamilton, ON l8E2W3<br>Canada<br>000924499<br>January 1, 1991 | Pioneer Balloon Australia PTY LTD<br>Unit F 140 Old Pittwater Road<br>Brookvale, NSW, Australia<br>Australia<br>055 307 812<br>March 17, 1992 | Globos Qualatex De Pioneer,<br>S.A. DE C.V.<br>San Bernardo 301 Letra AYB<br>Corredor Industrial Sanctorum,<br>Cuautlancingo, PUE Mexico<br>C.P. 72730<br>Mexico<br>Volumen 269 Instrumento<br>10029<br>June 9, 1993 | Pioneer National Latex, Inc.<br>246 East 4th Street<br>Ashland, OH 44805<br>United States<br>1125861<br>December 3, 1999 | Pioneer Balloon Brazil Ltda<br>Avenida Antonieta Piva<br>Barranqueiros, 361, Distrito<br>Industrial CEP 13213-009,<br>Jundiai, Sao Paulo<br>13212-000<br>Brazil<br>04032.174/0001-97<br>September 9th, 2000 |

Pioneer Balloon
India
Entity Inactive

**EXHIBIT 2**

**Pioneer Companies Global Balance Sheet (as of July 2023)**

| | | |
|---|---|---:|
| Cash | $ | 1,733,107.00 |
| Accounts Receivable - Trade | $ | 8,653,573.00 |
| Accounts Receivable - Interco | $ | - |
| Accounts Receivable - Other | $ | 3,341,850.00 |
| Income Tax Receivable | $ | 42,400.00 |
| Inventory - Perpetual | $ | 30,736,806.00 |
| Inventory - WIP | $ | 440,976.00 |
| Inventory - GIT | $ | 1,650,675.00 |
| Inventory - RES | $ | 2,031,988.00 |
| Prepaids | $ | 4,210,357.00 |
| **Current Assets** | **$** | **52,841,732.00** |
| | | |
| Fixed Assets Cost | $ | 73,872,493.00 |
| Fixed Assets Depreciation | $ | (61,995,181.00) |
| Net Fixed Assets | $ | 11,877,312.00 |
| Investments | $ | 139,981.00 |
| Other Assets | $ | 1,623,393.00 |
| **Longterm Assets** | **$** | **13,640,686.00** |
| | | |
| **Assets** | **$** | **66,482,418.00** |
| | | |
| Accounts Payable - Trade | $ | 11,671,407.00 |
| Accounts Payable - Interco | $ | (4,026,183.00) |
| Accounts Payable - Other | $ | 1,171,221.00 |
| Accrued Liabilities | $ | 3,556,136.00 |
| Current Debt | $ | 17,102,507.00 |
| **Current Liabilities** | **$** | **29,475,088.00** |
| | | |
| Notes Payable | $ | 4,941,425.00 |
| Longterm Debt | $ | 1,639,483.00 |
| **Longterm Liabilities** | **$** | **6,580,908.00** |
| | | |
| **Liabilities** | **$** | **36,055,997.00** |
| | | |
| Capital and Stock | $ | 11,938,040.00 |
| Additional Paid in Capital | $ | 2,719,074.00 |
| Cumulative Translation Adj | $ | (5,769,745.00) |
| Retained Earnings | $ | 28,820,171.00 |
| Current Year Earnings | $ | (7,281,119.00) |
| **Equity** | **$** | **30,426,421.00** |
| | | |
| **Total Liabilities & Equity** | **$** | **66,482,418.00** |

