UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| IN RE:<br><br>CONTINENTAL AMERICAN CORPORATION<br><br>DEBTOR. | **JOINTLY ADMINISTERED**<br><br>Case No. 23-10938  **LEAD CASE**<br>Chapter 11 |
|---|---|
| IN RE:<br><br>PIONEER NATIONAL LATEX, INC.<br><br>DEBTOR. | Case No. 23-10939<br>Chapter 11 |

## DEBTORS' MOTION TO REJECT UNEXPIRED LEASE WITH EL DORADO PIONEER, LLC, PURSUANT TO 11 U.S.C. § 365(a)

COME NOW Debtors Continental American Corporation ("CAC") and Pioneer National Latex, Inc. ("PNL") (collectively "Debtors"), by and through their counsel David Prelle Eron of Prelle Eron & Bailey, P.A., pursuant to 11 U.S.C. § 365(a) hereby submit their motion for an order authorizing Debtors to reject the unexpired lease identified herein. In support of their motion, the Debtors state as follows:

1.      On September 22, 2023 ("Petition Date"), the Debtors filed their Voluntary Petitions for Relief under Chapter 11 of the Bankruptcy Code.  No chapter 11 trustee has been appointed herein.  A creditors' committee has been appointed herein ("UCC").  Debtors are debtors-in-possession.

2.      CAC owns and operates a multinational balloon business, directly and through its subsidiaries (the "Business").  The Business is the oldest latex balloon company in the world, headquartered in Wichita, Kansas, with multiple plants across the United States and additional locations in Canada, Mexico, Brazil, Australia, and the United Kingdom.  PNL ceased operations at or around the Petition Date.

1

3.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The relief requested herein is authorized under Bankruptcy Code sections 365(a) and 554 and Bankruptcy Rule 6006.

4.     On or about August 7, 2023, El Dorado Pioneer, LLC ("EDP") and CAC entered into a lease (the "El Dorado Haverhill Lease") under which EDP leased the premises known as 1220 Haverhill Road, El Dorado, Kansas (the "Premises") to CAC.  See El Dorado Haverhill Lease attached hereto as Exhibit A.

5.     As of the Petition Date, the Premises was in the possession of CAC.

6.     Debtors do not have sufficient revenues to support the operations at the Premises and cannot afford the associated costs, including but not limited to lease payments.  As such, Debtors propose to reject the El Dorado Haverhill Lease, together with all modifications, amendments, and extensions of the El Dorado Haverhill Lease, effective as of March 1, 2024. Debtors have not utilized the Premises during March.

7.     Debtors state that the regular payments for the El Dorado Haverhill Lease are burdensome to their estates, and the El Dorado Haverhill Lease has become an unnecessary expense.

8.     Upon entry of an order granting this Motion, Debtors further request confirmation that EDP is authorized to take possession of the Premises, to relet the same, and to otherwise exercise their rights of ownership over the Premises without subsequent violation of the automatic stay provided by § 362 of the Bankruptcy Code, except that EDP shall not be authorized to take any action against the Debtors or their assets that would be otherwise prohibited by the automatic stay.

9.      The assumption or rejection of unexpired leases is governed by § 365 of the Bankruptcy Code, which authorizes the trustee, and the debtors-in-possession acting with the powers and duties of a trustee under 11 U.S.C. § 1107 and 1108, subject to the Court's approval, to assume or reject any executory contracts or unexpired leases of the Debtors.

10.     The decision to assume or reject an unexpired lease or executory contract is a matter within the "business judgment" of the debtor-in-possession.[1] This standard gives deference to the Debtors' reasonable discretion unless the decision is the product of bad faith, whim, or caprice.[2] Absent extraordinary circumstances, court approval of the Debtors' decision to reject "should be granted as a matter of course."[3]

11.     In this case, there is no reason not to reject the El Dorado Haverhill Lease.  The Premises have no material benefit to the Debtors or their estates.  For the elimination of doubt, Debtors are not rejecting any other lease with El Dorado Pioneer, LLC.

12.     Notwithstanding the relief requested herein (i) all payments and actions by any of the Debtors pursuant to the authority granted herein shall be subject to all Orders Granting Doc. No. 13, Debtor's Motion For Order Authorizing Use Of Cash Collateral And Payment Of Adequate Protection (the "Cash Collateral Orders"), and all Orders Granting Doc. No. 110, Debtors' Motion for Order (i) Authorizing the Debtors, on an Interim Basis, to (A) Obtain Post-Petition Financing, (B) Grant Liens and Superpriority Administrative Expense Claims to Post-Petition Lender, and (C) Utilize Cash Collateral; (ii) Providing Adequate Protection to the Pre-Petition Lender; (iii) Modifying the Automatic Stay; (iv) Granting Related Relief, Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364 and 507; and (v) Scheduling a Final Hearing Pursuant to

---

[1] See *NLRB v. Bildisco & Bidisco*, 465 U.S. 513, 523 (1984).
[2] See *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001).
[3] *Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981).

Bankruptcy Rule 4001 ("DIP Financing Orders"), including compliance with the approved Budget (as defined in the DIP Financing Orders) and all other terms and conditions thereof, (ii) nothing herein shall be deemed to modify the Budget attached to the DIP Financing Orders, and (iii) to the extent there is any inconsistency between the terms of this Order and the Cash Collateral Orders or DIP Financing Orders, the Cash Collateral Orders or DIP Financing Orders, as applicable, shall control, in each case.

WHEREFORE the Debtors herein pray for an Order of the Court (a) granting the relief requested herein; (b) authorizing EDP to take possession of the Premises; and (c) for such other and further relief as may be just and proper.

Respectfully Submitted:

PRELLE ERON & BAILEY, P.A.
Attorneys for Debtors

*/s/ David Prelle Eron*
DAVID PRELLE ERON, #23429
301 N. Main Street, Suite 2000
Wichita, KS 67202
316-262-5500 / 316-262-5559 (fax)
david@eronlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2024, a true and correct copy of the foregoing was electronically filed with the Court using the CM/ECF system, which sent notification to the Office of the U.S. Trustee and to all parties of interest participating in the CM/ECF system.

Furthermore, I certify that true and correct copies of the same were forwarded via U.S. Mail First Class and properly addressed to the following:

See Attached Matrix.

*/s/ Margaret R. Spangler*
MARGARET R. SPANGLER

4

Assistant to David Prelle Eron

**LEASE AGREEMENT**

**by and between**

**EL DORADO PIONEER, LLC,**
**a Delaware limited liability company,**

**Landlord**

**and**

**CONTINENTAL AMERICAN CORPORATION,**
**a Kansas corporation,**

**Tenant**

# TABLE OF CONTENTS

**Title**                                                                                                                              **Page**

LEASE SUMMARY ........................................................................................................................i
1.     PREMISES .................................................................................................................1
2.     TERM .........................................................................................................................1
3.     RENT .........................................................................................................................2
4.     SECURITY DEPOSIT ................................................................................................3
5.     ADDITIONAL RENT .................................................................................................3
6.     PARKING ..................................................................................................................6
7.     PERMITTED USES ....................................................................................................6
8.     ENVIRONMENTAL COMPLIANCE/HAZARDOUS MATERIALS ..........................6
9.     UTILITIES ................................................................................................................9
10.   REPAIRS BY LANDLORD ......................................................................................10
11.   REPAIRS BY TENANT ...........................................................................................10
12.   TENANT'S TAXES AND ASSESSMENTS ..............................................................10
13.   ALTERATION OF PREMISES ................................................................................10
14.   INSURANCE ...........................................................................................................11
15.   WAIVER, EXCULPATION AND INDEMNITY .......................................................13
16.   CONSTRUCTION LIENS ........................................................................................14
17.   QUIET ENJOYMENT .............................................................................................15
18.   LANDLORD'S RIGHT OF ENTRY .........................................................................15
19.   DESTRUCTION OF BUILDING ..............................................................................15
20.   EMINENT DOMAIN ..............................................................................................16
21.   BANKRUPTCY .......................................................................................................16
22.   DEFAULT ................................................................................................................16
23.   SURRENDER OF PREMISES ..................................................................................17
24.   HOLDING OVER ....................................................................................................17
25.   SURRENDER OF LEASE ........................................................................................18
26.   INTENTIONALLY OMITTED ................................................................................18
27.   RULES AND REGULATIONS .................................................................................18
28.   NOTICE ...................................................................................................................18
29.   ASSIGNMENT AND SUBLETTING .......................................................................19
30.   ATTORNEY'S FEES ...............................................................................................19
31.   JUDGMENT COSTS ................................................................................................20
32.   BROKERS ...............................................................................................................20
33.   SUBORDINATION OF LEASE ...............................................................................20
34.   INTENTIONALLY OMITTED ................................................................................21
35.   ESTOPPEL CERTIFICATES AND FINANCIAL STATEMENTS ..............................21
36.   SHORT FORM OF LEASE ......................................................................................21
37.   SIGNS .....................................................................................................................21
38.   INTENTIONALLY OMITTED ................................................................................21
39.   FORCE MAJEURE ..................................................................................................21
40.   GENERAL PROVISIONS ........................................................................................22

Exhibits

Exhibit "A"     Premises
Exhibit "B"     Declaration of Lease Commencement

# LEASE SUMMARY

Set forth below is a summary of certain terms and conditions of the Lease Agreement between EL DORADO PIONEER, LLC, a Delaware limited liability company, as Landlord, and CONTINENTAL AMERICAN CORPORATION, a Kansas corporation, as Tenant, solely for the convenience of the parties. In the event there is a conflict between this Lease Summary and the terms and conditions of the Lease Agreement, the terms and conditions of the Lease Agreement shall prevail.

A. **Building** means that certain building containing approximately 30,000 total rentable square feet and having the street address of 1220 Haverhill Road, El Dorado, Kansas. See Paragraph 1.

B. **Premises** means the Building, as outlined on the site plan attached as **Exhibit "A"**. See Paragraph 1.

C. **Term** means four (4) years from the Commencement Date, unless extended or terminated earlier by law or any provision of the Lease. See Paragraph 2.1.

D. **Commencement Date** means 12:01 AM on the Closing Date as defined in the Purchase Agreement. See Paragraph 2.2.

F. **Base Rent** initially means $11,000.00 per month for the Premises beginning on the Commencement Date. All rent is due on the first day of each month and shall be paid to Landlord at 4020 Kinross Lakes Parkway, Suite 200, Richfield, Ohio 44286. See Paragraph 3.

G. **Security Deposit** means $48,783.60 based on four (4) month's Base Rent for last month of the Term. See Paragraph 4.

H. **Additional Rent** means Tenant's Share of the Project Expenses, payable monthly in advance together with Base Rent. See Paragraph 5.2.A.

I. **Project Expenses** means the sum of Taxes, Insurance Expenses and Property Expenses, related to the Property. See Paragraph 5.2.E.

J. **Tenant's Share** for the Premises means 100%. See Paragraph 5.2.I.

K. **Permitted Use** means warehousing, manufacturing and storage purposes and uses customarily associated therewith. See Paragraph 7.

L. **Utilities**. Tenant shall pay the cost of its Utilities. See Paragraph 9.

M. **Taxpayer Identification Number** for Tenant is 48-0862798.

**LEASE AGREEMENT**

THIS LEASE AGREEMENT ("**Lease**"), dated as of August ___, 2023, is made by and between EL DORADO PIONEER, LLC, a Delaware limited liability company ("**Landlord**"), and CONTINENTAL AMERICAN CORPORATION, a Kansas corporation ("**Tenant**").

**WITNESSETH**

## 1. PREMISES

**1.1.** **Property**. Landlord, as buyer, is acquiring from Tenant, as seller, that certain real property containing approximately 7.6 acres of land and improved with a building containing approximately 30,000 square feet ("**Building**") located at1220 Haverhill Road, El Dorado, Kansas (**"Land"**) in accordance with the terms of the Purchase and Sale Agreement dated May 1, 2023, as may be amended ("**Purchase Agreement**") and, accordingly, the consummation of the acquisition of the Property shall be a condition precedent to the effectiveness of this Lease. The Building and the Land are collectively referred to as the "**Property**".

**1.2.** **Premises**. Landlord, for and in consideration of the rents, covenants, agreements, and stipulations contained herein, to be paid, kept and performed by Tenant, leases to Tenant, and Tenant hereby leases and takes from Landlord upon the terms and conditions contained herein, approximately 30,000 square feet of office/warehouse/industrial space within the Property, as outlined in the site plan attached as **Exhibit "A"** (the "**Premises**"). Landlord shall have the right to measure the Premises in accordance with BOMA industrial standards for a single building, and such measured square footage shall be used for the calculation of all Lease charges based on square footage, including without limitation Base Rent under Paragraph 3.1.

