UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| IN RE:<br><br>CONTINENTAL AMERICAN CORPORATION<br><br>　　　　　　DEBTOR. | **JOINTLY ADMINISTERED**<br><br>Case No. 23-10938-MLH   **LEAD CASE**<br>Chapter 11 |
|---|---|
| IN RE:<br><br>PIONEER NATIONAL LATEX, INC.<br><br>　　　　　　DEBTOR. | Case No. 23-10939-MLH<br>Chapter 11 |

**FIRST AMENDED DISCLOSURE STATEMENT WITH RESPECT TO
<u>CHAPTER 11 PLAN OF LIQUIDATION</u>**

David Prelle Eron, #23429
Prelle Eron & Bailey, P.A.
301 N. Main St., Suite 2000
Wichita, KS 67202
Tel: (316) 262-5500
Email: david@eronlaw.net

*Attorneys for Debtors*

**Date: April 23, 2025**

# I. INTRODUCTION AND DISCLAIMER

Debtor, Continental American Corporation ("CAC" or "Debtor"), as debtor and debtor-in-possession in this Chapter 11 Case under sections 1107 and 1108 of the Bankruptcy Code, submits its First Amended Disclosure Statement (this "Disclosure Statement") to holders of Claims against and Interests in Debtor in connection with the solicitation of acceptances of the Chapter 11 Plan of Liquidation, as the same may be amended (the "Plan"), a copy of which is attached hereto as **Exhibit A**. Unless otherwise defined, all capitalized terms contained herein have the respective meanings assigned to them in the Plan.

This Disclosure Statement describes certain aspects of the Plan, the Chapter 11 Cases, Debtor's liquidation, and wind-down and the formation of the Liquidating Trust. Under the Plan, (a) Holders of Allowed Fee Claims, Administrative Claims, Priority Tax Claims, Other Priority Claims, and General Unsecured Claims will be deemed to hold interests in the Liquidating Trust and (b) all Interests in Debtor will be cancelled and terminated. The Liquidating Agent will be charged with: (i) pursuing Remaining Actions on behalf of Creditors; (ii) analyzing and reconciling Claims that have been filed against the Estates; and (iii) making distributions on account of Allowed Claims in accordance with the Plan and the Liquidating Trust Agreement entered into with respect thereto. For a complete understanding of the Plan, you should read the Disclosure Statement, the Plan and the exhibits and schedules thereto, in their entireties.

Debtor believes that confirmation of the Plan is in the best interests of all parties, including Creditors and the Estate. Accordingly, Debtor urges each Creditor that is impaired under the Plan, and entitled to vote with respect to the Plan, to vote to accept the Plan. To be counted, a ballot containing your vote to accept or to reject the Plan must be received by Debtor by no later than 5:00 p.m. (Central Time) on, June 5, 2025.

**NO REPRESENTATIONS CONCERNING DEBTOR OR THE PLAN ARE AUTHORIZED BY DEBTOR OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE THAT ARE OTHER THAN AS CONTAINED IN THE DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION. ANY NON-DEBTOR REPRESENTATIONS AND INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE.**

**THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT. DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN TAKEN TO MAKE SURE IT FAIRLY REPRESENTS THE CURRENT POSITION OF DEBTOR.**

**FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND INTERESTS, THE DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT THE PLAN ITSELF QUALIFIES ALL SUMMARIES. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE**

PLAN ARE CONTROLLING. SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS REFERRED TO IN THE DISCLOSURE STATEMENT DO NOT PURPORT TO BE COMPLETE AND ARE SUBJECT TO AND QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE APPLICABLE AGREEMENTS.

SECTION 1125 OF THE BANKRUPTCY CODE REQUIRES THAT THERE BE A POST-PETITION DISCLOSURE IN THE FORM OF A DISCLOSURE STATEMENT THAT PROVIDES "ADEQUATE INFORMATION" TO CREDITORS BEFORE ANYONE MAY SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN. THIS DISCLOSURE STATEMENT IS PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE SO AS TO PROVIDE "ADEQUATE INFORMATION" TO CREDITORS IN THIS PROCEEDING. CREDITORS ARE URGED TO CONSULT WITH THEIR OWN INDIVIDUAL COUNSEL OR EACH OTHER AND TO REVIEW ALL OF THE RECORDS HEREIN IN ORDER TO FULLY UNDERSTAND THE DISCLOSURES MADE, ANY PLANS FILED HEREIN AND ANY OTHER PERTINENT INFORMATION IN THIS PROCEEDING. ANY PLAN WILL BE COMPLEX, ESPECIALLY SINCE IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT, AND ANY INTELLIGENT JUDGMENT CONCERNING ANY PROPOSED PLAN CANNOT BE MADE WITHOUT FULLY UNDERSTANDING THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AND THE FULL COMPLEXITIES OF ANY PLAN PROPOSED HEREIN. THIS DISCLOSURE STATEMENT IS NOT INTENDED TO TAKE THE PLACE OF THE PLAN. EACH CREDITOR IS URGED TO STUDY THE PLAN IN FULL AND TO CONSULT ITS COUNSEL WITH RESPECT TO THE PLAN, ITS TAX IMPLICATION(S), AND ITS EFFECT ON HIS, HER OR ITS RIGHTS.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND BECOMES EFFECTIVE, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS (INCLUDING THOSE WHO REJECTED OR WHO ARE DEEMED TO HAVE REJECTED OR ACCEPTED THE PLAN AND THOSE WHO DID NOT SUBMIT BALLOTS TO ACCEPT OR TO REJECT THE PLAN) SHALL BE BOUND BY THE TERMS OF THE PLAN.