# EXHIBIT 3

| | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 9/22/2023 | 9/29/2023 | 10/6/2023 | 10/13/2023 | 10/20/2023 | 10/27/2023 | 11/3/2023 | 11/10/2023 | 11/17/2023 | 11/24/2023 | 12/1/2023 | 12/8/2023 | 12/15/2023 |
| | Fri | Fri | Fri | Fri | Fri | Fri | Fri | Fri | Fri | Fri | Fri | Fri | Fri |
| Opening Bank Balance (Previous Friday) | 125,000 | 2,382,009 | 1,531,170 | 1,199,279 | 1,342,763 | 1,301,296 | 870,422 | 731,676 | 1,068,104 | 983,592 | 1,180,705 | 531,814 | 928,927 |
| AR Receipts (No White Oak Access) | 0 | 600,000 | 900,000 | 1,100,000 | 1,000,000 | 1,100,000 | 1,100,000 | 1,100,000 | 1,150,000 | 1,150,000 | 1,150,000 | 1,150,000 | 1,150,000 |
| MEX Sale (Net) | 3,662,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Purchases PEL | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 0 | 200,000 | 0 |
| Purchases SYD | 0 | 0 | 0 | 0 | 200,000 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Purchases HAM | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Purchases SAO | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Purchases PUE | 0 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 | 22,000 |
| Non BB Cash in | 3,662,000 | 22,000 | 22,000 | 22,000 | 222,000 | 22,000 | 22,000 | 222,000 | 22,000 | 22,000 | 22,000 | 222,000 | 22,000 |
| Payroll | 358,000 | 112,000 | 358,000 | 112,000 | 358,000 | 112,000 | 358,000 | 112,000 | 358,000 | 112,000 | 358,000 | 112,000 | 358,000 |
| Payroll Taxes etc | 139,238 | 37,469 | 139,238 | 37,469 | 139,238 | 37,469 | 139,238 | 37,469 | 139,238 | 37,469 | 139,238 | 37,469 | 145,000 |
| Medical | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 | 65,000 |
| 401k | 9,802 | 49,380 | 9,802 | 49,380 | 9,802 | 49,380 | 9,802 | 49,380 | 9,802 | 49,380 | 9,802 | 49,380 | 10,000 |
| CIBC Lease Payment | 0 | 80,000 | 0 | 0 | 0 | 80,000 | 0 | 0 | 0 | 0 | 80,000 | 0 | 0 |
| Takara Note Payment | 0 | 4,000 | 0 | 0 | 0 | 4,000 | 0 | 0 | 0 | 0 | 4,000 | 0 | 0 |
| Corrie MacColl Note Payment | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Northstar | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| VFI HP Lease | 0 | 47,000 | 0 | 0 | 0 | 47,000 | 0 | 0 | 0 | 0 | 47,000 | 0 | 0 |
| Amex | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance | 0 | 135,000 | 0 | 0 | 0 | 135,000 | 0 | 0 | 0 | 135,000 | 0 | 0 | 0 |
| HAM | 125,000 | 125,000 | 121,500 | 121,500 | 121,500 | 121,500 | 121,500 | 121,500 | 121,500 | 121,500 | 121,500 | 121,500 | 121,500 |
| MEX | 210,000 | 210,000 | 210,000 | 210,000 | 210,000 | 210,000 | 210,000 | 210,000 | 210,000 | 210,000 | 210,000 | 210,000 | 210,000 |
| DAL - Services & Lease | 25,000 | 174,000 | 25,000 | 25,000 | 25,000 | 174,000 | 25,000 | 25,000 | 25,000 | 25,000 | 174,000 | 25,000 | 25,000 |
| DAL - Materials | 131,000 | 131,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 | 122,000 |
| ELD - Services & Lease | 70,000 | 117,900 | 70,000 | 70,000 | 70,000 | 201,900 | 70,000 | 70,000 | 70,000 | 70,000 | 201,900 | 70,000 | 70,000 |
| ELD - Materials | 100,800 | 100,800 | 100,800 | 100,800 | 100,800 | 100,800 | 100,800 | 100,800 | 100,800 | 100,800 | 100,800 | 100,800 | 100,800 |
| ICT - Services | 60,000 | 75,000 | 60,000 | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 | 60,000 | 60,000 | 75,000 | 60,000 | 60,000 |
| ICT - Other | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Chapter 11 Administration | 100,000 | 0 | 0 | 0 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 17,000 |
| ASH Closure, SG&A Cuts #1 | 0 | (2,400) | (2,400) | (2,400) | (2,900) | (4,500) | (5,600) | (5,400) | (9,800) | (16,000) | (11,800) | (16,000) | (11,800) |
| S&GA Cuts #2 | 0 | 0 | (35,000) | 0 | (35,000) | 0 | (35,000) | 0 | (35,000) | 0 | (35,000) | 0 | (35,000) |
| Trustee Fees | 11,151 | 11,689 | 9,952 | 7,766 | 10,028 | 12,324 | 10,006 | 7,822 | 9,972 | 7,737 | 14,452 | 7,737 | 10,060 |
| Takara RM & FG | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Takara- Emily's Bubbles Dividend | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| DAL | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ICT | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| ELD | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| GUA | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Total Out | (1,404,991) | (1,472,839) | (1,253,892) | (978,516) | (1,263,408) | (1,552,874) | (1,260,746) | (985,572) | (1,256,512) | (974,887) | (1,820,892) | (974,887) | (1,267,560) |
| Net Cash | 2,257,009 | (850,839) | (331,892) | 143,484 | (41,468) | (430,874) | (138,746) | 336,428 | (84,512) | 197,113 | (648,892) | 397,113 | (95,560) |
| Closing Bank Balance | 2,382,009 | 1,531,170 | 1,199,279 | 1,342,763 | 1,301,296 | 870,422 | 731,676 | 1,068,104 | 983,592 | 1,180,705 | 531,814 | 928,927 | 833,367 |
| Total Availability | 9,698,402 | 9,698,402 | 9,698,402 | 9,819,327 | 9,890,239 | 9,791,779 | 9,815,376 | 9,927,383 | 10,062,814 | 10,367,616 | 10,387,061 | 10,146,755 | 10,015,910 |
| Debt | 7,625,772 | 6,698,402 | 6,698,402 | 6,698,402 | 6,819,327 | 6,890,239 | 6,791,779 | 6,815,376 | 6,927,383 | 7,062,814 | 7,367,616 | 7,387,061 | 7,146,755 |
| WO Block | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 | 1,000,000 |
| FCCR Block | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 | 2,000,000 |
| BB Availability | (6,207) | 1,135,163 | 1,019,795 | 1,345,684 | 992,074 | 1,036,703 | 1,043,392 | 1,336,766 | 1,146,190 | 1,315,561 | 1,069,055 | 1,125,974 | 1,051,030 |
| BB Taken | (6,207) | 1,135,163 | 1,019,795 | 1,345,684 | 992,074 | 1,036,703 | 1,043,392 | 1,336,766 | 1,146,190 | 1,315,561 | 1,069,055 | 1,125,974 | 1,051,030 |
| Debt BF | 6,698,402 | 6,698,402 | 6,698,402 | 6,819,327 | 6,890,239 | 6,791,779 | 6,815,376 | 6,927,383 | 7,062,814 | 7,367,616 | 7,387,061 | 7,146,755 | 7,015,910 |
| Remaining Availablty | - | - | - | - | - | - | - | - | - | - | - | - | - |