**1.3.** **Common Areas**. In addition to the Premises, Tenant shall have the use of the common areas to be designated by Landlord from time to time on the Property; such areas shall include, but not be limited to, parking areas, access roads and facilities, interior corridors, sidewalks, driveways and landscaped and open areas (collectively, "**Common Areas**"). The use of the Common Areas shall be for the exclusive use of Tenant and Tenant's employees, agents, suppliers, customers and patrons, until such time that Landlord constructs other building(s) or improvements intended to be used by another party or entity on the Property, at which time such Common Areas shall be for the non-exclusive use of Tenant and Tenant's employees, agents, suppliers, customers and patrons, in common with Landlord and all other tenants of the Property and all such other persons to whom Landlord has previously granted, or may hereinafter grant, rights of usage; provided that such exclusive use, and if applicable nonexclusive use, shall be expressly subject to such reasonable rules and regulations which may be adopted by Landlord from time to time. Tenant shall be responsible to maintain, repair and replace the Common Areas in the same manner as the Premises and shall further be responsible for snow plowing within the Common Areas. In the event that Tenant fails to maintain or repair the Common Areas, Landlord shall have the right to take over such maintenance and charge back Tenant for same as part of Property Expenses Tenant shall not be entitled to use the Common Areas for storage of goods, vehicles, refuse or any other items. Landlord reserves the right to alter, modify, enlarge, diminish, reduce or eliminate the Common Areas from time to time in its sole discretion; provided, however, it does not unreasonably and materially interfere with Tenant's use and occupancy of the Premises. Landlord shall have the right to modify the Common Areas, and if necessary, parts of the Premises, in order to implement new, necessary security measures and Landlord shall endeavor to minimize any adverse effect on Tenant's use of the Premises. If Tenant shall use any of the Common Areas for storage of any items, Tenant shall pay all fines imposed upon either Landlord or Tenant by any fire, building or other regulatory body, and Tenant shall pay all costs incurred by Landlord to clear and clean the Common Areas and dispose of such items, together with any additional costs for testing and special disposal, if required.

## 2. TERM

**2.1.** **Term**. The term of the Lease shall be for four (4) years beginning on the Commencement Date ("**Term**"), unless extended or sooner terminated pursuant to the terms of this Lease. If the last day of the Term shall fall on other than the last day of a calendar month, the Term shall be extended so as to end on the last day of such calendar month. The term "**Lease Year**" as used herein shall mean the first day of the calendar month immediately

1

following the Commencement Date if the Commencement Date falls on any day other than the first day of a calendar month, or any anniversary thereafter.

**2.2. Commencement Date**. The term "**Commencement Date**" as used herein shall mean 12:01 AM on the Closing Date as defined in the Purchase Agreement.

**2.3. Occupancy Date**. The term "**Occupancy Date**" as used herein shall mean the earlier of: (i) the Commencement Date, and (ii) the date Tenant is or was granted access to all or any portion of the Premises.

## 3. RENT

**3.1. Rent**. Rent shall be due and payable in lawful money of the United States in advance on the first day of each month after the Commencement Date. Tenant shall pay to Landlord as base rent ("**Base Rent**") for the Premises, without notice or demand and without abatement, deduction, offset or set off, the sums set forth in the table below (which table reflects a three and one-half percent (3.5%) annual increase in Base Rent for each Lease Year during the Term):

      A.      $11,000.00 per month (based upon $4.40 per square foot per year) beginning on the Commencement Date and continuing for Lease Year 1;

      B.      $11,385.00 per month (based upon $4.55 per square foot per year) for Lease Year 2;

      C.      $11,783.48 per month (based upon $4.71 per square foot per year) for Lease Year 3; and

      D.      $12,195.90 per month (based upon $4.88 per square foot per year) for Lease Year 4.

Rent for any period during the Term hereof which is for less than one (1) full calendar month shall be prorated based upon the actual number of days of the calendar month involved. Tenant shall pay the first full month's Base Rent and any other applicable charges upon the Commencement Date. Upon Landlord's re-measurement of the Premises, the Base Rent schedule above shall be revised, at the same per square foot rental rate, based upon the actual BOMA measurements as calculated pursuant to <u>Paragraph 1.2</u> herein

**3.2. Place of Payment**. All payments under this Lease shall be made by Tenant to Landlord by wire transfer or ACH with instructions to be provided by Landlord, or by check payable to and mailed or personally delivered to Landlord at the following address or such other address(es) which Landlord may notify Tenant from time to time: c/o IRG Realty Advisors, LLC, 4020 Kinross Lakes Parkway, Suite 200, Richfield, Ohio 44286.

**3.3. Late Payment**. Tenant hereby acknowledges that late payment by Tenant to Landlord of Rent (as defined in <u>Paragraph 5.1.G.</u> herein) pursuant to this Lease will cause Landlord to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Accordingly, if any installment of Rent or other payment under this Lease is not received by Landlord, on or before the fifth (5th) day of the month in which such Rent or other payment is due, Tenant shall pay a late charge equal to five percent (5%) of such overdue amounts. Tenant shall also be responsible for a service fee equal to fifty dollars ($50.00) for any check returned for insufficient funds together with such other costs and expenses as may be imposed by Landlord's bank. The payment to and acceptance by Landlord of such late charge shall in no event constitute a waiver by Landlord of Tenant's default with respect to such overdue amounts, nor prevent Landlord from exercising any of the other rights and remedies granted at law or equity or pursuant to this Lease.

**3.4. Payment on Account**. No payment by Tenant or receipt by Landlord of a lesser amount than the Rent actually due hereunder shall be deemed to be other than a payment on account. No restrictive endorsement or statement on any check or any letter accompanying any check or payment shall be deemed to affect an accord and satisfaction or have any effect whatsoever. Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance or pursue any other remedy in this Lease or at law or in equity provided.

## 4. SECURITY DEPOSIT

Upon execution of this Lease, Tenant shall pay to Landlord a security deposit for the faithful performance of Tenant's obligations under this Lease in the amount of $48,783.60 ("**Security Deposit**") representing four (4) months of the Base Rent due for the last month of the Term. If Tenant fails to pay Rent or other charges due hereunder, or otherwise defaults under this Lease, Landlord may use, apply or retain all or a portion of the Security Deposit to compensate Landlord for the amount due by Tenant (including reasonable attorneys' fees incurred due to Tenant's failure to pay or default) under this Lease. If Landlord uses or otherwise applies all or any portion of the Security Deposit, Tenant shall restore such Security Deposit within ten (10) days of notice from Landlord. The Security Deposit shall be non-interest bearing and Landlord shall be entitled to retain such funds in its general accounts. The balance of the Security Deposit not applied or used by Landlord as permitted in this Paragraph 4 shall be refunded to Tenant thirty (30) days after the later of (i) expiration or other termination of this Lease, and (ii) the date Tenant has vacated the Premises.

## 5. ADDITIONAL RENT

**5.1** **Absolute Net Lease**. This Lease is a net lease in which (A) Tenant, in addition to the payment of Base Rent, shall be directly responsible for the payment of any and all Property Expenses (as defined in Paragraph 5.2.F) and all Utilities (as defined in Paragraph 9) with respect to the Property (provided that Tenant shall reimburse Landlord for Tenant's Share of Taxes and Insurance Expenses), and (B) for clarity purposes, except as otherwise specifically provided in Paragraph 19.1, Landlord shall have no obligations of any nature with respect to the Property. Notwithstanding any other provision of this Lease to the contrary, Tenant shall be responsible for repair, maintenance, restoration, replacement, and construction with respect to the Property as more fully set forth in Paragraph 11 herein. In addition, Tenant shall be solely responsible for any security related to the Property. At the expiration of the Term or any prior termination of this Lease, Tenant shall return the Premises to Landlord in at least as good a condition as the condition of the Premises on the Commencement Date, reasonable wear and tear and casualty damage excepted, and in accordance with Paragraph 23.

**5.2 Definitions**.

A. "**Additional Rent**" shall mean Tenant's Share of the Project Expenses.

B. "**Capital Improvement**" shall mean any capital improvement or replacement to the Property or components thereof, as reasonably determined by Landlord. The costs of all Capital Improvements shall be amortized over the earlier of (i) the useful life of such Capital Improvement, and (ii) ten years from the Commencement Date, at an interest rate of twelve percent (12%) per annum.

C. "**Computation Year**" shall mean each twelve (12) consecutive month period commencing January 1 of each year during the Term, provided that Landlord, upon notice to Tenant, may (i) change the Computation Year from time to time to any other twelve (12) consecutive month period, or (ii) adjust payments due within any such Computation year, to equitably adjust for Tenant's Share of Project Expenses due within any portion of the Computation Year.

D. "**Insurance Expenses**" shall mean the aggregate amount of the cost of fire, extended coverage, boiler, sprinkler, commercial general liability, property damage, rent, flood, earthquake, tornado, terrorism and other insurance obtained by Landlord in connection with the Property, including insurance required pursuant to Paragraph 14.1 hereof, and the deductible portion of any insured loss otherwise covered by such insurance.

E. "**Project Expenses**" shall mean and include Taxes, Insurance Expenses and Property Expenses.

F. "**Property Expenses**" means all costs and expenses connected with or related to the operation, maintenance, repair and/or restoration of the Property and the systems and facilities within the Property, including, without limitation, (i) all Utilities (as defined in Paragraph 9), and (ii) all of Tenant's repair and maintenance obligations as set forth in Paragraph 11. Tenant shall also be responsible to reimburse Landlord for managerial fees,

3

administrative expenses related to the Property (in an amount equal to ten percent (10%) of the Taxes and Insurance, and, if Landlord is required to take over the maintenance of the Property, the Property Expenses, but excluding managerial fees) and professional fees. For managerial fees, Tenant's portion shall be calculated by multiplying the gross rents from Tenant by four percent (4%). To the fullest extent possible, Tenant shall be directly responsible for the payment of all Property Expenses due hereunder and any such amount actually directly paid by Tenant shall not be included as part of Property Expenses. In the event that Tenant shall fail to directly pay any Property Expenses, or Landlord elects, in Landlord's sole discretion, to incur any Property Expenses as a result of Tenant's failure to properly maintain the Property as required herein, all such expenses incurred by Landlord shall be included as part of Project Expenses and Tenant shall reimburse Landlord for Tenant's Share of Property Expenses, which shall include the annual amortization amount of any Capital Improvement. Tenant shall provide to Landlord an annual property condition report ("**PCR**") of the Property and if such PCR shows that Tenant has failed to properly maintain the Property as required hereunder, Landlord shall provide written notice to Tenant of such failure and Tenant shall have thirty (30) days following receipt of such notice to cure such failure. If Tenant fails to cure within such 30-day period, Landlord shall have the right, in its sole discretion, to take over the maintenance and repair of the Property and Tenant shall reimburse Landlord for Tenant's Share of Property Expenses, which shall include the annual amortization amount of any Capital Improvement.

G. "**Rent**" or "**rent**" shall mean the total of all sums due to Landlord from Tenant hereunder, including, but not limited to Base Rent, Additional Rent, Utilities and all other fees and charges owed to Landlord as well as all damages, costs, expenses, and sums that Landlord may suffer or incur, or that may become due, by reason of any default of Tenant or failure by Tenant to comply with the terms and conditions of this Lease.

H. "**Taxes**" shall mean all taxes, assessments and charges levied upon or with respect to the Property or any personal property of Landlord used in the operation thereof, or Landlord's interest in the Property or such personal property. Taxes shall include, without limitation, all general real property taxes and general and special assessments, occupancy taxes, commercial rental taxes, impervious surface fees or taxes, charges, fees or assessments for transit, housing, police, fire or other governmental services or purported benefits to the Property, service payments in lieu of taxes, and any tax, fee or excise on the act of entering into any lease for space in the Property, or on the use or occupancy of the Property or any part thereof, or on the rent payable under any lease or in connection with the business of renting space in the Property that are now or hereafter levied or assessed against Landlord by the United States of America, the state in which the Property is located, or any political subdivision, public corporation, district or other political or public entity, whether due to increased rate and/or valuation, additional improvements, change of ownership, or any other events or circumstances, and shall also include any other tax, fee or other excise, however described, that may be levied or assessed as a substitute for or as an addition to, as a whole or in part, any other Taxes whether or not now customary or in the contemplation of the parties on the date of this Lease. Taxes shall not include franchise, transfer, inheritance or capital stock taxes or income taxes measured by the net income of Landlord from all sources unless, due to a change in the method of taxation, any of such taxes is levied or assessed against Landlord as a substitute for or as an addition to, as a whole or in part, any other tax that would otherwise constitute a Tax. Taxes shall also include reasonable legal fees, appraisal costs, expert witness and consultant fees, and other costs and disbursements incurred in connection with proceedings to contest, determine or reduce Taxes. If any Taxes are specially assessed by reason of the occupancy or activities of one or more tenants and not the occupancy or activities of the tenants as a whole, such Taxes shall be allocated by Landlord to the tenant or tenants whose occupancy or activities brought about such assessment.

I. "**Tenant's Share**" shall mean 100%.

**5.3. Payments**. In addition to Base Rent, and beginning on the Commencement Date, Tenant shall pay to Landlord, monthly, in advance, one-twelfth (1/12) of the Additional Rent due for each Computation Year, in an amount estimated by Landlord and billed by Landlord to Tenant ("**Estimated Expenses**"). Landlord shall have the right to reasonably revise such estimates from time to time and to adjust Tenant's monthly payments accordingly. If either the Commencement Date or the expiration of the Term shall occur on a date other than the first or last day of a Computation Year respectively, the Additional Rent for such Computation Year shall be in the proportion that the number of days the Lease was in effect during such Computation Year bears to 365. With reasonable promptness after the expiration of each Computation Year, Landlord shall furnish Tenant with a statement of the actual expenses ("**Actual Expenses**"), setting forth in reasonable detail the Project Expenses for such Computation Year, and Tenant's Share of such Project Expenses. If the actual Project Expenses for such Computation Year exceed the estimated Project

Expenses paid by Tenant for such Computation Year, Tenant shall pay to Landlord the difference between the amount paid by Tenant and the actual Project Expenses within thirty (30) days after the receipt of Landlord's Expense Statement. If the total amount paid by Tenant for any such Computation Year shall exceed the actual Project Expenses for such Computation Year, such excess shall be credited against the next installments of Additional Rent due from Tenant to Landlord as determined by Landlord. Neither Landlord's failure to deliver, nor late delivery of, the Estimated Expenses or Actual Expenses shall constitute a default by Landlord hereunder or a waiver of Landlord's right to collect any payment provided for herein.