## II. VOTING AND CONFIRMATION PROCEDURES

Under the Bankruptcy Code, classes of claims that are unimpaired under a Chapter 11 plan are deemed to have accepted the plan and are not entitled to vote to accept or reject the Plan. Classes of claims and interests that are not entitled to receive any distribution on account of their claims or interests are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

Under the terms of the Plan, the holders of Allowed Claims in Classes 1 through 6 are entitled to vote to accept or reject the Plan. Votes on the Plan are not being solicited from holders of Interests in Class 7, which are impaired. Holders of Class 7 Interests will receive no distribution under the Plan and, therefore, are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

A.  **Voting Procedures**

If you are entitled to vote to accept or reject the Plan, a ballot is enclosed for the purpose of voting on the Plan. Please carefully follow the instructions set forth in the ballot and vote and return your ballot(s), by first class mail, to:

> David Prelle Eron
> Prelle Eron & Bailey, P.A.
> 301 N. Main St., Suite 2000
> Wichita, KS 67202
> Tel: (316) 262-5500
> Email: david@eronlaw.net

**TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED NO LATER THAN 5:00 P.M. (CENTRAL TIME) ON JUNE 5, 2025 (THE "VOTING DEADLINE").**

**ANY BALLOT WHICH IS EXECUTED BUT DOES NOT INDICATE AN ACCEPTANCE OR REJECTION OF THE PLAN, OR WHICH BOTH THE ACCEPTANCE AND REJECTION BOX IS CHECKED, WILL BE DEEMED TO BE AN ACCEPTANCE OF THE PLAN. ANY BALLOT THAT IS EITHER UNRETURNED BY THE VOTING DEADLINE OR IS RETURNED BUT NOT EXECUTED WILL BE CONSIDERED NULL AND VOID AND WILL NOT BE COUNTED.**

If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot, received a damaged ballot or lost your ballot, or if you have any questions concerning the Disclosure Statement, the Plan or the procedures for voting on the Plan, please call counsel for Debtor.

B.  **Confirmation Hearing**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing to determine whether the Plan meets the requirements for confirmation established by section 1129 of the Bankruptcy Code. Any party-in-interest may object to confirmation of the Plan. The Bankruptcy Court has scheduled the Confirmation Hearing for, June 12, 2025, at 10:30 a.m. Notice of the Confirmation Hearing has, or will be, provided to all holders of Claims and interests and other parties-in-interest (the "Confirmation Notice").

Objections, if any, to confirmation of the Plan must: (i) be in writing; (ii) state the name and address of the objecting party and the nature of the Claim or interest of such party; (iii) state with particularity the basis and nature of any objection; and (iv) in accordance with Bankruptcy Rule 3020(b)(1), be filed, together with proof of service, with the Bankruptcy Court and served on

the following parties so that they are received on, June 5, 2025 (the "Objection Deadline"): (a) counsel for Debtor, David Prelle Eron, Prelle Eron & Bailey, P.A., 301 N. Main St., Suite 2000, Wichita, KS 67202, david@eronlaw.net, (b) counsel for the Committee, Sharon L. Stolte, Sandberg Phoenix & von Gontard, P.C., 4600 Madison Avenue, Suite 1000, Kansas City, MO 64112, sstolte@sandbergphoenix.com, (c) counsel for White Oak, Andrew J. Nazar, Polsinelli PC, 900 West 48th Place, Suite 900, Kansas City, MO 64112, anazar@polsinelli.com and Ira L. Herman, Blank Rome LLP, 1271 Avenue of the Americas, New York, NY 10020, ira.herman@blankrome.com, and (d) counsel for the United States Trustee, John W. Nemecek, Office of the United States Trustee, 301 North Main Street, Suite 1150, Wichita, KS 67202, john.nemecek@usdoj.gov. **UNLESS AN OBJECTION TO PLAN CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

## III. GENERAL INFORMATION

### A. Description and History of Debtor's Business

CAC owned and operated a multinational balloon business, directly and through its subsidiaries (the "Business"). The Business was the oldest latex balloon company in the world, headquartered in Wichita, Kansas, with multiple plants across the United States and additional locations in Canada, Mexico, Brazil, Australia, and the United Kingdom. Pioneer National Latex, Inc. ("**PNL**" and together with CAC, "**Debtors**"), ceased operations at or around the Petition Date. CAC subsequently sold the Business through the bankruptcy restructuring/liquidation process.

## IV. THE CHAPTER 11 CASES

CAC filed D. Kan. Bankr. Case No. 23-10938 ("**CAC Case**" or simply the "**Case**") and PNL filed D. Kan. Bankr. Case No. 23-10939 ("**PNL Case**" and collectively the "**Cases**") on September 22, 2023. As a consequence of Debtors' commencement of the Chapter 11 Cases, all actions and proceedings against Debtors and all acts to obtain property from Debtors were stayed under section 362 of the Bankruptcy Code.

### A. Relevant Chapter 11 Filings

**1. First-Day Motions.** In an effort to minimize the impact of the commencement of the Chapter 11 Cases on the Business and to facilitate the administration of the Chapter 11 Cases, Debtors filed various motions and applications on the first day of the Chapter 11 Cases. These first day motions included a request to jointly administer the Cases, which was granted. The Cases remain jointly administered. However, this Disclosure Statement and the Plan are exclusively filed in the CAC Case and are not applicable to PNL or the PNL estate, which Debtors believe has no assets to administer.

**2. Retention of Professionals.** Debtors filed applications requesting approval by the Bankruptcy Court of its retention of various professional firms they have been utilizing throughout the Chapter 11 Cases, including but not limited to (i) Prelle Eron & Bailey, P.A. as bankruptcy counsel; (ii) Stinson, LLP, as general counsel, and (iii) Forvis, LLP, as accountants. The Bankruptcy Court entered orders approving the retention of these professionals as well as others.