Row group labels (left margin): Payroll; Other Finance not on AP; Interco Purchases; AP; Cap Ex

Add PEL and Mexico into LSA?

**EXHIBIT 4**

**Debtors' Cash Collateral (as of July 2023)**

|  | **Current Year YTD** |
|---|---:|
| Cash | 736,565 |
| Accounts Receivable - Trade | 4,025,402 |
| Accounts Receivable - Interco | 9,648,775 |
| Accounts Receivable - Other | 58,758 |
| Income Tax Receivable | -216,748 |
| Inventory - Perpetual | 15,638,601 |
| Inventory - WIP | 319,426 |
| Inventory - GIT | 1,650,675 |
| Inventory - RES | 2,459,329 |
| Prepaids | 627,400 |
| **Current Assets** | **34,948,183** |

# PROPOSED ORDER

UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| In re:<br><br>CONTINENTAL AMERICAN CORPORATION<br><br>DEBTOR. | CASE NO.:  23-10938-11 |
|---|---|
| In re:<br><br>PIONEER NATIONAL LATEX, INC.<br><br>DEBTOR. | CASE NO.:  23-10939-11 |

## INTERIM ORDER GRANTING DEBTOR'S MOTION FOR ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL AND PAYMENT OF ADEQUATE PROTECTION

This matter comes before the Court on the motion of Debtors Continental American Corporation and Pioneer National Latex, Inc. ("Debtors") for Order Authorizing Interim Use of Cash Collateral and Payment of Adequate Protection (the "Motion"), Doc. No. ____, filed on September 22, 2023.  The Motion was noticed on an expedited basis and an expedited hearing was held on _____, 2023, at _____ __.m.  David Prelle Eron appeared on behalf of the Debtors.  _____ appeared on behalf of the United States Trustee.  _____