     **5.3.** **Excessive Expenses**. In addition to any other sums payable hereunder, Tenant shall (A) pay to Landlord any excessive or extraordinary operating or insurance costs as Landlord may reasonably determine to be incurred due to Tenant's excessive and extraordinary use of the Premises or other facilities of the Property, as compared to other similar tenants of the Property, including, but not limited to, use beyond the normal business work week, and (B) reimburse Landlord for any maintenance, repair, or restoration of the Common Areas or Parking Facilities (as defined in Paragraph 6) that become necessary as a result of the excessive use, negligence or willful misconduct of Tenant or any violation by Tenant of any of the terms of this Lease. Landlord may reasonably estimate the amount of such use and costs, and bill Tenant periodically for the same.

     **5.4.** **Disputes**. If there is any dispute as to any Additional Rent due under this Paragraph 5 for any particular Computation Year, Tenant shall have the right during the six (6) month period following Tenant's receipt of the Actual Expenses for such disputed Computation Year ("**Audit Period**"), upon reasonable notice and at reasonable times, to inspect Landlord's accounting records at Landlord's accounting office solely related to any such disputed items. Tenant's failure to provide Landlord with notice of any dispute as to Additional Rent during the Audit Period, shall constitute a waiver by Tenant to dispute or audit the Additional Rent, or any component thereof, for such Computation Year. If after such inspection Tenant still disputes such Additional Rent, upon Tenant's written request therefore, a certification as to the proper amount of Project Expenses and the amount due to or payable by Tenant shall be made by an independent accounting firm selected by Landlord and Tenant. If Landlord and Tenant are unable to agree upon an accounting firm, Landlord and Tenant shall each select an accounting firm and the two (2) firms so selected shall select a third firm which shall make the certification requested hereunder. Tenant agrees to pay all costs and expenses incurred in connection with such certification. Such certification shall be final and conclusive as to all parties. If there is any dispute as to determination and billing by Landlord for Utilities under Paragraph 9, then the dispute shall be resolved by an engineer mutually acceptable to, and equally paid by, Landlord and Tenant. Notwithstanding the foregoing, in no event shall Tenant be entitled to withhold payment of Additional Rent or Utilities as billed by Landlord during the certification or Utility dispute resolution process and Tenant shall remain obligated to pay all Additional Rent and Utilities due as otherwise set forth in this Lease. Tenant's failure to timely pay any Additional Rent or Utilities as determined by Landlord shall be a default by Tenant and Landlord reserves all rights related to or arising out of a default by Tenant in the payment of rent. In the event Tenant shall prevail in the certification or Utility dispute resolution process, Landlord, at its election, shall either promptly refund any excess Additional Rent payments to Tenant or shall apply such excess as a credit against future Additional Rent or Utilities due from Tenant.

## 6. PARKING

     All vehicles located on or about the Premises shall be licensed and insured at all times and shall be in operable condition. NOTWITHSTANDING ANYTHING CONTAINED IN THIS LEASE TO THE CONTRARY, TENANT ACKNOWLEDGES AND AGREES THAT IT SHALL USE THE PREMISES AT ITS SOLE RISK AND THAT LANDLORD SHALL HAVE NO RESPONSIBILITY TO PREVENT, AND SHALL NOT BE LIABLE TO TENANT OR ANY TENANT REPRESENTATIVES FOR, DAMAGES OR INJURIES TO PERSONS OR PROPERTY PARKED OR OTHERWISE LOCATED ON OR ABOUT THE PREMISES.

## 7.     PERMITTED USES

Tenant shall use and occupy the Premises throughout the term of the Lease for warehousing, manufacturing of balloons, storage and uses customarily associated therewith and for no other purpose; in particular no use shall be made or permitted to be made of the Premises, nor acts done which will increase the existing rate of insurance upon the Building, or cause a cancellation of any insurance policy covering the Building, or any part thereof, nor shall Tenant sell, or permit to be kept, used, or sold, in or about the Premises, any article which may be prohibited by the standard form of fire insurance policies.  Tenant shall comply with all laws, ordinances, rules, regulations and codes of all municipal, county, state and federal authorities pertaining to Tenant's use and occupation of the Premises. Tenant shall not commit, or suffer to be committed, or any waste upon the Premises or any public or private nuisance. Tenant shall also specifically not permit the storage of tires, flammable products, batteries, fertilizer, charcoal or any other similar items that cause objectionable odors to escape or be emitted from the Premises; Tenant shall ensure sanitation and freedom from odor, smell and infestation from rodents or insects.  Tenant, at its expense, shall provide (and enclose if required by codes or Landlord) a dumpster or dumpsters for Tenant's trash in a location and manner approved by Landlord, and shall cause its trash to be removed at intervals reasonably satisfactory to Landlord.  In connection therewith, Tenant shall keep the dumpster(s) clean and insect, rodent and odor free.

## 8.     ENVIRONMENTAL COMPLIANCE/HAZARDOUS MATERIALS

8.1.     **Definitions**.  **"Hazardous Materials"** shall mean any  (i) material, substance or waste that is or has the characteristic of being hazardous, toxic, ignitable, reactive, flammable, explosive, radioactive, mutagenic or corrosive, including, without limitation, petroleum, or any petroleum derivative, solvents, heavy metals, acids, pesticides, paints, printing ink, PCBs, asbestos, perfluoroalkyl and polyfluoroalkyl substances and materials commonly known to cause cancer or reproductive problems and those materials, substances and/or wastes, including wastes which are or later become regulated by any local governmental authority, the state in which the Premises are located or the United States Government, including, but not limited to, substances defined as "hazardous substances," "hazardous materials," "toxic substances" or "hazardous wastes" in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. §9601, et seq.; the Hazardous Materials Transportation Act, 49 U.S.C. §1801, et seq.; the Resource Conservation and Recovery Act, 42 U.S.C. §6901, et seq.; all environmental laws of the state where the Property is located, and any other environmental law, regulation or ordinance now existing or hereinafter enacted, (ii) any other substance or matter which results in liability to any person or entity from exposure to such substance or matter under any statutory or common law theory, and (iii) any substance or matter which is in excess of relevant and appropriate levels set forth in any applicable federal, state or local law or regulation pertaining to any hazardous or toxic substance, material or waste, or for which any applicable federal, state or local agency orders or otherwise requires removal, remediation or treatment.  "**Hazardous Materials Laws**" shall mean all present and future federal, state and local laws, ordinances and regulations, prudent industry practices, requirements of governmental entities and manufacturer's instructions relating to industrial hygiene, environmental protection or the use, analysis, generation, manufacture, storage, presence, disposal or transportation of any Hazardous Materials, including without limitation the laws, regulations and ordinances referred to in the preceding sentence.

8.2.     **Use of Premises by Tenant**.  Tenant hereby agrees that Tenant and Tenant's officers, employees, representatives, agents, consultants, contractors, subcontractors, successors, assigns, subtenants, concessionaires, invitees and any other occupants of the Premises (collectively, "**Tenant Representatives**") shall not cause or permit any Hazardous Materials to be used, generated, manufactured, refined, produced, processed, stored or disposed of, on, under or about the Premises or the Property or transport to or from the Premises or the Property without the express prior written consent of Landlord.  Landlord may, in its sole discretion, place such conditions as Landlord deems appropriate with respect to such Hazardous Materials, including without limitation, rules, regulations and safeguards as may be required by any insurance carrier, environmental consultant or lender of Landlord, or environmental consultant retained by any lender of Landlord, and may further require that Tenant demonstrates to Landlord that such Hazardous Materials are necessary or useful to Tenant's business and will be generated, stored, used and disposed of in a manner that complies with all Hazardous Materials Laws regulating such Hazardous Materials and with good business practices.  Tenant understands that Landlord may utilize an environmental consultant to assist in determining conditions of approval and monitoring in connection with the presence, storage, generation or use of Hazardous Materials on or about the Premises by Tenant, and Tenant agrees that any costs reasonably incurred by Landlord in connection with any such environmental consultant's services shall be reimbursed by Tenant to Landlord as Additional Rent upon demand.  Unless approved in writing by Landlord, Tenant shall not be entitled to utilize any Hazardous

6

Materials in the Premises. In connection therewith, Tenant shall at its own expense procure, maintain in effect and comply with all conditions of any and all permits, licenses and other governmental and regulatory approvals required for the storage or use by Tenant or any of Tenant's Representatives of Hazardous Materials on the Premises or the Property, including without limitation, discharge of (appropriately treated) materials or wastes into or through any sanitary sewer serving the Premises or the Property with all required permits. Notwithstanding the foregoing, Tenant shall be entitled to use and store in the Premises common cleaning solutions, lubricants and fuels used by Tenant in its ordinary operations, so long as the same are stored in appropriate containers, and in appropriate areas, in compliance with all Hazardous Materials Laws. Furthermore, Tenant hereby represents and warrants that, prior to the Commencement Date, Tenant and Tenant Representatives have not caused or permitted any Hazardous Materials to be used, generated, manufactured, refined, produced, processed, stored or disposed of, on, under or about the Premises or the Property or transported to or from the Premises or the Property.

8.3. **Remediation**. If at any time during the Term any contamination of the Premises or the Property by Hazardous Materials shall occur where such contamination is caused by the act or omission of Tenant or Tenant's Representatives ("**Tenant's Contamination**"), then Tenant, at Tenant's sole cost and expense, shall promptly and diligently remove such Hazardous Materials from the Premises, the Property or the groundwater underlying the Premises or the Property to the extent required to comply with applicable Hazardous Materials Laws to restore the Premises or the Property to the same or better condition which existed before Tenant's Contamination. Furthermore, Tenant shall be responsible for any and all remediation, response or corrective action required by any local, state or federal agencies necessary to contain and/or remediate any environmental contamination on the site existing as of the Commencement Date ("**Preexisting Contamination**"). Tenant shall not take any required remedial action in response to any Tenant's Contamination or Preexisting Contamination in or about the Premises or the Property, or enter into any settlement agreement, consent, decree or other compromise in respect to any claims relating to any Tenant's Contamination or Preexisting Contamination without first obtaining the prior written consent of Landlord, which may be subject to conditions imposed by Landlord as determined in Landlord's sole discretion, provided, however, Landlord's prior written consent shall not be necessary in the event that the presence of Hazardous Materials on, under or about the Premises or the Property (i) poses an immediate threat to the health, safety or welfare of any individual or (ii) is of such a nature that an immediate remedial response is necessary and it is not possible to obtain Landlord's consent before taking such action. Tenant and Landlord shall jointly prepare a remediation plan in compliance with all Hazardous Materials Laws and the provisions of this Lease. In addition to all other rights and remedies of Landlord hereunder, if Tenant does not promptly and diligently take all steps to prepare and obtain all necessary approvals of a remediation plan for any Tenant's Contamination or Preexisting Contamination, and thereafter commence the required remediation of any Hazardous Materials released or discharged in connection with Tenant's Contamination or Preexisting Contamination within thirty (30) days after all necessary approvals and consents have been obtained and thereafter continue to prosecute such remediation to completion in accordance with an approved remediation plan, then Landlord, at its sole discretion, shall have the right, but not the obligation, to cause such remediation to be accomplished, and Tenant shall reimburse Landlord within fifteen (15) business days of Landlord's demand for reimbursement of all amounts reasonably paid by Landlord (together with interest on such amounts at the highest lawful rate until paid), when such demand is accompanied by reasonable proof of payment by Landlord of the amounts demanded. Tenant shall promptly deliver to Landlord, legible copies of hazardous waste manifests reflecting the legal and proper disposal of all Hazardous Materials removed from the Premises or the Property as part of Tenant's remediation of any Tenant's Contamination or Preexisting Contamination.

8.4. **Disposition of Hazardous Materials**. Except as discharged into the sanitary sewer in strict accordance and conformity with Paragraph 8.2 herein and all applicable Hazardous Materials Laws, Tenant shall cause any and all Hazardous Materials removed from the Premises and the Property (including without limitation all Hazardous Materials removed from the Premises as part of the required remediation of Tenant's Contamination or Preexisting Contamination) to be removed and transported solely by duly licensed haulers to duly licensed facilities for recycling or final disposal of such materials and wastes. Tenant is and shall be deemed to be the "operator" "in charge" of Tenant's "facility" and the "owner," as such terms are used in the Hazardous Materials Laws, of all Hazardous Materials and any wastes generated or resulting therefrom. Tenant shall be designated as the "generator," as such terms are used in the Hazardous Materials Laws, on all manifests relating to such Hazardous Materials or wastes.