**3. Schedules and Statements.** Debtor filed its Schedules and Statement of Financial Affairs on September 22, 2023 and November 3, 2023 (as may have been amended, the "Schedules and Statements"). The meeting of creditors under section 341(a) of the Bankruptcy Code was held on November 6, 2023, at which representatives of Debtor was questioned by creditors, creditor representatives, and a representative from the Office of the United States Trustee. Creditors are expressly referred to the Schedules and Statements, as amended from time to time as necessary, which are on file in these proceedings, for the purpose of becoming fully informed as to the assets, liabilities, and financial affairs of Debtor as of the Petition Date.

**4. Debtor-in-Possession Financing.** As of the Petition Date, Debtor was indebted to White Oak in the aggregate amount of $6,784,193.81, plus interest, costs, and expenses (including attorneys' fees and legal expenses). On October 20, 2023, Debtors filed a motion for authority to obtain post-petition financing (the "DIP Motion"). The Bankruptcy Court entered orders granting the DIP Motion on an interim and final basis, pursuant to which Debtors "rolled up" the pre-petition debt to White Oak into a postpetition facility with a borrowing limit of $12,000,000.00, subject to certain conditions and reserves (the "DIP Loan"), which was secured by substantially all of Debtors' assets.

**5. Sale of Substantially All of Debtor's Assets.**

On April 15, 2024, Debtors filed a motion to, among other things, approve the sale of substantially all of their assets and the terms and conditions of a credit bid by White Oak (the "Sale Motion"). On April 29, 2024, the Bankruptcy Court entered an order granting the Sale Motion (the "Bid Procedures Order"). Pursuant to the Bid Procedures Order, the deadline to place a bid on the Acquired Assets was May 6, 2024 at 5:00 p.m., prevailing Central time. No bids were received at or prior to the deadline. As a result, Debtors accepted White Oak's credit bid.

On May 15, 2024, the Bankruptcy Court entered the Sale Order approving the Asset Purchase Agreement by and among Debtors and White Oak, including the First Addendum to Asset Purchase Agreement dated April 26, 2024. White Oak assigned its rights as buyer to Pioneer Blue Balloon, LLC and Pioneer Red Balloon, LLC ("Buyers"). The sale of substantially all of Debtors' assets to Buyers closed on June 28, 2024.

**B. Committee Participation in the Chapter 11 Cases**

Pursuant to section 1102(a) of the Bankruptcy Code, on November 13, 2023, the United States Trustee appointed the Committee. The Committee retained Sandberg Phoenix von Gontard as its counsel. Since the appointment of the Committee, the Committee has taken an active role in the Chapter 11 Cases.

V.    FINANCIAL INFORMATION

**A. Assets**

The following assets will be transferred to the Liquidating Trust on or before the Effective Date. The assets are described in Section 1.78 of the Plan as follows:

6

Case 23-10938   Doc# 594   Filed 04/23/25   Page 6 of 20

"Trust Assets" shall mean all Property of Debtor transferred to the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement, which shall include the Remaining Actions, but exclude Released Claims.

Pursuant to the Asset Purchase Agreement and Sale Order, White Oak purchased all assignable Causes of Action of Debtors, including all Avoidance Actions. As part of an agreed resolution between the Debtor, the Committee and White Oak, White Oak agreed to release all Avoidance Action to the Debtor to pursue excluding: (i) any Avoidance Actions against White Oak and the other Releasees (as defined in the Asset Purchase Agreement); and (ii) any Avoidance Actions against Subsidiaries (as defined in the Asset Purchase Agreement) of CAC whose stock, shares, or membership units, or other equity interests were Acquired Assets. The Avoidance Actions in (i) and (ii) are Acquired Assets and will not be transferred to the Liquidating Trust). The Remaining Actions, excluding any Released Claims, will be transferred to the Liquidating Trust are the Avoidance Actions that were not Acquired Assets.

The Liquidating Agent may pursue Remaining Actions against recipients of transfers made prior to the commencement of the Chapter 11 Cases under sections 544-551 and 553 of the Bankruptcy Code, together with other state and federal laws made applicable thereunder. The Schedules and Statements indicate that Debtor made at least (i) $15,780,255.76 in transfers in the 90 days prior to the Petition Date, and (ii) $2,087,680.01 in transfers to insiders in the one (1) year prior to the Petition Date. Certain of these transfers may be recoverable.

**B.  Liabilities**

**1.  Administrative Claims.** Post-Closing Fee Claims are Fee Claims for periods of time after June 28, 2024 and are unclassified, all Other Fee Claims are in Class 1, and all other Administrative Claims are in Class 2.

**a.  White Oak Super-Priority Claim**. White Oak has a remaining super-priority administrative claim under the DIP Order which White Oak estimates to be in the amount of $1,000,000, which is payable out of any remaining Debtor Property, excluding proceeds of the Remaining Actions.

**b.  Debtor Professionals.** Debtor Professionals will have accrued, and unpaid (a) Post-Closing Fee Claims as of the anticipated Confirmation Date of approximately $50,000.00 and (b) Class 1 Other Fee Claims prior to the Closing of approximately $0.00.

**c.  Committee Professionals.** Committee Professionals will have accrued and unpaid (a) Post-Closing Fee Claims as of the anticipated Confirmation Date of approximately $7,500.00 and (b) Class 1 Other Fee Claims prior to the Closing of approximately $0.

**d.  Class 2 Other Administrative Claims.** Class 2 Administrative Claims are estimated at $677,642.50. The listed amount does not include United States Trustee fees of approximately $0.00.

2. **Priority Claims.**

  a. **Class 3 Claims of Governmental Unit Taxing Bodies.** Class 3 includes Priority Tax Claims, which are estimated at approximately $0.00.

  b. **Class 4 Other Priority Claims.** Class 4 includes Other Priority Claims, which are estimated at approximately $191,768.26. This figure is based on Claims filed to date or scheduled by Debtor and is subject to further reconciliation or other adjustment by the Liquidating Agent.