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re:  Continental American Corporation – Case No. 2310938-11
In re:  Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023
Page 2

appeared on behalf of White Oak Commercial Finance, LLC ("White Oak").  _____

appeared on behalf of _____.  Based upon the Motion, statements of counsel at

hearing, and the record herein,

      THE COURT FINDS THAT:

      White Oak Commercial Finance, LLC ("White Oak") holds a senior blanket security

interest in and to the Debtors' Cash Collateral, together with a significant portion of the Debtor's

fixed assets (collectively the "Collateral").  CIBC Bank USA ("CIBC") also holds a blanket

security interest in and to the Debtors' Cash Collateral, which is second to the lien of White Oak

(and has been modified to eliminate a number of items).  CIBC's claim of approximately $3.8

million is primarily secured by a lien on real estate owned by one of CAC's non-filing, non-

subsidiary affiliates, Vlamis Enterprises Wichita, LLC ("VEW"), which holds a value of

approximately $8.0 million.  CIBC's claim is not impacted by the cases herein, and it will continue

to receive payment post-petition through lease payments rendered by CAC to VEW for occupancy

of the real estate.  Finally, VFI KR SPE I, LLC ("VFI") holds a blanket security interest in and to

the Debtors' Cash Collateral, as well as other personal property. White Oak holds a claim in the

amount of approximately $7.7 million.  VFI holds a claim in the amount of approximately $2.6

million.

      The Cash Collateral pledged to White Oak and VFI has a present value of $34,948,183.00.

Moreover, as reflected on **Exhibit 2** of the Motion, the Debtors have a net equity position of

approximately $30 million, inclusive of all assets and liabilities of CAC and all of its subsidiaries.

Put simply, all creditors secured by the Cash Collateral hold equity cushions of more than 500%.

When combined with the Debtors' other unencumbered assets, direct and indirect, the use of Cash

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re:   Continental American Corporation – Case No. 2310938-11
In re:   Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023
Page 3

Collateral by the Debtors will present no risk of loss to any secured creditor.  This alone constitutes adequate protection.

Debtors are seeking to use approximately $17 million of cash collateral during the next 13 weeks ("Specified Period"), the use of which will directly benefit CAC and VFI by providing care and maintenance for their remaining Collateral and generating new Cash Collateral.   Debtors anticipate that during the Specified Period, the net impact on Cash Collateral will be a reduction of approximately $3.25 million, but by the end of the Specified Period, Debtor will be operating on a cash neutral basis and will be ready to reorganize its operations.  In summary, all secured creditors will be assured to collect the full amount owed to them.  Debtors further propose to provide White Oak, CIBC, and VFI with replacement liens on all future Cash Collateral, coupled with a Superpriority Administrative Claim, subject to a $150,000.00 professional fee Carve Out

**THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.      The motion shall be and hereby is GRANTED subject to the following terms and conditions.

2.      The Debtors are granted authority to use inventory, receivables, cash, cash equivalents, and proceeds generated by the sales of Debtors' goods and services (collectively "Cash Collateral") all of which has been pledged to White Oak, among others, during the Specified Period (as defined in more detail below), in a manner consistent with the Debtors' budget attached to the Motion as **Exhibit 3** ("the Budget").

3.      The Debtors shall deposit the Cash Collateral into the Debtors' existing bank accounts consistent with its pre-petition practices.  All creditors shall deliver any

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re: Continental American Corporation – Case No. 2310938-11
In re: Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023
Page 4

proceeds from Debtors' ordinary operations and/or sales to Debtors and endorse any Cash Collateral checks on which any of them are jointly listed as a payee so that such payments and proceeds may be deposited into the Debtors' bank accounts.

4.     White Oak, CIBC, and VFI are granted replacement liens and post-petition liens on post-petition assets. Such replacement liens and continuing liens shall be in proportion to and to the extent that the Cash Collateral is used by Debtors on a post-petition basis, and in the same order and priority as such liens existed on the Petition Date. No secured creditor shall receive an improvement in position as a result of the liens granted hereunder. Nor shall any secured creditor have its claim subordinated nor its existing liens impaired hereunder.