8.5. **Notice of Hazardous Materials Matters**. Tenant shall immediately notify Landlord in writing of: (i) any enforcement, clean up, removal or other governmental or regulatory action instituted, contemplated or

threatened concerning the Premises pursuant to any Hazardous Materials Laws; (ii) any claim made or threatened by any person against Tenant or the Premises relating to damage contribution, cost recovery, compensation, loss or injury resulting from or claimed to result from any Hazardous Materials on or about the Premises; (iii) any reports made to any environmental agency arising out of or in connection with any Hazardous Materials in or removed from the Premises including any complaints, notices, warnings or asserted violations in connection therewith, all upon receipt by Tenant of actual knowledge of any of the foregoing matters; and (iv) any spill, release, discharge or disposal of any Hazardous Materials in, on or under the Premises, the Property, or any portion thereof. Tenant shall also supply to Landlord as promptly as possible, and in any event within five (5) business days after Tenant first receives or sends the same, with copies of all claims, reports, complaints, notices, warnings or asserted violations relating in any way to the Premises or Tenant's use thereof.

   **8.6.** **Indemnification by Tenant**. Tenant shall indemnify, defend (by counsel reasonably acceptable to Landlord), protect, and hold Landlord, and each of Landlord's employees, representatives, agents, attorneys, successors and assigns, and its directors, officers, partners, representatives, any lender having a lien on or covering the Premises or any part thereof, and any entity or person named or required to be named as an additional insured in Paragraph 14.2 of this Lease free and harmless from and against any and all claims, actions (including, without limitation, the cost of investigation and testing, consultant's and reasonable attorney's fees, remedial and enforcement actions of any kind, administrative (informal or otherwise) or judicial proceedings and orders or judgments arising therefrom), causes of action, liabilities, penalties, forfeitures, damages (including, but not limited to, damages for the loss or restriction or use of rentable space or any amenity of the Premises or the Property, or damages arising from any adverse impact on marketing of space in the Premises or the Property), diminution in the value of the Premises or the Property, fines, injunctive relief, losses or expenses (including, without limitation, reasonable attorneys' fees and costs) or death of or injury to any person or damage to any property whatsoever, arising from or caused in whole or in part, directly or indirectly by (i) any Tenant's Contamination, (ii) any Preexisting Contamination, (iii) Tenant's or Tenant's Representatives failure to comply with any Hazardous Materials Laws with respect to the Premises, or (iv) offsite disposal or transportation of Hazardous Materials on, from, under or about the Premises or the Property by Tenant or Tenant's Representatives. Tenant's obligations hereunder shall include without limitation, and whether foreseeable or unforeseeable, all costs of any required or necessary repair, clean up or detoxification or decontamination of the Premises, and the preparation and implementation of any closure, remedial action or other required plans in connection therewith. For purposes of the indemnity provisions hereof, any acts or omissions of Tenant, or by employees, agents, assignees, contractors or subcontractors of Tenant or others acting for or on behalf of Tenant (whether or not they are negligent, intentional, willful or unlawful), shall be strictly attributable to Tenant.

   **8.7.** **Indemnification by Landlord**. Landlord shall indemnify, defend (by counsel reasonably acceptable to Tenant), protect, and hold Tenant, and each of Tenant's employees, representatives, agents, attorneys, successors and assigns, free and harmless from and against any and all claims, actions, causes of action (including, without limitation, remedial and enforcement actions of any kind, administrative or judicial proceedings, and orders or judgments arising therefrom), liabilities, penalties, forfeitures, losses or expenses (including, without limitation, reasonable attorneys' fees and costs) or death of or injury to any person or damage to any property whatsoever, to the extent arising from or caused in whole or in part, directly or indirectly by any contamination caused by Landlord in violation of a Hazardous Material Law. Landlord's obligations hereunder shall include without limitation, and whether foreseeable or unforeseeable, all costs of any required or necessary repair, clean up or detoxification or decontamination of the Premises, and the preparation and implementation of any closure, remedial action or other required plans in connection therewith. This indemnity shall be specifically limited to affirmative acts of Landlord, and shall not include the acts or omissions of any other tenants of the Property or other persons.

   **8.8.** **Tenant Certifications**. Following written request by Landlord, within ninety (90) days prior to the expiration of the Term, Tenant shall certify to Landlord in writing that, to the best of its knowledge, (i) the Premises is free from all Hazardous Materials caused by Tenant or Tenant's Representatives, and (ii) no such Hazardous Materials exist on, under or about the Premises other than as specifically identified to Landlord by Tenant in writing. If Landlord reasonably believes that such certification is inaccurate, or if an environmental report is required by law, Landlord shall give notice to Tenant within thirty (30) days after receipt of Tenant's certification that Tenant shall have the Premises thoroughly inspected by an environmental consultant acceptable to Landlord for purposes of determining whether the Premises is free from all Hazardous Materials. If Landlord fails to timely give such notice, the requirement for an environmental inspection report is not required of Tenant unless such report is otherwise required by Tenant under this Paragraph 8. Landlord's failure to request an environmental inspection report shall in

no way alter, abridge or limit Tenant's indemnity obligation hereunder. Tenant shall deliver to Landlord a copy of the environmental consultant's report forty-five (45) days prior to the expiration of the Lease. In the event the report discloses the existence of any Hazardous Materials, requires any clean up or any other form of response (collectively, "**Clean-up**"), Tenant shall perform such immediately and deliver the Premises with the conditions specified in the report "cleaned up", to the full satisfaction of Landlord. In the event the conditions specified in the report require Clean-up which cannot be completed prior to the expiration of the Term, Tenant shall be obligated to pay Landlord the greater of (i) the fair market rental value of the Premises, or (ii) the rent hereunder, as adjusted, for each day delivery of the Premises in the required condition to Landlord is delayed beyond the expiration of the Term in addition to the Clean-up costs.

**8.9.    Exclusivity**. The allocations of responsibility between, obligations and liabilities undertaken by, and indemnifications given by Landlord and Tenant under this Paragraph 8, shall be the exclusive provisions under this Lease, applicable to the subject matter treated in this Paragraph 8, and any other conflicting or inconsistent provisions contained in this Lease shall not apply with respect to the subject matter.

**8.10.    Compliance with Environmental Laws**. Tenant shall at all times and in all respects comply with all Hazardous Materials Laws. All reporting obligations imposed by Hazardous Materials Laws are strictly the responsibility of Tenant. Tenant and Landlord have been informed that certain judicial decisions have held that, notwithstanding the specific language of a lease, courts may impose the responsibility for complying with legal requirements and for performing improvements, maintenance and repairs on a landlord or tenant based on the court's assessment of the parties' intent in light of certain equitable factors. Tenant and Landlord have each been advised by their respective legal counsel about the provisions of this Lease allocating responsibility for compliance with laws and for performing improvements, maintenance and repairs between Tenant and Landlord. Tenant and Landlord expressly agree that the allocation of responsibility for compliance with laws and for performing improvements, maintenance and repairs set forth in this Lease represents Tenant's and Landlord's intent with respect to this issue.

**8.11.    Survival and Duration of Obligations**. All covenants, representations, warranties, obligations and indemnities made or given under this Paragraph 8 shall survive the expiration or earlier termination of this Lease.

**9.    UTILITIES**

**9.1.**    Beginning on the Occupancy Date and continuing through the duration of the Lease, Tenant shall pay all service charges, utility deposits and fees for water, electricity, power, gas, sewage, telephone, and any other utility services furnished to the Premises, the improvements on the Premises and furnished to the Common Areas ("**Utilities**"). Tenant shall pay for all Utilities directly to the appropriate service provider. Tenant shall not at any time overburden or exceed the capacity of the mains, feeders, ducts, conduits or other facilities by which such Utilities are supplied to, distributed in, or serve the Premises.

**9.2**    If Tenant desires to install any equipment that shall require additional Utilities or any Utilities in a greater capacity than provided by Landlord, Tenant shall provide Landlord with plans and specifications for such installation and Landlord shall have the right to approve Tenant's request in Landlord's reasonable discretion. The installation, operation and maintenance of any such Utilities shall be at Tenant's expense.

**9.3**    If any Utilities are not separately metered or billed to Tenant for the Premises but rather are billed to and paid by Landlord for the entire Property or a portion of the Property greater than the Premises, Tenant shall pay to Landlord Tenant's share of the cost of such Utilities. If any Utilities are not separately metered, Landlord shall have the right to determine Tenant's consumption by submetering, survey or other methods designed to measure consumption with reasonable accuracy. Landlord shall charge Tenant for Utilities based upon Tenant's actual metered consumption, demand and a reasonable share of system losses and expenses which shall fairly include and allocate the costs of providing and allocating the Utilities as reasonably determined by Landlord. Landlord shall have the right from time to time to alter the method and source of supply to the Premises of any of the Utilities. Landlord may elect to separately meter or submeter each of the Utilities to the Premises in a manner reasonably determined by Landlord at Landlord's expense. If Tenant desires to contest the determination of Utility charges, Landlord and Tenant shall meet and attempt to resolve such disagreement. If Landlord and Tenant cannot agree on Tenant's Utility consumption and billing, then Tenant may exercise its right to dispute such amounts in accordance with Paragraph 5.4. There shall be no abatement of rent and Landlord shall not be liable for any reason for any loss or damage resulting from an

interruption of any of the Utility services, except to the extent caused by the negligence or willful misconduct of Landlord or its agents.

**10.     REPAIRS BY LANDLORD**.

Intentionally Deleted

**11.     REPAIRS BY TENANT**

As Tenant is already in occupancy of the Premises, Tenant accepts the Premises in its present "As-Is, Where-Is" condition and specifically acknowledges that (i) the Premises is suited for the uses intended by Tenant and (ii) Tenant shall be responsible to obtain any permits and/or certificates of occupancy and be responsible, at Tenant's sole cost and expense, for any costs associated with getting such permits and/or certificates of occupancy, including without limitation, costs charged by any governmental agency for upgrades to the Property or for code compliance to receive the permits and/or certificates of occupancy.  Tenant shall, at its own cost and expense, keep and maintain the interior and exterior of the Premises, promptly making all necessary repairs and replacements, including, but not limited to, structural soundness of the roof, foundations, and the exterior walls of the Building, electricity, gas, water, sewer and other utilities; utility systems; trash removal; security; snow plowing, sanding, salting and shoveling snow; landscaping, mowing and weed removal; pest control; sweeping and janitorial services; repair and maintenance costs for roof, flashing, roof membrane, awnings, decking, gutters, leaders, and downspouts; electrical, plumbing, sprinkler and HVAC repair and maintenance; fire alarm and sprinkler system testing, maintenance and repair; sealing, resurfacing, restriping and repair of all parking areas, loading and unloading areas, trash areas, roadways, driveways and walkways; painting of the Building; fence and gate repair and maintenance; repair and replacement of all lighting facilities; all equipment and facilities and components thereof within the Premises, asphalt, concreted alleyways and coverings, fixtures, walls (interior), finish work, ceilings, floors, lighting fixtures, bulbs and ballasts, utility connections and facilities within the Premises, windows, glass, doors, and plate glass, downspouts, gutters, air conditioning and heating systems, air rotation units, truck doors, dock levelers, bumpers, seals and enclosures, cranes, rail systems (if any), plumbing, electrical, termite and pest extermination, and damage to the Common Areas caused by Tenant.  Tenant, in keeping the Premises in good order, condition and repair, shall exercise and perform good maintenance practices.

Tenant shall perform periodic required maintenance with respect to the active and useable HVAC systems at the Premises. For avoidance of doubt, nothing contained herein shall require Tenant to improve the condition of the Premises beyond its present condition as of the Commencement Date. If Tenant fails to properly comply with its obligations under this <u>Paragraph 11</u>, Landlord may, but shall not be obligated to, perform such repair or take such other action required of Tenant at Tenant's expense.  Tenant shall be permitted to implement its own reasonable security measures in the Premises, subject to prior approval by Landlord.  Any security implemented by Tenant shall not interfere with the Building's security. Notwithstanding anything to the contrary herein, Tenant acknowledges and agrees that it shall be solely responsible for providing adequate security for its premises, trucks and containers, and its use of the Property and Premises thereof.  Landlord shall have no responsibility to prevent, and shall not be liable to Tenant, its agents, employees, contractors, visitors or invitees, for losses due to theft, burglary or other criminal activity, or for damages or injuries to persons or property resulting from Tenant's storage of trucks and containers on the Premises, from persons gaining access to the Premises or any part of the Property. Tenant hereby releases Landlord and its agents and employees from all liabilities for such losses, damages or injury, regardless of the cause thereof.

**12.     TENANT'S TAXES AND ASSESSMENTS**

Tenant covenants and agrees to pay promptly, when due, all personal property taxes or other taxes and assessments levied and assessed by any governmental authority upon the removable property of Tenant in, upon or about the Premises. In the event that such personal property taxes are assessed with the Taxes, Tenant shall be required to reimburse Landlord for Tenant's Share of such assessment.