3. **Class 5 Secured Claims.** Class 5 includes Secured Claims. Debtor's Property will be liquidated and distributed as set forth in the Plan. Any unpaid Secured Claims remaining after payment of Class 4 Other Priority Claims will be treated as Class 6 General Unsecured Claims and paid accordingly.

4. **Class 6 General Unsecured Claims.** Class 6 includes General Unsecured Claims, which are estimated at approximately $23,777,887.89, based upon the Schedules and Statements and the proofs of claim filed to date or scheduled by Debtor and are subject to further reconciliation or other adjustment by the Liquidating Agent and Claims filed in respect of executory contracts and unexpired leases of Debtor that are being rejected pursuant to the Plan.

5. **Class 7 Interests.** Class 7 includes any legal or equitable interests in Debtor, including any ownership interest or right to acquire any ownership interest in Debtor.

## VI.   PLAN OF LIQUIDATION

**A.   Objectives of the Plan**

The primary objectives of the Plan are to: (i) transfer the Trust Assets to the Liquidating Trust, which will be charged with liquidating them, reconciling Claims, prosecuting Remaining Actions for the benefit of Creditors and making distributions to Creditors and (ii) maximize value to all Creditor groups on a fair and equitable basis under the priorities established by the Bankruptcy Code and applicable law.

Debtor believes that the Plan provides holders of Allowed Claims with a substantially greater recovery than the recovery they would receive without approval of the Plan, or upon conversion of the Chapter 11 Case to a liquidation under Chapter 7. For the avoidance of doubt, unsecured non-priority claims will not receive a distribution until, at the very least, all allowed administrative and priority claims have been paid. No analysis has been made as to an estimate of what final allowed administrative claims may be, or what distribution may ultimately be made to allowed unsecured claims.

The statements contained in this Disclosure Statement include summaries of the provisions contained in the Plan and in documents referred to therein. The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms and provisions of the Plan or documents referred to therein, and reference is made to the Plan and to such documents for the full and complete statements of such terms and provisions.

The Plan itself, and the documents referred to therein, control the actual treatment of Claims against and interests in Debtor and will be binding upon all holders of Claims against, and Interests in Debtor upon the Confirmation Date. In the event of any conflict between this Disclosure Statement, on the one hand, and the Plan or any other operative document, on the other hand, the terms of the Plan and such other operative documents, including, without limitation, the Liquidating Trust Agreement, are controlling.

B.  **Overview of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, debtors are authorized to reorganize their businesses for the benefit of themselves, their creditors, and their interest holders. Another goal of Chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated interest holders with respect to the distribution of a debtor's assets.

In addition, Chapter 11 may be used to effectuate an orderly liquidation of a debtor's business and assets. In contrast to a Chapter 7 liquidation, in which a trustee is appointed to conduct the liquidation and wind down of the estate, in a Chapter 11 liquidation, a debtor or its designee (such as the Liquidating Agent) remains in possession of the estate.

The commencement of a Chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of a debtor as of the filing date. The Bankruptcy Code contemplates that a debtor, through its pre-bankruptcy management, will continue to operate its business in the ordinary course and remain in possession of its property during the case and while it seeks to negotiate and implement a plan. Any activities that are not within the ordinary course of a debtor's business must be approved by the bankruptcy court before they are undertaken.

The consummation of a plan is the principal objective of a Chapter 11 case. A plan sets forth the means for satisfying claims against and interests in a debtor. Confirmation of a plan by the bankruptcy court makes the plan binding upon a debtor, any person or entity acquiring property under the plan and any creditor of or equity security holder in a debtor, whether or not such creditor or equity security holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan. The confirmation order, subject to certain limited exceptions and other than as provided therein or in the plan itself, discharges a debtor from any debts that arose prior to the date of confirmation of the plan, substitutes them with the obligations specified under the confirmed plan, and terminates all rights and interests of equity interest holders.

C.  **Means of Implementation of the Plan**

1.  **Vesting of Assets.** On the Effective Date, the Trust Assets will be transferred to and vest in the Liquidating Trust and be deemed contributed thereto, subject to the terms of the Plan and Confirmation Order. All property held in the Liquidating Trust for distribution pursuant to the Plan will be held solely in trust for the Beneficiaries and will not be deemed property of Debtor. Upon entry of the Confirmation Order, Debtor will be authorized and directed to take such steps as may be necessary or appropriate to confirm such transfer and contribution of the Trust Assets to the Liquidating Trust, subject to oversight from the Liquidating Agent.

9

2. **Cancellation of Interests.** On the Effective Date, all Interests in Debtor will be deemed cancelled and of no further force, whether surrendered or not.

3. **Liquidating Trust Asset Administration.** From and after the Effective Date, the Liquidating Agent will administer the Trust Assets as set forth in the Plan, Liquidating Trust Agreement, and Confirmation Order. To the extent they conflict, the Plan and Confirmation Order will control over the Liquidating Trust Agreement, and the Confirmation Order will control over the Plan.

4. **Termination of Committee.** The Committee will terminate automatically upon the Effective Date. Upon termination of the Committee, the Committee will be dissolved and its members shall be deemed released of their duties and responsibilities in connection with the Chapter 11 Case or the Plan and its implementation, and the retention or employment of the Committee's counsel will terminate, except for ministerial duties or any duties imposed pursuant to the Plan (including, without limitation, filing applications for allowance and payment of Professional Fee Claims).