5.     Below is a summary of the terms of the Debtors' approved use of Cash Collateral:

a.     <u>Use of Cash Collateral</u>. The Debtors are authorized to use Cash Collateral to pay expenses of their operation in accordance with the Budget, up to amounts not to exceed 125% of each line-item amount set forth in the Budget measured monthly, with a variance of up to two months for each monthly expense. The cumulative total amount set forth in the Budget shall be subject to 15% cumulative variance, except a) on account of moving an expense forward or backward by the two-month variance, in which case the monthly expense cap shall be considered cumulatively among the affected months, b) by agreement of White Oak, VFI, and Debtors, or c) as may be otherwise ordered by the Court. The consent of White Oak, VFI, and/or Debtors may be provided by and through counsel for each.

b.     <u>Termination Date</u>. Debtors are granted interim authority to use Cash Collateral only until a final hearing can be held. Thereafter, and subject to the Debtors' right to request additional cash collateral authority for further periods on proper notice, the Debtors seeks authority to use Cash Collateral through December 22, 2023, at 11:59 p.m. (the "Specified Period"). The Specified Period may be extended by agreement of the Debtors, White Oak, and VFI, or upon further order of the Court. It is anticipated that White Oak, CIBC, and VFI will be adequately protected during the Specified Period by virtue of a post-petition replacement lien in the Debtors' assets to the extent of any Cash Collateral used by the Debtors, in and to the same forms of

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re: Continental American Corporation – Case No. 2310938-11
In re: Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023

Page 5

property to which the liens had attached pre-petition, and in the same order and priority as such liens currently exist. Such liens shall be of the same nature, extent, and validity as existed on the Petition Date. Nothing hereunder shall entitle any creditor to improve its position from its position on the Petition Date. Nothing herein or in any subsequent order authorizing use of Cash Collateral through the Specified Period shall prejudice any creditor's right to petition the Court to prohibit or restrict use of Cash Collateral.

d.   Events of Default. The occurrence of any of the following events, unless waived in writing by White Oak, CIBC, and VFI shall constitute an event of default (the "Events of Default"):

   1)  the entry of an order by the Court granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (i) to allow any creditor to execute upon or enforce a lien on or security interest in any of the Collateral, other than forms of Collateral in which such moving party has a senior priority lien;

   2)  dismissal of the case or conversion of the case to Chapter 7 case;

   3)  the sale after the Petition Date of any portion of any of the Debtors' assets outside the ordinary course of dealing and without approval by the Court under 11 U.S.C. §363;

   4)  the failure by the Debtors to perform, after notice from White Oak, CIBC, or VFI, in any respect, any of the material terms, provisions, conditions, covenants, or obligations under the Order granting this Motion.

e.   Rights and Remedies Upon an Event of Default. If the Debtors default in their financial, reporting or other obligations under the terms of the Order granting this Motion, then the Subchapter V Trustee, the United States Trustee, White Oak, CIBC, or VFI may, but shall not be required to, deliver a written Notice of Default to the Debtors by e-mail delivery of such Notice of Default to each of the Debtors' counsel of record, with copies of the Notice of Default also being emailed to counsel for White Oak, CIBC, and VFI (if not the party that delivers such Notice of Default). The Debtors and the party asserting the default shall attempt in good faith to informally resolve or rectify the default. If the Debtors and the objecting party are unable to informally resolve the default within five (5) business days of the delivery of the Notice of Default ("**Resolution Period**") then the Debtors' authority to use Cash Collateral as authorized by the Order granting this Motion shall cease two (2) business days after the expiration of the

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re:  Continental American Corporation – Case No. 2310938-11
In re:  Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023
Page 6

Resolution Period, unless, prior to that date, the Debtors either (a) cure the Notice of Default to the satisfaction of the party sending the Notice of Default, or (b) file a motion with the Court requesting that its authority to use Cash Collateral continue, and obtain and notice out a hearing on the motion for a date that is no more than 14 days from the date of filing of the motion, or at the first available date thereafter if the Court's calendar will not accommodate a hearing within such period.   If such a motion is filed with the Court and noticed out for hearing as required herein, then the Debtors' authority to use and spend Cash Collateral pursuant to the terms of the Order granting this Motion shall continue pending the Court's decision on the motion.

f.      <u>Adequate Protection</u>.