**13.     ALTERATION OF PREMISES**

Tenant shall not alter, repair or change the Premises in any manner that (i) costs in excess of $10,000.00, (ii) alters the structural components of the Building or penetrates the roof in any manner, or (iii) requires a permit

(collectively, "**Tenant Repairs**") without the prior written consent of Landlord, which consent shall not be unreasonably withheld. Tenant shall provide Landlord, in a timely manner, with notice of all such Tenant Repairs and, if requested by Landlord, shall provide Landlord with drawings, schematics, and/or a description of the work. All alterations, improvements or changes (any of the foregoing, "**Tenant Alterations**") shall remain a part of and be surrendered with the Premises, unless Landlord directs its removal under Paragraph 23 of this Lease. Tenant shall (i) procure and keep in force, at Tenant's sole cost and expense, any permits, licenses, and other governmental and regulatory approvals required for any Tenant Alterations, and (ii) promptly provide Landlord with copies of any such permits, licenses, and other governmental and regulatory approvals. All Tenant Alterations shall be performed in a good and workmanlike manner, and in compliance with all applicable laws, ordinances, rules, regulations, codes, and permits, by licensed contractors, who shall satisfy the insurance requirements in Paragraph 14.4. Tenant shall fully pay and discharge, when due and payable, all claims for labor done and material and services furnished in connection with any Tenant Alterations, and shall not allow any liens or claims against the Premises or the Property.

## 14. INSURANCE

**14.1.    Landlord's Insurance**. Landlord shall maintain in full force and effect throughout the entire term of this Lease general comprehensive liability insurance for the Building and Common Areas and general fire and extended coverage insurance, including vandalism and special form or such other or broader coverage as may from time to time be customary on the Building and other areas of land within which the Building is located in such amounts determined by Landlord. Copies of all such insurance policies or certificates thereof endorsed to show payment of the premium shall be available for inspection by Tenant and such policies and certificates shall show Landlord and the beneficiary of any mortgage or deed of trust on the Premises to be additional insureds as their interests may exist (or a mortgagee loss payable endorsement). Such insurance may be provided by a blanket insurance policy covering the Premises, so long as the coverage on the Premises is at all times at least as great as required by this Paragraph 14. The insurance obtained by Landlord under this Paragraph 14.1 shall constitute an item of "Insurance Expenses" under Paragraph 5.1.D.

**14.2.    Tenant's Insurance**. Tenant agrees to take out and keep in force from the Occupancy Date and throughout the term hereof, without expense to Landlord, with an insurance company with general policy holder's rating of not less than A-VII, as rated in the most current Best's Insurance Reports, or other company acceptable to Landlord, the policies of insurance as set forth below. Tenant shall be permitted to obtain the insurance required under this Paragraph 14 by providing a blanket policy of insurance only if such blanket policies expressly provide coverage to the Premises and Landlord as required by this Lease without regard to claims made under such policies with respect to other persons or properties and in such form and content reasonably acceptable to Landlord. Commercial general liability insurance, employer's liability insurance and business automobile liability insurance required limits hereunder can be satisfied by an umbrella/excess liability insurance policy if the applicable insurance coverages are included under the umbrella/excess liability insurance policy. All such insurance policies shall be on an occurrence basis and not a claims-made basis, contain a standard separation of insureds provision, and shall name Landlord, its property manager IRG Realty Advisors, LLC (or such other property manager selected by Landlord), and their respective agents and employees as additional insureds on a primary and non-contributory basis.

A.    Causes of Loss – Special Form property insurance, in an amount not less than one hundred percent (100%) of replacement cost covering all tenant improvements, betterments and alterations permitted under this Lease, floor and wall coverings, and Tenant's office furniture, business and personal trade fixtures, equipment, furniture system and other personal property from time to time situated in the Premises. Such property insurance shall include a replacement cost endorsement, providing protection against any peril included within the classification fire and extended coverage, sprinkler damage, vandalism, malicious mischief, and such other additional perils as covered in a cause of loss (special form) insurance policy. The proceeds of such insurance shall be used for the repair and replacement of the property so insured, except that if not so applied or if this Lease is terminated following a casualty, the proceeds applicable to the leasehold improvements shall first be paid to Landlord and the proceeds applicable to Tenant's personal property shall then be paid to Tenant;

B.    Commercial general liability insurance, in the name of Tenant, insuring against any liability from the use and occupancy of the Premises and the business operated by Tenant. All such policies shall be written to apply to all bodily injury or death, property damage and personal injury losses, and shall

include blanket contractual liability (including Tenant's indemnity obligations under this Lease), broad form property damage liability, premise-operations and products-completed operations, and shall contain an exception to any pollution exclusion which insures damage or injury arising out of heat, smoke or fumes from hostile fire, a contractual liability endorsement, and provide primary coverage to Landlord (any insurance policy issued to Landlord providing duplicate or similar coverage shall be deemed to be excess over Tenant's policies), in such amounts as may from time to time be customary with respect to similar properties in the same area, but in any event not less than $3,000,000.00 per occurrence (or such other amounts as may be required by Landlord). The amounts of such insurance required hereunder shall be adjusted from time to time as requested by Landlord based upon Landlord's determination as to the amounts of such insurance generally required at such time for comparable premises and buildings in the general geographical area of the Premises. In addition, such policy of insurance shall include coverage for any potential liability arising out of or because of any construction, work of repair, maintenance, restoration, replacement, alteration, or other work done on or about the Premises by or under the control or direction of Tenant;

C. Workers Compensation insurance as required by the state law applicable in the state in which the Premises is located with Employers Liability insurance with limits of not less than $1,000,000.00; and

D. Business automobile liability insurance covering owned, hired and non-owned vehicles with limits of not less than $1,000,000.00 combined single limit (bodily injury and property damage) per occurrence.

**14.3.      Certificates of Insurance**. All policies of insurance set forth in Paragraph 14.2 above, shall provide that copies of the policies or certificates thereof showing the premium thereon to have been paid, shall be delivered to Landlord and to IRG Realty Advisors, LLC at its address set forth in Paragraph 3.2 (or such other address or property manager designated by Landlord), prior to the Occupancy Date and thereafter fifteen (15) days prior to each renewal date. All such policies shall provide that they shall not be canceled nor coverage reduced by the insurer without first giving at least thirty (30) days prior written notice to Landlord. If Tenant fails to procure and keep in force such insurance, Landlord may procure it, and the cost thereof with interest at the maximum lawful rate shall be payable immediately by Tenant to Landlord as additional rent. Such insurance may be provided by a blanket insurance policy covering the Premises, so long as the coverage on the Premises is at all times at least as great as required by this Paragraph 14.

**14.4.      Contractors' Insurance**. If Tenant permits or causes any construction, work of repair, maintenance, restoration, replacement, alteration, or other work to be done on or about the Premises by any independent contractor or other person, then Tenant shall cause such independent contractor or other person (collectively, "**Contractor**") to take out and keep in force, throughout the period during which such Contractor performs any work on the Premises and for a period of two (2) years after the completion of such work, without expense to Landlord, the policies of insurance as set forth below. All such policies shall be provided by an insurance company with general policy holder's rating of not less than A-VII, as rated in the most current Best's Insurance Reports, or other company acceptable to Landlord. All such insurance policies shall be on an occurrence basis, and shall name Landlord, its property manager IRG Realty Advisors, LLC (or such other property manager selected by Landlord), Tenant, and their respective agents and employees as additional insureds on a primary and non-contributory basis. Commercial general liability insurance, employer's liability insurance and business automobile liability insurance required limits hereunder can be satisfied by an umbrella/excess liability insurance policy if the applicable insurance coverages are included under the umbrella/excess liability insurance policy. All policies of insurance set forth in this Paragraph 14.4 shall provide that copies of the policies or certificates thereof showing the premium thereon to have been paid, shall be delivered to Landlord and to IRG Realty Advisors, LLC at its address set forth in Paragraph 3.2 (or such other address or property manager designated by Landlord), prior to the date on which such Contractor commences work on the Premises and thereafter fifteen (15) days prior to each renewal date. All such policies shall provide that they shall not be canceled nor coverage reduced by the insurer without first giving at least thirty (30) days prior written notice to Landlord. If Tenant fails to cause such any Contractor performing work on the Premises to procure and keep in force such insurance, Landlord may procure it, and the cost thereof with interest at the maximum lawful rate shall be payable immediately by Tenant to Landlord as additional rent.

A.     Commercial general liability insurance, in the name of Contractor, insuring against any liability from the use and occupancy of the Premises and the business operated by Contractor.  All such policies shall be written to apply to all bodily injury or death, property damage and personal injury losses, and shall include blanket contractual liability (including Tenant's indemnity obligations under this Lease), broad form property damage liability, premise-operations and products-completed operations and shall contain an exception to any pollution exclusion which insures damage or injury arising out of heat, smoke or fumes from hostile fire, a contractual liability endorsement, and provide primary coverage to Landlord (any insurance policy issued to Landlord providing duplicate or similar coverage shall be deemed to be excess over Tenant's and Contractor's policies), in such amounts as may from time to time be customary with respect to similar properties in the same area, but in any event not less than $3,000,000.00 per occurrence (or such other amounts as may be required by Landlord).  The amounts of such insurance required hereunder shall be adjusted from time to time as requested by Landlord based upon Landlord's determination as to the amounts of such insurance generally required at such time for comparable premises and buildings in the general geographical area of the Premises.  In addition, such policy of insurance shall include coverage for any potential liability arising out of or because of any construction, work of repair, maintenance, restoration, replacement, alteration, or other work done on or about the Premises by or under the control or direction of Tenant;

B.     Workers compensation insurance as required by the state law applicable in the state in which the Premises is located with employer liability insurance with limits of not less than $1,000,000.00; and

C.     Business automobile liability insurance covering owned, hired and non-owned vehicles with limits of not less than $1,000,000.00 combined single limit (bodily injury and property damage) per occurrence.

## 15.     WAIVER, EXCULPATION AND INDEMNITY

**15.1.     Definitions**.  For purposes of this Paragraph 15, (i) "**Tenant Parties**" shall mean, singularly and collectively, Tenant and Tenant's officers, directors, shareholders, partners, members, trustees, agents, employees, independent contractors, consultants, licensees, concessionaires, customers, guests, invitees or visitors as well as to all persons and entities claiming through any of the foregoing persons or entities, and (ii) "**Landlord Parties**" shall mean singularly and collectively, Landlord and Landlord's, mortgagees, officers, directors, shareholders, partners, members, trustees, agents, employees, independent contractors, and consultants, as well as to all persons and entities claiming through any of the foregoing persons or entities, but expressly excluding any other tenant or occupant of the Property.

**15.2.     Exculpation**.  Tenant, on behalf of itself and of all Tenant Parties, and as a material part of the consideration to be rendered to Landlord under this Lease, hereby waives, to the fullest extent permitted by law, all claims against Landlord for loss, theft or damage to goods, wares, merchandise or other property (whether tangible or intangible) in and about the Premises, for loss or damage to Tenant's business or other economic loss (whether direct, indirect or consequential), and for the injury or death to any persons in, on or about the Premises, except for damage or loss directly caused by Landlord's willful misconduct.

**15.3.     Landlord's Indemnity**.  Landlord shall indemnify, defend (by an attorney of Landlord's choice, reasonably acceptable to Tenant) reimburse, protect and hold harmless Tenant and all Tenant Parties from and against all third party claims, liability and/or damages arising from or related to the acts or omissions of Landlord or Landlord Parties, relating to their use, possession, or occupancy of the Property or, its obligations under this Lease, or to any work done, permitted or contracted for by any of them on or about the Premises, to the extent that such liability or damage is covered by Landlord's insurance (or would have been covered had Landlord carried the insurance as required under this Lease). It is specifically understood and agreed that Landlord shall not be liable or responsible for the acts or omissions of any of the other tenants of the Property or of any agents, independent contractors, consultants, licensees, concessionaires, customers, guests, invitees or visitors of persons other than Landlord.

**15.4.     Tenant's Indemnity**. Tenant shall indemnify, defend (by an attorney of Tenant's choice, reasonably acceptable to Landlord), reimburse, protect and hold harmless Landlord and all Landlord Parties from and against all

13

third party claims, liability and/or damages (i) arising from or related to the negligence, acts or omissions of Tenant or any Tenant Parties relating to their use, possession, or occupancy of the Property or, Tenant's obligations under this Lease, or to any work done, permitted or contracted for by any of them on or about the Premises, or (ii) that would have been barred by Paragraph 15.2 had they been claimed directly by Tenant.  Tenant shall cause any Contractor who performs any construction, work of repair, maintenance, restoration, replacement, alteration, or other work on or about the Premises by or under the control or direction of Tenant to execute and deliver to IRG Realty Advisors, LLC, at its address set forth in Paragraph 3.2 (or such other address or property manager designated by Landlord), an agreement whereby such Contractor agrees to indemnify, defend (by an attorney of Landlord's choice, reasonably acceptable to such Contractor), reimburse, protect and hold harmless Landlord, all Landlord Parties, and Tenant from and against the matters described in this Paragraph 15.4.

      **15.5.**    **Waiver of Subrogation.**  To the extent of any and all insurance maintained, or required to be maintained, by either Landlord or Tenant in any way connected with the Premises, Landlord and Tenant hereby waive on behalf of their respective insurance carriers any right of subrogation that may exist or arise as against the other party to this Lease; provided, however, that Tenant shall be responsible for Landlord's deductible  Landlord and Tenant shall cause the insurance companies issuing their insurance policies with respect to the Premises to waive any subrogation rights that the companies may have against Tenant and Landlord, respectively, which waivers shall be specifically stated in the respective policies.