5. **Case Administration.** From and after the Effective Date and continuing through the date that a final decree closing the Chapter 11 Case is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Liquidating Agent will possess the rights of Debtor for all matters arising in, arising under or related to the Chapter 11 Cases as set forth in the Plan. In addition to, and without limiting the generality of the foregoing, for all matters arising in, arising under or related to the Chapter 11 Case, the Liquidating Agent will (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction; (ii) have the right to obtain records of, or related to, Debtor (including, without limitation, bank statements and cancelled checks); (iii) be entitled to notice and opportunity for hearing; (iv) be entitled to participate in all matters brought before the Bankruptcy Court, including, but not limited to, adversary proceedings; (v) have exclusive standing to commence the Remaining Actions; (vi) be entitled to request that the Bankruptcy Court enter a final decree closing the Chapter 11 Case; and (vii) be entitled to receive notice of all applications, motions and other papers and pleadings set before the Bankruptcy Court in the Chapter 11 Case.

6. **Trust Professionals.** Upon the Effective Date, the Liquidating Agent may retain such law firms, accounting firms, experts, advisors, consultants, investigators, or other Professionals as it may deem necessary in accordance with the Liquidating Trust Agreement without approval of employment or fees by the Bankruptcy Court. The Professionals retained by the Liquidating Agent are not required to be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, counsel, and financial advisors of any party in the Chapter 11 Case. The Liquidating Agent's retention of any such Professionals is deemed not to pose any conflict of interest, and no conflict will exist by virtue of the filing of applications by Professional Persons for allowance of Administrative Claims in accordance with the Plan.

7. **INJUNCTION.** EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR AN ORDER OF THE BANKRUPTCY COURT, ON AND AFTER THE CONFIRMATION DATE, ALL PERSONS AND ENTITIES WHO HAVE HELD, HOLD OR MAY HOLD LIENS, CLAIMS AGAINST OR INTERESTS IN DEBTOR ARE, WITH RESPECT TO ANY SUCH LIENS, CLAIMS OR INTERESTS, PERMANENTLY ENJOINED, FROM: (A)

COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) AGAINST OR AFFECTING DEBTOR, THE LIQUIDATING TRUST, OR THE LIQUIDATING AGENT, OR ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR-IN-INTEREST TO, ANY OF THE FOREGOING ENTITIES; (B) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST DEBTOR, THE LIQUIDATING TRUST, OR THE LIQUIDATING AGENT, ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR-IN-INTEREST TO, ANY OF THE FOREGOING ENTITIES; (C) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ENCUMBRANCE OF ANY KIND AGAINST DEBTOR, THE LIQUIDATING TRUST, OR THE LIQUIDATING AGENT, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR-IN-INTEREST TO, ANY OF THE FOREGOING ENTITIES; (D) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND, DIRECTLY OR INDIRECTLY, AGAINST ANY OBLIGATION DUE DEBTOR, THE LIQUIDATING TRUST, OR THE LIQUIDATING AGENT, OR ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR SUCCESSOR-IN-INTEREST TO, ANY OF THE FOREGOING ENTITIES; AND (E) TAKING ANY ACTIONS IN ANY PLACE AND IN ANY MANNER WHATSOEVER THAT DO NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN, PROVIDED THAT NOTHING HEREIN ENJOINS BUYER FROM ENFORCING ANY RIGHTS UNDER THE ASSET PURCHASE AGREEMENT.

8. **Term of Bankruptcy Injunction or Stays.** Except as otherwise provided in the Plan and Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect through the imposition of the injunction set forth in the Plan.

9. **EXCULPATION AND LIMITATION OF LIABILITY.** EXCEPT AS OTHERWISE PROVIDED BY THE PLAN OR THE CONFIRMATION ORDER, ON THE EFFECTIVE DATE, DEBTOR, THE COMMITTEE, THE MEMBERS OF THE COMMITTEE IN THEIR REPRESENTATIVE CAPACITIES, AND/OR ANY OF SUCH PARTIES' RESPECTIVE CURRENT OR FORMER MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS, ATTORNEYS, BUSINESS CONSULTANTS, REPRESENTATIVES, FINANCIAL ADVISORS, INVESTMENT BANKERS, FUND MANAGERS OR AGENTS AND ANY OF SUCH PARTIES' SUCCESSORS AND ASSIGNS (COLLECTIVELY, AS DEFINED IN THE PLAN, THE "RELEASED PARTIES") SHALL BE DEEMED RELEASED BY EACH OF THEM AGAINST THE OTHER, AND BY ALL HOLDERS OF CLAIMS OR INTERESTS, OF AND FROM ANY CLAIMS, OBLIGATIONS, RIGHTS, CAUSES OF ACTION AND LIABILITIES FOR ANY ACT OR OMISSION OCCURRING DURING, THE CHAPTER 11 CASES, INCLUDING, WITHOUT LIMITING

THE GENERALITY OF THE FOREGOING, ALL SALES OF PROPERTY, THE DISCLOSURE STATEMENT, THE PURSUIT OF APPROVAL OF THE DISCLOSURE STATEMENT, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE PLAN OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, EXCEPT FOR ACTS OR OMISSIONS WHICH CONSTITUTE WILLFUL MISCONDUCT, GROSS NEGLIGENCE, BREACH OF FIDUCIARY DUTY, OR INTENTIONAL FRAUD, AND ALL SUCH PERSONS, IN ALL RESPECTS, SHALL BE ENTITLED TO REASONABLY RELY ON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES IN CONNECTION WITH DEBTOR'S CHAPTER 11 CASE AND UNDER THE PLAN. FOR THE AVOIDANCE OF DOUBT, NOTHING CONTAINED IN THE PLAN OR LIQUIDATING TRUST AGREEMENT SHALL BE DEEMED A RELEASE OR WAIVER OF ANY CLAIMS OR REMAINING ACTIONS DEBTOR OR THE ESTATE MAY HOLD AGAINST DEBTOR'S MEMBERS, DIRECTORS, OFFICERS, EMPLOYEES, INSIDERS, OR AFFILIATES, PROVIDED NOTHING EXCULPATES ANY CLAIMS OR RIGHTS OF BUYERS TO ENFORCE THE ASSET PURCHASE AGREEMENT, INCLUDING BUT NOT LIMITED TO ANY REPRESENTATIONS AND WARRANTIES MADE THEREIN.