1)   Debtors assert that they will generate post-petition receivables and inventory, together with cash and deposit account balances, in an amount sufficient to maintain an equity cushion in an amount that will be more than sufficient to protect all parties secured by the Cash Collateral.  As partial adequate protection, White Oak, CIBC, and VFI are granted a valid, automatically perfected replacement lien against the assets of the Debtors, for the full amount of the Cash Collateral which is utilized pursuant to the Order granting the Motion. The replacement liens shall have the same validity, avoidability and priority as the security interests and liens existing against the Cash Collateral as of the date of the Order on this Motion.   The replacement liens shall be declared to be valid and perfected without the need for the execution, recording or filing of any further document or instrument or the taking of any further act otherwise required under non- bankruptcy law. Any statements or filings required to be filed to preserve or extend any lien held by White Oak, CIBC, or VFI may be filed or recorded at any time during the pendency of this case without a stay relief order or otherwise seeking or obtaining the permission of the Court.

2)   White Oak, CIBC, and VFI, in that order and priority, for their benefit, shall receive, (i) an additional and replacement continuing valid, binding, enforceable, non-avoidable, and automatically perfected post-petition security interest in and lien (the "Post-Petition Adequate Protection Liens") on any and all presently owned and hereafter acquired personal property and all other assets of the Debtors and their estate, together with any proceeds thereof, including, without limitation, as set forth in the loan documents; (ii) to the extent provided by Sections 503(b) and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the case and any Successor Case (the "Senior Adequate Protection Superpriority Claims"); and (iii) payments

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re: Continental American Corporation – Case No. 2310938-11
In re: Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023
Page 7

from the proceeds from the auction or sale of its Collateral (other than Cash Collateral) at the closing of the sale of any such transaction, with such payments to be made to each according to their relative priority in the assets as of the Petition Date.

g. <u>Priority of Post-Petition Adequate Protection Liens and Adequate Protection Superpriority Claim</u>. The Post-Petition Replacement Adequate Protection Liens granted herein shall have the same priority as the priority that each secured creditor enjoyed in the Debtors' assets as of the Petition Date, and nothing set forth herein is intended to grant White Oak, CIBC, and VFI or any other creditor a priming lien on or security interest in the Debtors' assets and property. Further, except for the Carve Out, the Adequate Protection Superpriority Claims, in the respective order of their priority, shall have priority over all administrative expenses and unsecured claims against the Debtors and their estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code and, upon entry of the Final Order, the Senior Adequate Protection Superpriority Claim shall have priority over all claims pursuant to Section 506(c) of the Bankruptcy Code.

h. <u>Carve Out</u>. "Carve Out" means the following, in an amount not to exceed $150,000.00:

1) the allowed professional fees and disbursements for the Debtors' professionals in these cases; and

2) the allowed professional fees and disbursements for the professionals of any committee of general unsecured creditors appointed herein; and

3) any statutory fees of the United States Trustee; and

4) any costs of sale associated with the sale of the Collateral, including broker commissions, marketing fees, property taxes, escrow fees, recording costs, and similar expenses, to the extent authorized by any §363 order approving of such sales.

The Carve Out shall not constitute a limitation on any of the foregoing expenses and costs of the Estates, but shall merely constitute a maximum amount of such costs that may take priority over the Senior Adequate Protection Superpriority Claims.

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re:   Continental American Corporation – Case No. 2310938-11
In re:   Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023
Page 8

      i.       <u>Liens on Avoidance Actions</u>.  From and after the date of entry of the Final Order, "Collateral" shall also include all proceeds of actions under Chapter 5 of the Bankruptcy Code.  The Adequate Protection Liens secure the payment of the pre-petition obligations in an amount equal to any diminution in value of the applicable secured creditor's interest in the Cash Collateral from and after the commencement date, to the extent such diminution in value is not otherwise compensated by the other protections set forth herein.  Such lien shall not apply to any adversary proceeding against the holder of the lien.

6.     The Debtors are hereby authorized to use Cash Collateral for operating capital and to pay the costs and expenses of administering this case, all in compliance with the Budget.  All payments described in the Budget are necessary to maintain and continue the Debtors' operations and preserve the value of the Collateral for the benefit of their creditors.  Without cash to make the payments outlined in the Budget as requested herein, immediate and irreparable harm will occur to the Debtors' operations, the value of the Collateral, and the interest of the Debtors, their Estate, and creditors.