      **15.6.**    **Survival and Duration of Obligations**. All representations, warranties, obligations and indemnities made or given under this Paragraph 15 shall survive the expiration or earlier termination of this Lease.

**16.**      **CONSTRUCTION LIENS**

      **16.1.**    Tenant shall not suffer or permit any construction liens, mechanic's liens or materialman's liens to be filed against Landlord's interest in the real property of which the Premises form a part nor against Tenant's leasehold interest in the Premises ("**Tenant Lien**").  Landlord shall have the right at all reasonable times to post and keep posted on the Premises, any notices which it deems necessary for protection from such liens, or take such other action as applicable law may require to protect Landlord and the Property from such liens.  In connection therewith, Tenant shall cooperate with Landlord and shall sign any notice or other documents reasonably required by Landlord to comply with such applicable law.  Tenant shall have the right to contest by proper proceedings any Tenant Lien, provided that Tenant shall prosecute such contest diligently and in good faith and such contest shall not expose Landlord to any civil or criminal penalty or liability in connection therewith.  In such case, within five (5) days after Landlord's demand, Tenant shall furnish Landlord a surety bond or other adequate security satisfactory to Landlord in an amount equal to one hundred fifty percent (150%) of the amount of such claim or such higher amount as may be reasonably required to both to indemnify Landlord against liability and hold the Property free from adverse effect in the event the contest is not successful ("**Lien Bond**").  The Lien Bond may be retained by Landlord until the Tenant Lien has been removed of record or until judgment has been rendered on such claim and such judgment has become final, at which time Landlord shall have the right to apply such Lien Bond in discharge of the judgment on the Tenant Lien and to any actual costs, including reasonable attorneys' fees incurred by Landlord, and shall remit the balance thereof to Tenant.  In the event that a Tenant Lien is filed and Tenant does not properly contest such lien or timely post the Lien Bond, Landlord, at its election, and upon not less than five (5) days prior written notice to Tenant, may pay and satisfy the Tenant Lien and, in such event the sums so paid by Landlord, including all actual and other expenses, including reasonable attorney's fees, so paid by Landlord, shall be deemed to be Additional Rent due and shall be payable by Tenant at once without notice or demand together with interest thereon from the date of payment at the rate of eighteen percent (18%) per annum, provided such interest rate shall not exceed the maximum interest rate permitted by law.  Notwithstanding the foregoing, Tenant shall have no responsibility for discharge of any mechanics' liens filed by a contractor, subcontractor, materialman, or laborer of Landlord.

      **16.2.**    Tenant agrees to give Landlord written notice not less than ten (10) days in advance of the commencement of any Tenant Repairs in order that Landlord may post appropriate notices of Landlord's non-responsibility.  Promptly after the Tenant Repairs are completed, Tenant shall file a Notice of Completion.

14

## 17. QUIET ENJOYMENT

Landlord covenants and agrees that Tenant, upon making all of Tenant's payments of Rent as and when due under the Lease, and upon performing, observing and keeping the covenants, agreements and conditions of this Lease on its part to be kept, shall peaceably and quietly hold, occupy and enjoy the Premises during the term of this Lease as extended by the options described herein, if any, subject to the (i) terms and provisions of this Lease and (ii) rights of any mortgagee or ground lessor.

## 18. LANDLORD'S RIGHT OF ENTRY

Landlord or its agents shall have the right to enter the Premises at reasonable times upon reasonable notice in order to examine it or to show it to prospective tenants or buyers, to place "For Rent" or "For Sale" signs on or about the Premises, and to make modifications or other changes to the Property as are necessary in Landlord's sole discretion to facilitate development of the Property, provided, however, Landlord shall use its best efforts to minimize the effect of any such entry or any interference with Tenant's use of the Premises. Upon receipt of reasonable advance notice from Landlord, Tenant may arrange to have a designated representative accompany Landlord in entering the Premises. Landlord's right of reentry shall not be deemed to impose upon Landlord any obligation, responsibility, or liability for the care, supervision or repair of the Premises other than as herein provided; except that Landlord shall use reasonable care to prevent loss or damage to Tenant's property resulting from Landlord's entry. Landlord shall have the right at any time, without effecting an actual or constructive eviction and without incurring any liability to Tenant therefore, to change the arrangement or location of entrances or passageways, doors and doorways, corridors, elevators, stairs, toilets or other public parts of the Building and to change the name, number or designation by which the Building is commonly known, provided that such action does not result in any unreasonable interference with Tenant's access to or use of the Premises. Notwithstanding the foregoing, Landlord shall have the right to enter the Premises without first giving notice to Tenant in the event of an emergency where the nature of the emergency will not reasonably permit the giving of notice.

## 19. DESTRUCTION OF BUILDING

**19.1   Partial Destruction**. In the event of a partial destruction of the Building during the term of this Lease from any cause, Landlord shall forthwith repair the same, provided such repair can reasonably be made within one hundred eighty (180) days from the happening of such destruction under applicable laws and regulations (but only to the extent of insurance proceeds made available to Landlord by any mortgagee of the Premises). During such period, Tenant shall be entitled to a proportionate reduction of rent to the extent such repairs unreasonably interfere with the business carried on by Tenant in the Premises. If Tenant fails to remove its goods, wares or equipment within a reasonable time and as a result the repair or restoration is delayed, or if such damage or destruction is caused primarily by the negligence or willful act of Tenant, or its employees, invitees or agents, there shall be no reduction in rent during such delay. In the event that such repair cannot reasonably be made within one hundred eighty (180) days from the happening of such destruction under applicable laws and regulations, Landlord shall have the right to terminate this Lease by notifying Tenant in writing within sixty (60) days from the happening of such destruction of Landlord's decision not to repair such Building in which event this Lease shall be deemed terminated. If Landlord fails to give such written notice of Landlord's decision not to repair such Building within such sixty (60) days, then Landlord shall be required to commence the repair of the Building promptly and thereafter diligently complete the repairs. In addition to the above, in the event that such Building is partially destroyed and (i) the cost of repairing such Building exceeds thirty-three and one-third percent (33-1/3%) of the replacement cost thereof, or (ii) the damage caused by the partial destruction of such Building cannot reasonably be repaired within a period of one hundred eighty (180) days from the happening of such damage, Landlord may elect to terminate this Lease, whether or not such Building is insured, by written notice to Tenant given within sixty (60) days from the happening of such destruction. If Landlord fails to give such written notice of Landlord's decision not to repair such Building within sixty (60) days, then Landlord shall be required to repair such Building within one hundred eighty (180) days from the happening of such destruction, if it can be reasonably repaired in such time, or as soon thereafter as reasonably practical if it cannot reasonably be repaired in such earlier period of time.

**19.2.   Total Destruction**. A total destruction of the Building shall terminate this Lease. A total destruction of such Building means the cost of repairing such Building exceeds seventy-five percent (75%) of the replacement cost of such Building.

15

## 20.    EMINENT DOMAIN

**20.1.    Definitions**.  For purposes of this Lease, the word "**condemned**" is co-extensive with the phrase "**right of eminent domain**", that is, the right of the government to take property for public use, and shall include the intention to condemn expressed in writing as well as the filing of any action or proceeding for condemnation as well as if the Property is sold, transferred or conveyed in lieu of such appropriation.

**20.2.    Exercise of Condemnation**.  If any action or proceeding is commenced for the condemnation of the Premises or any portion thereof, or if Landlord is advised in writing by any government (federal, state or local) agency or department or bureau thereof, or any entity or body having the right or power of condemnation, of its intention to condemn all or any portion of the Premises at the time thereof, or if the Premises or any part or portion thereof be condemned through such action, then and in any of such events Landlord may, without any obligation or liability to Tenant, and without affecting the validity and existence of this Lease other than as hereafter expressly provided, agree to sell and/or convey to the condemnor, without first requiring that any action or proceeding be instituted, or if such action or proceeding shall have been instituted, without requiring any trial or hearing thereof, and Landlord is expressly empowered to stipulate to judgment therein, the part and portion of the Premises sought by the condemnor, free from this Lease and the rights of Tenant hereunder.  Tenant shall have no claim against Landlord nor be entitled to any part or portion of the amount that may be paid or awarded as a result of the sale, for the reasons as aforesaid, or condemnation of the Premises or any part or portion thereof, except that Tenant shall be entitled to recover from the condemnor and Landlord shall have no claim therefore or thereto for Tenant's relocation costs, loss of goodwill, for Tenant's trade fixtures, any removable structures and improvements erected and made by Tenant to or upon the Premises which Tenant is or may be entitled to remove at the expiration of this Lease and Tenant's leasehold estate hereunder.

**20.3.    Effect on Lease**.  If the entire Premises is condemned, this Lease shall terminate as of the earlier of such taking or loss of possession.  If only a part of the Premises is condemned and taken and the remaining portion thereof is in Tenant's reasonable discretion not suitable for purposes for which Tenant has leased the Premises,  either Landlord or Tenant shall have the option to terminate this Lease effective as of the earlier of such taking or loss of possession.  If by such condemnation and taking only a part of the Premises is taken, and the remaining part thereof is in Tenant's reasonable discretion suitable for the purposes for which Tenant has leased the Premises, this Lease shall continue, but the Rent shall be reduced in an amount proportionate to the percentage that the floor area of that portion of the Premises physically taken by eminent domain bears to the floor area of the entire Premises.

## 21.    BANKRUPTCY

If a general assignment is made by Tenant for the benefit of creditors, or any action is taken by Tenant under any insolvency or bankruptcy act, or if a receiver is appointed to take possession of all or substantially all of the assets of Tenant (and Tenant fails to terminate such receivership within sixty (60) days after such appointment), or if any action is taken by a creditor of Tenant under any insolvency or bankruptcy act, and such action is not dismissed or vacated within thirty (30) days after the date of such filing, then this Lease shall terminate at the option of Landlord upon the occurrence of any such contingency and shall expire as fully and completely as if the day of the occurrence of such contingency was the date specified in this Lease for the expiration thereof.  In such event, Tenant shall then quit and surrender the Premises to Landlord.

## 22.    DEFAULT

If Tenant fails to timely pay any rent or other sum due hereunder within five (5) days of when due, or in the event Tenant fails to perform any other covenant to be performed by Tenant under this Lease and continues to fail to perform the same for a period of thirty (30) days after receipt of written notice from Landlord pertaining thereto (or a reasonable period of time, using due diligence, if any non-monetary default cannot be cured within such thirty (30) day period, but not to exceed sixty (60) days), or if Tenant breaches or defaults under the lease between Tenant (or an affiliate of Tenant) and an affiliate of Landlord for the space located at 2400 Pioneer Drive, El Dorado, Kansas, then Tenant shall be deemed to have breached this Lease and Landlord, in addition to other rights or remedies it may have, may:

A. Continue this Lease in effect by not terminating Tenant's right to possession of the Premises, and thereby be entitled to enforce all Landlord's rights and remedies under this Lease, including the right to recover the Rent specified in this Lease as it becomes due under this Lease; or

B. Terminate Tenant's right to possession of the Premises, thereby terminating this Lease, and recover from Tenant:

(i.) The worth at the time of award of the unpaid Rent which had been earned at the time of termination of the Lease;

(ii.) The worth at the time of award of the amount by which the unpaid rent which would have been earned after termination of the Lease until the time of award exceeds the amount of rental loss that Tenant proves could have been reasonably avoided;

(iii.) The worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of rental loss that Tenant proves could be reasonably avoided; and

(iv.) Any other amount necessary to compensate Landlord for all detriment proximately caused by Tenant's failure to perform its obligations under this Lease; or

C. In lieu of, or in addition to, bringing an action for any or all of the recoveries described in subparagraph B above, bring an action to recover and regain possession of the Premises in the manner provided by the laws of unlawful detainer then in effect in the state where the Property is located. If Landlord makes any expenditure required of Tenant hereunder, or if Tenant fails to make any payment or expenditure required of Tenant hereunder, such amount shall be payable by Tenant to Landlord as Rent together with interest from the date due at the rate of eighteen percent (18%) per annum, provided such interest rate shall not exceed the maximum interest rate permitted by law, and Landlord shall have the same remedies as on the default in payment of Rent. The payment of interest required hereunder shall be in addition to the late charge set forth in Paragraph 3.3. Notwithstanding any other provisions of this Lease, under no circumstances shall Landlord or Tenant be liable to the other for any consequential damages arising out of the acts or omissions of Landlord or Tenant or a breach of this Lease by either party.

## 23. SURRENDER OF PREMISES

On or before the expiration of the Term, Tenant shall vacate the Premises in broom clean condition and otherwise in the same condition as existed on the Commencement Date, ordinary wear and tear and fire and casualty loss excepted, except that any improvements made within and on the Premises by Tenant shall remain, in the same condition and repair as when constructed or installed, reasonable wear and tear and fire and casualty loss excepted, unless Landlord gives Tenant written notice, which, if any, of such improvements in the Premises are to be removed. Landlord's failure to timely give notice to Tenant to remove any such improvements shall not relieve Tenant of its obligation to remove any such improvements requested to be removed by Landlord. If Tenant fails to properly maintain the Premises during the Term as required under Paragraph 11, Tenant shall be liable for any deferred maintenance upon expiration of the Lease. In addition, Tenant shall remove from the Premises all of Tenant's personal property and trade fixtures in order that Landlord can repossess the Premises on the day this Lease or any extension hereof expires or is sooner terminated. Any removal of Tenant's improvements, Tenant's property and/or trade fixtures by Tenant shall be accomplished in a manner which will minimize any damage or injury to the Premises, and any such damage or injury shall be repaired by Tenant at its sole cost and expense with thirty (30) days after Tenant vacates.