## VII. STATUS AND EXISTENCE OF EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND OTHER LITIGATION

### A. Executory Contracts and Unexpired Leases

All executory contracts or unexpired leases of Debtor are subject to the Rejection Claim Bar Date and shall be rejected as of the Confirmation Date, to the extent not previously rejected or expired.

### B. Potential Remaining Actions Litigation

As previously set forth herein, the Schedules and Statements indicate Debtor made certain transfers which may be recoverable. Claims may exist for transfers made in the four (4) years prior to the Petition Date. Among other things, these transfers may be recoverable because they constitute fraudulent transfers. As of the Effective Date, the Liquidating Agent will assume responsibility for any Remaining Actions, which shall include the Avoidance Actions.

The recoveries, if any, from any litigation brought by the Liquidating Agent will depend on many factors, which cannot be predicted at this time. The Liquidating Agent may elect not to pursue certain Remaining Actions the pursuit of which the Liquidating Agent deems not to be in the best interest of the Estates or the Liquidating Trust. Except as specifically provided therein, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or Remaining Actions that the Liquidating Agent may choose to assert on behalf of the Estate or the Liquidating Trust in accordance with any provision of the Bankruptcy Code or any non-bankruptcy law.

All Remaining Actions shall survive confirmation, and the commencement of prosecution of Remaining Actions shall not be barred or limited by issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches based solely or in part upon confirmation of the Plan.

The Liquidating Agent's right to commence and prosecute Remaining Actions shall not be abridged or materially altered in any manner by reason of confirmation of the Plan.

**C.      Objections to Claims**

Objections to certain Claims will be warranted, and from and after the Effective Date, the Liquidating Agent will have authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims. The Liquidating Agent will have standing to file objections to such Claims even if such Claims were scheduled by Debtor as undisputed, liquidated, and non-contingent.

### VIII.    CONFIRMATION AND CONSUMMATION PROCEDURE

The Bankruptcy Court may confirm the Plan only if it determines that the Plan complies with the requirements of Chapter 11, including, among other things, that: (i) the Plan has properly classified Claims and Interests; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) Debtor has complied with applicable provisions of the Bankruptcy Code; (iv) Debtor has proposed the Plan in good faith and not by any means forbidden by law; (v) the Plan has been accepted by the requisite votes of all Classes of Creditors (except to the extent that "cramdown" is available under section 1129(b) of the Bankruptcy Code); (vi) the Plan is in the "best interests" of all holders of Claims or Interests in an Impaired Class; (vii) the Plan is "feasible" in that Confirmation of the Plan is not likely to be followed by the liquidation or need for further restructuring of Debtor, unless the Plan contemplates liquidation; and (viii) all fees and expenses payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, have been paid or the Plan provides for the payment of such fees on the Confirmation Date.

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan:

**A.      Solicitation of Votes**

Under the Bankruptcy Code, only classes of claims and interests that are impaired under a plan are entitled to vote to accept or reject the plan. A class is impaired if the legal, equitable or contractual rights to which the holders of claims or interests are entitled are modified, other than by curing defaults and reinstating the debt. Under sections 1126(f) and (g) of the Bankruptcy Code, classes of claims and interests that are not impaired are conclusively presumed to have accepted the plan and are not entitled to vote on a plan, and classes of claims and interests whose holders will receive or retain no property under the plan are deemed to have rejected a plan and are not entitled to vote on a plan. Creditors who hold disputed or disallowed claims are not entitled to vote to accept or reject the plan.

Under the Plan, the holders of Allowed Claims in Classes 1 through 6 are entitled to vote to accept or reject the Plan. All other Classes of Claims or interests are deemed under the Bankruptcy Code to have accepted or rejected the Plan. Under the Bankruptcy Code, a class of claims accepts a plan if holders of at least two-thirds in dollar amount and more than one-half in number of the claims properly voted in that class, voted to accept. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

This Disclosure Statement and an appropriate ballot are being distributed to all holders of Claims who are entitled to vote on the Plan. Any ballot that is properly completed, executed, and timely returned to Debtor's counsel (at the location set forth above) but does not indicate an acceptance or rejection of the Plan, or indicates both an acceptance and a rejection of the Plan, will be deemed to be a vote to accept the Plan. Whenever a Creditor casts more than one ballot voting the same Claim before the Voting Deadline, the last ballot received before the Voting Deadline is deemed to reflect the voter's intent and will therefore supersede any prior ballots. Creditors must vote all of their Claims within a particular Class under the Plan either to accept or reject the Plan and may not split their vote, and thus a ballot that partially accepts and partially rejects the Plan will not be counted.

B.     **The Confirmation Hearing**

The Confirmation Hearing is scheduled for June 12, 2025 at 10:30 a.m. before the Bankruptcy Court at 401 N. Market, Courtroom 150, Wichita, Kansas, 67202. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of section 1129 of the Bankruptcy Code. Prior to the Confirmation Hearing, Debtor will submit a report to the Bankruptcy Court reflecting the votes received with respect to the acceptance or rejection of the Plan by the parties entitled to vote thereon.

Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to confirmation of the Plan. Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court and served on all required parties on or before the Objection Deadline, which is the confirmation objection deadline that has been set by the Bankruptcy Court. Unless an objection to confirmation is timely served and filed, it may not be considered by the Bankruptcy Court.

C.     **Confirmation**

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the applicable requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation of a plan are that the plan: (i) has been accepted by all impaired classes of claims and equity interests or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class; (ii) is feasible; and (iii) is in the "best interests" of creditors and stockholders that are impaired under the plan and that vote, or are deemed, to reject the plan.