7.     In order to protect White Oak, CIBC, and VFI from any diminution in value of their interest in the Cash Collateral, White Oak is granted as adequate protection (hereinafter, the "Adequate Protection") (a) the Post-Petition Adequate Protection Liens; and (b) the Senior Adequate Protection Superpriority Claims, subject only to the Carve Out.

8.     As further adequate protection, upon the request of White Oak, CIBC, or VFI, the Debtors shall provide proof of adequate insurance coverage for the Collateral and the Debtors' operations.

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re:   Continental American Corporation – Case No. 2310938-11
In re:   Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023
Page 9

9.      Nothing herein shall constitute a determination concerning the nature, extent, validity, and/or priority of the liens and claims of White Oak, CIBC, and VFI as set forth herein, nor concerning the amount of any claims held by any creditor, nor concerning the value of any of the Debtors' assets.  To the extent that any other creditor of the Debtors holds an interest in any asset of the Debtors that is superior to the interest of White Oak, CIBC, or VFI, including but not limited to an interest in Cash Collateral, such interest(s) may be subsequently adjudicated by the Court and the order granting this Motion shall be without prejudice to such subsequent adjudication.  However, such subsequent adjudication shall not have the effect of disallowing Debtors' use of Cash Collateral, even to the extent that another creditor holds a more senior lien in and to the Cash Collateral.  Nor shall such adjudication modify the terms of the Carve Out as provided herein, which shall be applicable as to any creditor secured by the Cash Collateral.

10.     Debtors also have insurance protecting their assets, including protection against numerous forms of liability.  Debtors shall keep such insurances in place in order to protect the estate and their creditors, including but not limited to White Oak, CIBC, and VFI.

11.     Nothing set forth herein shall be construed or interpreted as a waiver or modification of any rights or arguments of the Debtors, White Oak, CIBC, VFI, or any other creditors or parties-in-interest concerning any matters or issues regarding the allowance or treatment of any claims or interests in the Debtors' bankruptcy cases or the treatment and payment of any such claims or interests in the Debtors'

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re: Continental American Corporation – Case No. 2310938-11
In re: Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023
Page 10

bankruptcy cases, whether under a proposed Chapter 11 plan or otherwise, including the allowed amounts of such claims or interests or the appropriate pre- or post-confirmation interest rates allowed thereon.

12. Nothing set forth in this Order shall be construed or interpreted as a waiver or modification of any rights that White Oak, CIBC, VFI, or any other creditors have or may assert against any non-debtor co-borrowers or guarantors.

13. Nothing in this Order shall prevent or prejudice White Oak, CIBC, VFI, or any other party in interest from requesting the Court, on an emergency basis, to terminate the Debtors' use of Cash Collateral, or from seeking any other relief including, without limitation, stay relief or dismissal or conversion of these cases or appointment of an Examiner or Chapter 11 Trustee.

14. The relief granted herein shall be interim only. A final evidentiary hearing with respect to the Motion is scheduled for _____, 2023, at _____ __.m. (the "Final Hearing"). The Debtors shall promptly cause copies of this Order (which shall constitute adequate notice of the Final Hearing) to be mailed to the parties identified in the Debtors' Motion to Limit Notice, to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with the Court, except to the extent such party is receiving notice through CM/ECF. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections not later than fourteen days from the entry of this Order.

UNITED STATES BANKRUPTCY COURT DISTRICT OF KANSAS
In re: Continental American Corporation – Case No. 2310938-11
In re: Pioneer National Latex, Inc. – Case No. 23-10939-11
**Interim Order Granting Use of Cash Collateral**
_____,2023
Page 11

**IT IS SO ORDERED.**
**# # #**

**Respectfully Submitted:**

PRELLE ERON & BAILEY, P.A.
Attorneys for Debtors

*/s/ David Prelle Eron*
DAVID PRELLE ERON, #23429
301 N. Main Street, Suite 2000
Wichita, KS 67202
316-262-5500 / 316-262-5559 (fax)
david@eronlaw.net

**Approved by:**

_____
_____
_____
_____

_____
_____
_____
_____