## 24. HOLDING OVER

Should Tenant hold over and remain in possession of the Premises after the expiration of this Lease, without the written consent of Landlord, such possession shall be as a month-to-month tenant. Unless Landlord agrees otherwise in writing, Base Rent during the hold-over period shall be payable in an amount equal to one hundred fifty

percent (150%) of the Base Rent paid for the last month of the Term of this Lease until Tenant vacates the Premises and the Security Deposit shall increase to an amount equal to the increased monthly Base Rent. All other terms and conditions of this Lease shall continue in full force and effect during such hold-over tenancy, which hold-over tenancy shall be terminable by either party delivering at least one (1) month's written notice, before the end of any monthly period. Such hold-over tenancy shall terminate effective as of the last day of the month following the month in which the termination notice is given. Tenant shall indemnify, defend, and hold Landlord harmless from and against any and all claims, demands, actions, losses, damages, obligations, costs, and expenses, including, without limitation, attorneys' fees incurred or suffered by Landlord by reason of Tenant's failure to surrender the Premises on the expiration or earlier termination of this Lease in accordance with the provisions of this Lease.

## 25. SURRENDER OF LEASE

The voluntary or other surrender of this Lease by Tenant, or mutual cancellation thereof, shall not work a merger and may, at the option of Landlord, terminate all or any existing subleases or subtenancies or may operate as an assignment of any or all such subleases or subtenancies to Landlord.

## 26. INTENTIONALLY OMITTED.

## 27. RULES AND REGULATIONS

Tenant shall comply with all reasonable and nondiscriminatory rules and regulations now or hereinafter adopted by Landlord during the existence of this Lease, both in regard to the Property, the Building as a whole and to the Premises herein leased. In the event of any inconsistency between the provisions of this Lease and the provisions of any such rules and regulations, the provisions of this Lease shall control.

## 28. NOTICE

Any notice, request, demand, instruction or other document or communication required or permitted to be given hereunder shall be in writing addressed to the respective party as set forth below and may be personally served, sent by facsimile, email, or sent by a nationally recognized overnight courier or by U.S. Mail, first class, addressed as follows:

|  |  |
|---|---|
| **TO LANDLORD:** | c/o IRG Realty Advisors, LLC |
| | 4020 Kinross Lakes Parkway, Suite 200 |
| | Richfield, Ohio 44286 |
| | Attention: Katherine J. Himmilwright, Lease Administration |
| | Email: khimmil@irgra.com |
| | Telephone: (330) 659-4060, ext. 1107 |
| | FAX: (330) 659-3237 |
| | |
| **with a copy to:** | Fainsbert Mase Brown & Sussman, LLP |
| | 11111 Santa Monica Boulevard, Suite 810 |
| | Los Angeles, California 90025 |
| | Attention: Jerry A. Brown, Jr., Esq. |
| | Email: jbrown@fms-law.com |
| | Telephone: (310) 473-6400 |
| | FAX: (310) 473-8702 |
| | |
| **TO TENANT:** | c/o Pioneer Worldwide |
| | 5000 East 29th Street North |
| | Wichita, Kansas 67220 |
| | Attention: Andy Cannon |
| | Email: andy.cannon@pioneerballoon.com |
| | Telephone: (316) 688-8611 |

18

Stinson LLP
                              1201 Walnut, Suite 2900
                              Kansas City, Missouri 64106
                              Attention: Richard Cook, Esq.
                              Email: richard.cook@stinson.com
                              Telephone: (816)691-3413
                              FAX: (816)691-3495

Any party may change their notice or email address and/or facsimile number by giving written notice thereof in accordance with this <u>Paragraph 28</u>. All notices hereunder shall be deemed given: (1) if served in person, when served; (2) if sent by facsimile or email, on the date of transmission if before 6:00 p.m. P.S.T.; provided that a hard copy of such notice is also sent by either a nationally recognized overnight courier or by U.S. Mail, first class; (3) if by overnight courier, by a nationally recognized courier which has a system of providing evidence of delivery, on the first business day after delivery to the courier; or (4) if by U.S. Mail, on the fifth (5th) day after deposit in the mail, postage prepaid, certified mail, return receipt requested.

## 29.    ASSIGNMENT AND SUBLETTING

**29.1.    No Assignment**. Tenant shall not directly or indirectly, voluntarily or by operation of law, sell, assign, encumber, pledge or otherwise transfer or hypothecate all or any part of the Premises or Tenant's leasehold estate hereunder (collectively, "**Assignment**"), or permit the Premises to be occupied by anyone other than Tenant or sublet the Premises (collectively, "**Sublease**") or any portion thereof without Landlord's prior written consent in each instance, which consent may not be unreasonably withheld by Landlord. In addition, Tenant shall provide financial statements for Tenant and any proposed assignee or sublessee of this Lease, in form and substance reasonably acceptable to Landlord, with any request for Landlord's approval (or other notice) of any Assignment or Sublease and prior to the effectiveness of any such Assignment or Sublease.

**29.2.    No Relief of Obligations**. No consent by Landlord to any Assignment or Sublease by Tenant shall relieve Tenant of any obligation to be performed by Tenant under this Lease, whether arising before or after the Assignment or Sublease. The consent by Landlord to any Assignment or Sublease shall not relieve Tenant of the obligation to obtain Landlord's express written consent to any other Assignment or Sublease. Any Assignment or Sublease that is not in compliance with this <u>Paragraph 29</u> shall be void and, at the option of Landlord, shall constitute a material default by Tenant under this Lease. The acceptance of Rent by Landlord from a proposed assignee or sublessee shall not constitute the consent by Landlord to such Assignment or Sublease.

**29.3.    Profits from Assignment or Sublease**. Any net profits (after the deduction of reasonable transaction costs, but not including attorneys' fees) resulting from any Assignment or Sublease shall be divided evenly between Landlord and Tenant.

**29.4.    Reimbursement of Landlord**. Tenant shall reimburse Landlord for all reasonable out-of-pocket costs (including, without limitation, Landlord's reasonable attorneys' fees and any fees or costs imposed on Landlord by Landlord's mortgage lender) incurred by Landlord in connection with any proposed Assignment or Sublease.

## 30.    ATTORNEY'S FEES

In the event of any legal or equitable action arising out of this Lease, the prevailing party shall be entitled to recover all reasonable fees, costs and expenses, together with reasonable attorney's fees incurred in connection with such action. The fees, costs and expenses so recovered shall include those incurred in prosecuting or defending any appeal. The prevailing party shall also be entitled to reasonable attorney's fees incurred to collect or enforce the judgment. If Landlord agrees to review and/or execute an agreement at the request of Tenant or Tenant's lender, Tenant shall be responsible for reimbursing Landlord for all reasonable fees, costs and expenses, together with reasonable attorney's fees, incurred in the review of any such agreement. Notwithstanding the foregoing, in the event Landlord commences a summary proceeding or engages an attorney to send any notice of default to Tenant for payment of Rent or notice to cure a non-monetary default, and Tenant subsequently pays or cures such default, then, in such case(s), Tenant shall be liable to Landlord for any such attorneys' fees and legal costs.

## 31. JUDGMENT COSTS

**31.1.** **Landlord**. Should Landlord, without fault on Landlord's part, be made a party to any litigation instituted by or against Tenant, or by or against any person holding the Premises by license of Tenant, or for foreclosure of any lien for labor or material furnished to or for Tenant, or any such person, or otherwise arising out of or resulting from any act or transaction of Tenant, or of any such person, Tenant covenants to pay to Landlord, the amount of any judgment rendered against Landlord or the Premises or any part thereof, and all costs and expenses, including reasonable attorney's fees incurred by Landlord in connection with such litigation.

**31.2.** **Tenant**. Should Tenant, without fault on Tenant's part, be made a party to any litigation instituted by or against Landlord, or by or against any person holding the Premises by license of Landlord, or for foreclosure of any lien for labor or material furnished to or for Landlord, or any such person, or otherwise arising out of or resulting from any act or transaction of Landlord, or of any such person, Landlord covenants to pay to Tenant, the amount of any judgment rendered against Tenant or the Premises or any part thereof, and all costs and expenses, including reasonable attorney's fees incurred by Tenant in connection with such litigation.

## 32. BROKERS

Landlord and Tenant each represent and warrant to each other that it has had no dealings with any real estate broker or agent in connection with the Premises and this Lease, and that it knows of no real estate broker or agent who is or might be entitled to a commission in connection with this Lease. Landlord shall only pay the real estate brokerage commission due to any real estate broker or agent entitled to a commission in connection with this Lease if claimed through the actions of Landlord. Tenant shall pay any other commission or finder's fee due if claimed through the actions of Tenant. Each of Tenant and Landlord shall indemnify and hold the other harmless from and against any such commission or finder's fee which may be claimed by any person or broker with respect to this transaction as a result of its breach of the foregoing representation.

## 33. SUBORDINATION OF LEASE

This Lease is subject and subordinate to any mortgages which may now or hereafter be placed upon or affect the property or the Building, and to all renewals, modifications, consolidations, replacements and extensions hereof, provided that the holder(s) of such mortgage(s) shall agree in writing not to disturb the possession of the Premises by Tenant or the rights of Tenant under this Lease so long as Tenant is not in material default (subject to applicable notice and cure rights in favor of Tenant as contained in this Lease) in the performance of its obligations thereunder and, in the event of foreclosure, Tenant agrees to look solely to the mortgagee's interest in the Property for the payment and discharge of any obligations imposed upon the mortgagee or Landlord under this Lease. In the event that a Successor Landlord, as hereinafter defined, takes title to the Property, (i) Successor Landlord shall be bound to Tenant under all of the terms and conditions of this Lease, (ii) Tenant shall recognize and attorn to Successor Landlord as Tenant's direct landlord under this Lease, and (iii) this Lease shall continue in full force and effect, in accordance with its terms, as a direct lease between Successor Landlord and Tenant. This clause shall be self-operative, and no further instrument or subordination shall be necessary unless requested by a mortgagee or the insuring title company, in which event Tenant shall sign, within five (5) business days after requested, such instruments and/or documents as the mortgagee and/or insuring title company reasonably request be signed ("**SNDA**"). In the event Tenant fails to execute a SNDA as provided herein, Tenant hereby constitutes and appoints Landlord as its attorney-in-fact, with full power of substitution, to sign, execute, certify, acknowledge, deliver or record, where required or appropriate, in the name, place and stead of Tenant, all such SNDAs for and on behalf of Tenant as may be required. For purposes of this Paragraph 33, "**Successor Landlord**" shall mean any party that becomes owner of the Property as the result of a (i) foreclosure under any mortgage or deed of trust; (ii) any other exercise by a lender of rights and remedies (whether under any security instrument or under applicable law, including bankruptcy law) as a result of which such lender becomes owner of the Property; or (iii) delivery by Landlord to any lender (or its designee or nominee) of a deed or other conveyance of Landlord's interest in the Property in lieu of any of the foregoing.

## 34. INTENTIONALLY OMITTED

## 35. ESTOPPEL CERTIFICATES AND FINANCIAL STATEMENTS

**35.1.** **Estoppel Certificate**.  Tenant shall, at any time and from time to time, upon not less than ten (10) days' prior request by Landlord, execute, acknowledge and deliver to Landlord, or to such other persons who may be designated in such request, a statement in writing certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and, if so, the dates to which the rent and any other charges have been paid in advance, and such other items requested by Landlord, including without limitation, the lease commencement date and expiration date, rent amounts, and that no offsets or counterclaims are present.  It is intended that any such statement delivered pursuant to this Paragraph 35.1 may be relied upon by any prospective purchaser or encumbrancer (including assignee) of the Premises.  In the event Tenant fails to execute an estoppel certificate as provided herein, Tenant hereby constitutes and appoints Landlord as its attorney-in-fact, with full power of substitution, to sign, execute, certify, acknowledge, deliver or record, where required or appropriate, in the name, place and stead of Tenant, all such estoppel certificates for and on behalf of Tenant as may be required.

**35.2.** **Financial Statements**.  Tenant shall deliver to Landlord, or to such potential lender or purchaser designated by Landlord, on an annual basis, current financial statements and such other financial information regarding Tenant, as may reasonably be required to establish Tenant's creditworthiness. In addition, Tenant shall provide such financial information in any request for Landlord's approval of any Assignment or Sublease, prior to the effectiveness of such Assignment or Sublease. All financial information provided by Tenant to Landlord or any lender or potential purchaser shall be held by the recipient in strict confidence and may not be used or disclosed by the recipient except for the purpose of determining Tenant's creditworthiness in connection with Tenant's obligations under this Lease.

## 36. SHORT FORM OF LEASE

Tenant agrees to execute, deliver and acknowledge, at the request of Landlord, a short form of this Lease satisfactory to counsel for Landlord, and Landlord may in its sole discretion record this Lease or such short form in the County where the Premises are located.  Tenant shall not record this Lease, or a short form of this Lease, without Landlord's prior written consent which may be withheld in Landlord's reasonable discretion.