1.     **Unfair Discrimination and Fair and Equitable Tests**

To obtain confirmation of a plan over the objection of a class of claims or interests that rejects such plan, it must be demonstrated that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to each such non-accepting class. In order for a plan to be found to be "fair and equitable" and thus subject to confirmation by "cramdown" under section 1129(b) of the Bankruptcy Code, Debtor must demonstrate:

a.     **For a Class of Unsecured Creditors:** That either (i) each impaired unsecured creditor receives or retains, under the plan, property of a value equal to the amount of

14

its allowed claim; or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

        **b.**     **For a Class of Interests:** That either (i) each holder of an interest will receive or retain, under the plan, property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest; or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

As described above, holders of Interests in Class 7 are presumed, under section 1126(g) of the Bankruptcy Code, to have rejected the Plan. Debtor requests confirmation of the Plan under section 1129(b) of the Bankruptcy Code, notwithstanding the deemed rejection of the Plan by Class 7. Debtor believes that the Plan may be confirmed pursuant to the above-described "cramdown" provisions over the dissent of Class 7 in view of the terms of the Plan. Debtor believes that the treatment under the Plan of the holders of Interests in Class 7 satisfies the "fair and equitable" test because there are no Classes junior to such non-accepting Class that will receive or retain any property under the Plan and since Class 6, whose Claims have priority over the Interests classified in Class 7 to the extent Allowed, are not being paid in full under the terms of the Plan and further will share Pro Rata in the Trust Assets. In addition, Debtor does not believe that the Plan unfairly discriminates against Class 7.

    **2.**     **Best Interests Test**

With respect to each impaired class of claims and interests, confirmation of a plan requires that each holder of a claim or interest either (i) accept the plan; or (ii) receive or retain under the plan property of a value, as of the effective date, that is not less than the value such holder would receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. Debtor believes that holders of Impaired Claims and Interests in each Impaired Class under the Plan would receive significantly less under a Chapter 7 liquidation than under the Plan.

To calculate the probable distribution to holders of each impaired class of claims and interests if a debtor was liquidated under Chapter 7, a bankruptcy court must first determine the aggregate dollar amount that would be generated from such debtor's assets in a Chapter 7 case under the Bankruptcy Code. This "liquidation value" would consist primarily of the proceeds from a forced sale of the Trust Assets by a Chapter 7 trustee.

The amount of liquidation value available to unsecured creditors would be reduced by, first, the claims of secured creditors to the extent of the value of their collateral and, second, by the costs and expenses of liquidation, as well as by other administrative expenses and costs of the bankruptcy case. Costs of liquidation under Chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as that of counsel and other professionals retained by the trustee, asset disposition expenses and all unpaid expenses incurred until the liquidation is completed.

Debtor believes that the Plan meets the "best interests of creditors" test of section 1129(a)(7) of the Bankruptcy Code. Debtor believes that the members of each Impaired Class will receive significantly greater value under the Plan than they would in a Chapter 7 liquidation proceeding due to (i) the value the Liquidating Agent will bring to the Estates in reconciling

overstated and invalid Claims and from Remaining Actions; and (ii) avoiding the additional expenses associated with conversion to a Chapter 7 case.

With respect to (i), although it is possible that a Chapter 7 trustee will vigorously pursue objections to Claims and Remaining Actions, Debtor submits this is highly speculative because the pursuit of such litigation is not a precondition to the appointment of a Chapter 7 trustee, and the Chapter 7 trustee may ultimately choose not to challenge Claims or to pursue Remaining Actions.

With respect to (ii), Debtor submits that a significant distinction between the Plan and converting the Chapter 11 Cases to Chapter 7 is the substantial Chapter 7 administrative costs that will result from such conversion. Pursuant to section 326 of the Bankruptcy Code, the statutory Chapter 7 trustee fee (the "Chapter 7 Trustee Fee") can be as high as 25% of the first $5,000 disbursed, 10% on any amount disbursed in excess of $5,000 but not in excess of $50,000, 5% on any amount disbursed in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3% on any amounts in excess of $1,000,000. Any such Chapter 7 Trustee Fee will directly reduce any recovery for Creditors.

A Chapter 7 trustee will likely also retain Professionals for purposes similar to those retained by the Liquidating Agent. The Chapter 7 trustee and his or her Professionals, however, may be unfamiliar with Debtor's operations and the Chapter 11 Case. Accordingly, the Chapter 7 trustee and his or her Professionals may be required to devote considerable time reviewing Debtor's books and records and the events of the Chapter 11 Cases occurring prior to the conversion to Chapter 7. Given this reality, Debtor submits that the fees of a Chapter 7 trustee's Professionals will exceed the fees of the Liquidating Agent's Professionals.

### 3. Conclusion

For the foregoing reasons, Debtor submits that the Plan, as proposed, meets each of the requirements for confirmation under section 1129 of the Bankruptcy Code.

## IX. TAX CONSEQUENCES

Debtor is not qualified to advise Creditors of, and therefore make no representation as to, the tax impact that the treatment they will receive in the Plan will have on them, respectively.

THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCE TO EACH HOLDER OF A GENERAL UNSECURED CLAIM. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN SOME CHAPTER 11 CASES, UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH HOLDER OF A GENERAL UNSECURED CLAIM OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH HOLDER OF A GENERAL UNSECURED CLAIM AS A RESULT OF THE PLAN.

## X. RISK FACTORS

Holders of Claims against and Interests in Debtor should read and consider carefully the information set forth below, as well as other information set forth in this Disclosure Statement (and

the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Plan. This information, however, should not be regarded as necessarily setting forth the only potential risks involved in connection with the Plan and its implementation.