## 37. SIGNS

Tenant shall not place any sign upon the Premises, except that Tenant may, with Landlord's prior written consent which shall not be unreasonably withheld, install such signs on the exterior of the Premises and at the entrance to the Property as are reasonably required to advertise Tenant's own business.  The installation of any sign on the Premises by or for Tenant shall be subject to the provisions of Paragraph 23.  Tenant shall maintain any such signs installed on the Property.

## 38. INTENTIONALLY OMITTED

## 39. FORCE MAJEURE

In discharging its duty to complete the tenant improvements and to operate, maintain and repair those systems as set forth in this Lease, Landlord shall be held to a standard of reasonableness and shall not be liable to Tenant for matters outside its control, including, but not limited to, acts of God, civil riot, war, pandemics, strikes, labor unrest, delays in receiving government approvals, or shortage of material (collectively, "**Force Majeure**"), and in no event shall Landlord be liable to Tenant for incidental damages, including, but not limited to, loss of business or business interruption.  If Landlord shall be delayed, hindered or prevented from performance of any of its obligations by reason of Force Majeure, the time for performance of such obligation shall be extended for the period of such delay.

## 40. GENERAL PROVISIONS

    **40.1.   Waiver of Jury Trial; Governing Law; Venue** EACH PARTY TO THIS LEASE HEREBY IRREVOCABLY WAIVES ALL RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS LEASE OR THE TRANSACTIONS CONTEMPLATED HEREBY.  THIS LEASE SHALL BE GOVERNED BY THE LAWS OF THE STATE OF KANSAS.  THE PARTIES HERETO AGREE THAT VENUE SHALL BE PROPER IN ANY STATE OR FEDERAL COURT LOCATED WITHIN, OR HAVING JURISDICTION OVER, BUTLER COUNTY, KANSAS.

    **40.2.   Waiver**.  The waiver by Landlord of any breach of any term, covenant, or condition herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition contained herein.  The acceptance of rent hereunder shall not be construed to be a waiver of any breach by Tenant of any term, condition or covenant of this Lease.

    **40.3.   Remedies Cumulative**.  It is understood and agreed that the remedies herein given to Landlord shall be cumulative, and the exercise of any one remedy of Landlord shall not be to the exclusion of any other remedy.

    **40.4.   Successors and Assigns**.  The covenants and conditions herein contained shall, subject to the provisions as to assignment, apply to and bind the heirs, successors, executors, administrators and assigns of all of the parties hereto; if Landlord or Tenant is comprised of multiple parties, each of such parties hereto shall be jointly and severally liable hereunder.

    **40.5.   No Personal Liability**.  No individual member, manager, manager of a member, partner, shareholder, director, officer, employee, trustee, investment advisor, consultant or agent of Landlord, or individual member of a joint venture, tenancy in common, firm, limited liability company or partnership (general or limited), which constitutes Landlord, or any successor interest thereof, shall be subject to personal liability with respect to any of the covenants or conditions of this Lease.  Tenant shall look solely to the equity of Landlord in the Property and to no other assets of Landlord for the satisfaction of any remedies of Tenant in the event of any breach by Landlord.  It is mutually agreed by Tenant and Landlord that this <u>Paragraph 40.5</u> is and shall be deemed to be a material and integral part of this Lease.  All obligations of Landlord shall be binding upon Landlord only during the period of Landlord's ownership of the Property and not thereafter.

    **40.6.   Entire Agreement**.  This Lease, the exhibits referred to herein, and any addendum executed concurrently herewith, are the final, complete and exclusive agreement between the parties and cover in full each and every agreement of every kind or nature, whatsoever, concerning the Premises and all preliminary negotiations and agreements of whatsoever kind or nature, are merged herein. Landlord has made no representations or promises whatsoever with respect to the Premises, except those contained herein, and no other person, firm or corporation has at any time had any authority from Landlord to make any representations or promises on behalf of Landlord, and Tenant expressly agrees that if any such representations or promises have been made by others, Tenant hereby waives all right to rely thereon.  No verbal agreement or implied covenant shall be held to vary the provisions hereof, any statute, law or custom to the contrary notwithstanding.  Unless otherwise provided herein, no supplement, modification, or amendment of this Lease shall be binding unless executed in writing by the parties.

    **40.7.   Captions**.  The captions of paragraphs of this Lease are for convenience only, and do not in any way limit or amplify the terms and provisions of this Lease.

    **40.8.   Partial Invalidity**.  If any term, covenant, condition or provision of this Lease is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

    **40.9.   Authority**.  The person(s) executing this Lease warrants that he or she has the authority to execute this Lease and has obtained or has the requisite corporate or other authority to do the same.

22

**40.10. Approvals**.  Any consent or approval required hereunder shall not be unreasonably withheld, conditioned or delayed by the party from whom such consent or approval is requested unless this Lease expressly provides otherwise.

**40.11. Counterparts and Electronic Signatures**.  This Lease may be executed in any number of counterparts, each of which so executed shall be deemed to be an original, and such counterparts shall together constitute but one and the same Lease. The parties shall be entitled to sign and transmit an electronic signature of this Lease (whether by facsimile, PDF, DocuSign or other electronic or email transmission), which signature shall be binding on the party whose name is contained therein.  Any party providing an electronic signature agrees to promptly execute and deliver to the other parties an original signed Lease upon request.

**40.12. Joint and Several Obligations.**  The obligations of the persons signing as Tenant under this Lease shall be joint and several in all respects.

**40.13. OFAC Certification**.  Tenant represents and warrants to Landlord that neither Tenant nor any person or entity that owns or controls, is owned or controlled by or is under common ownership or control with Tenant, and Landlord represents and warrants to Tenant that neither Landlord nor any person or entity that owns or controls, is owned or controlled by or is under common ownership or control with Landlord: (a) is listed on the Specially Designated Nationals and Blocked Persons List maintained by the Office of Foreign Asset Control, Department of the Treasury pursuant to Executive Order No. 13224, 66 Federal Register 49079 (September 25, 2001) or (b) has been convicted, pleaded nolo contendere, indicted, arraigned or custodially detained on charges involving money laundering or predicate crimes to money laundering.

**40.14. No Third-Party Beneficiaries**.  No provisions of this Lease are intended, nor shall they be interpreted, to provide or create any third party beneficiary rights or any other rights of any kind in any client, customer, subtenant, affiliate, stockholder, partner or employee of any party hereto or any other person or entity unless specifically provided otherwise herein, and except as so provided, all provisions hereof shall be personal solely between the parties to this Lease.

*(**Remainder of page intentionally left blank; Signatures follow on next page**)*

IN WITNESS WHEREOF, the parties hereto have executed this Lease in duplicate as of the day and year first above written.

**LANDLORD**:

**EL DORADO PIONEER, LLC**,
a Delaware limited liability company

By:     S.L. Properties, Inc.,
        a Delaware corporation,
        its Manager

        By:   _____

              Stuart Lichter
              President

Dated: _____


**TENANT**:

**CONTINENTAL AMERICAN CORPORATION**,
a Kansas corporation

By: _____

Name: _____Daniel A. Flynn_____

Title: _____Chief Executive Officer_____

Dated: _____

**EXHIBIT "A"**

**PREMISES**

Exhibit "A"

## EXHIBIT "B"

## DECLARATION OF LEASE COMMENCEMENT

This is to confirm that the Commencement Date, as defined in Paragraph 2.2 of the attached lease, for the property commonly known as _____**[Property Address]**_____, Suite # _____, and containing approximately _____ square feet pursuant to the lease dated as of _____, 200__ between _____**[Landlord]**_____ and _____**[Tenant]**_____, is, for all purposes, agreed to be _____, 200__.

**LANDLORD**:

**EL DORADO PIONEER**, LLC,
a Delaware limited liability company

By:     S.L. Properties, Inc.,
        a Delaware corporation, its Manager

        By:  _____
             Stuart Lichter, President

Dated:  _____


**TENANT**:

**CONTINENTAL AMERICAN CORPORATION**,
a Kansas corporation


By:     _____
        Name:
        Title:


Dated:  _____

Exhibit "B"

Dale Marsh
12329 Marsh Pointe Road
Sarasota FL 34238

Constellation New Energy
and Constellation PNL
PO Box 5473
Carol Stream IL 60197

Varilease Finance Inc EFT
2800 E Cottonwood Pkwy 2nd Fl
Salt Lake City UT 84121

Randy Smith
1306 SW Logos Dr
Lees Summit MO 64081- 2304

Evergy
PO Box 219089
Kansas City MO 64121- 9089

Hillsdale Development
PO Box 187
Ashland OH 44805

Renne Fink
4106 Gloria Lane
Bethlehem PA 18017

Disney Consumer Products
Bank of America Lockbox Services
PO Box 50735
Los Angeles CA 90012

Danny R Bunn
1093 Township Road 1704
Ashland OH 44805

Concord Financial Advisors
C/O Tom Jones
2543 Laurel Ln
Wilmette IL 60091

Stinson LLP
PO Box 843052
Kansas City MO 64184- 3052

Debbie L Klingler
674 Township Road 350
Sullivan OH 44880

Sudpack
Jagerstrabe 23
Ochsenhausen 88416

Glenroy Inc
PO Box 534
W158 N9332 Nor-X-Way
Menomonee Falls WI 53051

SupplyOne Cleveland Inc
PO Box 643784
Pittsburgh PA 15264- 3784

Angsana Investments
17A Trevose Crescent
Singapore 298094

Bennett Packaging PBC
PO Box 411145
Kansas City MO 64141- 1145

Mavin
2871 US 62
Dundee OH 44624

Northstar Balloons
17100 Medina Rd Ste 800
Minneapolis MN 55447

Corrie MacColl N America Inc
150 Boush Street 8th Floor
Norfolk VA 23510

Protoplast Inc
2-210 Willmott St
Cobourg ON K9A OE9

Inflatable Concepts Venture
13350 SW 131 St Unit 106
Miami FL 33186

TK Innovations Inc
PO Box 2792
Kailua Kona HI 96745

Ohio Edison
PO Box 3687
Akron OH 44309-3687

American Express
PO Box 650448
Dallas TX 75265-0448

Constellation DAL
1221 Lamar Suite 750
Houston TX 77010

Estes Express Lines
PO Box 105160
Atlanta GA 30348-5160

Anthony Marrone
336 Wings Circle
Sunrise Beach MO 65079

CIBC Bank USA
1200 Main St
Kansas City MO 64105

Columbia Gas of Ohio
PO Box 4629
Carol Stream IL 60197- 4629

International Paper
Wooster Solon Plant
689 Palmer St
Wooster OH 44691

C & K Industrial Services Inc
5617 E Schaaf Rd
Independence OH 44131

Continental American Corporation
5000 E 29th Steet North
Wichita KS 67220

Barbara A Siler
331 State Route 302
Polk OH 44866-9754

Simonson Construction Services
2112 Troy Rd
Ashland OH 44805

Pioneer National Latex Inc
5000 E 29th St North
Wichita KS 67220

Rumpke of Ohio Inc
PO Box 538710
Cincinnati OH 45253- 8710

A & M Fire and Safety Equip Inc
500 E Main St
Ashland OH 44805-2548

Estes Express Lines
3901 West Broad Street
Richmond VA 23230

Distributor Central
Richard Mitchell, CFO
1200 Energy Center Drive
Gardner KS 66030

Glenroy, Inc.
Michael Serembiczky, CFO
W158 N9332 Nor-X-Way
Menominee Falls, WI 53051

Michael E. Hastings
Woods Rogers Vandeventer Black PLC
10 South Jefferson Street, Suite 1800
Roanoke VA 24011

GT Midwest
Greg Hanlon, Credit Manager
2202 South West Street
Wichita, KS 67213

Hillsdale Development Co.
Joe Zupan, Owner
PO Box 187
Ashland, OH 44805

Ira L. Herman
Blank Rome LLP
1271 Avenue of the Americas
New York NY 10020

American Express National Bank
c/o Zwicker & Associates PC
80 Minuteman Road – PO Box 9043
Andover MA 01810-1041

Elizabeth S. Lynch
Lynch Sharp & Associates LLC
2015 Grand Boulevard
Kansas City MO 64108

Regina Stango Kelbon
Blank Rome LLP
1201 N Market Street, Suite 800
Wilmington DE 19801

White Oak Commercial Finance LLC
1155 Avenue of the Americas
New York NY 10036-2711

Butler County Treasurer
205 W Central Rm 207
El Dorado KS 67042

Evergy Kansas Central
f/k/a Westar Energy
Bankruptcy Dept
PO Box 11739
Kansas City, MO 64138

Franchise Tax Board
Bankruptcy Section MS A340
PO Box 2952
Sacramento CA 95812

Ohio Bureau of Workers Compensation
PO Box 15567
Columbus OH 43215-0567

Aurora Management Partners
112 South Tryon Street Suite 1770
Charlotte. MC 28284

El Dorado Pioneer, LLC
c/o IRG Realty Advisors, LLC
Attn: Katherine J. Himmilwright, Lease Admin
4020 Kinross Lakes Parkway, Suite 200
Richfield, Ohio 44286

Attn: Jerry A. Brown, Jr., Esq.
Fainsbert Mase Brown & Sussman, LLP
11111 Santa Monica Boulevard, Suite 810
Los Angeles, California 90025