A. **Failure To Satisfy Vote Requirement**

In the event that sufficient votes accepting the Plan are not received and, as a result, Debtor is unable to confirm the Plan as proposed, Debtor will assess the alternatives available to it, including (i) amending the Plan, (ii) converting the Chapter 11 Cases to Chapter 7 liquidation proceedings, or (iii) dismissing the Case. There is substantial risk that these alternatives will result in less favorable treatment of Claims and Interests than that provided in the Plan.

B. **Non-Consensual Confirmation**

In the event any Impaired Class of Claims does not accept the Plan, the Bankruptcy Court may nevertheless confirm such Plan at Debtor's request if at least one Impaired Class of Claims has accepted the Plan (with such acceptances being determined without including the vote of any "insider" in such Class), and, as to each Impaired Class that has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such dissenting Impaired Class(es). Because the Plan deems Class 7 to have rejected the Plan, these requirements must be satisfied with respect to such Class. Debtor believes that the Plan satisfies these requirements, although there can be no assurances that the Bankruptcy Court will make the findings necessary to reach this result.

C. **Risk of Non-Occurrence of the Effective Date**

Although Debtor believes that if the Plan is confirmed, the Effective Date will occur soon after the Confirmation Date of the Plan, there can be no assurance that all conditions to the occurrence of the Effective Date will occur. In the event the Effective Date does not occur, Debtor will assess the alternatives available to it at that time.

D. **Classification and Treatment of Claims and Interests**

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims against, and Interests in, Debtor. The Bankruptcy Code also provides that, except for certain Claims classified for administrative convenience, the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. Debtor believes that all Claims and Interests have been appropriately classified in the Plan.

The Bankruptcy Code also requires that the Plan provide the same treatment for each Claim or Interest of a particular Class unless the holder of a particular Claim or interest agrees to a less favorable treatment of its Claim or Interest. Debtor believes that the Plan treats each Claim or interest in a given Class equally, thus satisfying this requirement.

To the extent that the Bankruptcy Court finds that the Plan does not satisfy these requirements, the Bankruptcy Court could deny confirmation of the Plan. Issues or disputes relating to classification and/or treatment could result in a delay in the Confirmation and consummation of the Plan and could increase the risk that the Plan will not be consummated.

E.  **Amount of Allowed Claims**

The total amount of all Claims filed in the Chapter 11 Cases may materially exceed the estimated amounts of Allowed Claims assumed in the development of the Plan and in the valuation estimates provided above. The actual amount of all Allowed Claims in any Class may differ significantly from the estimates provided in this Disclosure Statement. Accordingly, the amount and timing of the distributions that will ultimately be received by any particular holder of an Allowed Claim in any Class may be materially and adversely affected if the estimates are exceeded as to any Class.

In addition, the Liquidating Trust may not have sufficient assets to pay Allowed Fee Claims, Administrative Claims, Priority Tax Claims, and Other Priority Claims in full in the Chapter 11 Case, including the costs and expenses of pursuing any and all Remaining Actions.

## XI. ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

Debtor believes that the Plan affords holders of Claims the potential for the greatest recovery and, therefore, is in the best interests of such holders. If, however, the requisite acceptances are not received, or the Plan is not confirmed and/or consummated, the theoretical alternatives include: (i) formulation of an alternative plan of liquidation; (ii) liquidation of Debtor and the Estates under Chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Case.

A.  **Alternative Plan(s) of Liquidation**

If the Plan is not confirmed, the Committee or any other party may attempt to formulate and propose a different plan or plans of liquidation. Debtor believes that the Plan, as described herein, enables Creditors to realize the greatest possible value under the circumstances and, compared to any other or later alternative plan of liquidation, has the greatest likelihood of being confirmed and consummated.

B.  **Chapter 7 Liquidation of Debtor**

If no plan is confirmed, Debtor may be forced to liquidate under Chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be elected or appointed to liquidate Debtor's remaining assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against or interests in Debtor.

Debtor believes that in a liquidation under Chapter 7, before Creditors received any distribution, additional administrative expenses related to the appointment of a trustee and the trustee's attorneys, accountants and other professionals would cause a substantial diminution in the value of the Estate. The assets available for distribution to Creditors would be reduced by such additional expenses and by claims, some of which would be entitled to priority. The liquidation analysis, or "best interests" test, suggests that unsecured Creditors would receive *de minimis* distributions on their Claims in a liquidation.

C.  **Dismissal of the Case**

If no plan is confirmed and the case is not converted to Chapter 7, dismissal of the Case would be the only remaining option. There would be very little likelihood of payment to any class of Creditors herein in the event of dismissal. Debtor does not hold any unencumbered assets, and the bulk of Debtor's assets consist of the Remaining Actions, most of which arise under the Bankruptcy Code. Debtor believes that dismissal would be the worst option available for Creditors. However, a dismissal could be the necessary result if the Plan is not confirmed because the Court may determine that there is insufficient likelihood that a Chapter 7 trustee would pursue the Remaining Actions if the Court determines that the Estate is administratively insolvent.

## XII.  CONCLUSION

Debtor submits that under the Plan, holders of Unsecured Claims stand may receive additional recovery on their Claims, while at the same time avoiding the additional fees and expenses that would be incurred upon conversion to Chapter 7, and that the distributions provided for in the Plan are fair and equitable.

Accordingly, Debtor recommends acceptance of the Plan. If you are eligible to vote on the Plan, please do so now by completing and returning the enclosed ballot.

**CONTINENTAL AMERICAN CORPORATION**

By: */s/ Daniel A. Flynn*
Name: Daniel A. Flynn
Title:   CEO

**PRELLE ERON & BAILEY, P.A.**

By: */s/ David Prelle Eron*
David Prelle Eron, #23429
301 N. Main St., Suite 2000
Wichita, KS 67202
Tel: (316) 262-5500
Email: david@eronlaw.net

*Attorneys for Debtor*

19

**EXHIBIT A**

**Plan**

(See attached)