UNITED STATES BANKRUPTCY COURT
DISTRICT OF KANSAS

| IN RE:<br><br>CONTINENTAL AMERICAN CORPORATION<br><br>DEBTOR. | **JOINTLY ADMINISTERED**<br><br>Case No. 23-10938-MLH **LEAD CASE**<br>Chapter 11 |
|---|---|
| IN RE:<br><br>PIONEER NATIONAL LATEX, INC.<br><br>DEBTOR. | Case No. 23-10939-MLH<br>Chapter 11 |

## FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION

### INTRODUCTION

Continental American Corporation ("**CAC**" or "**Debtor**"), as debtor and debtor-in-possession in this Chapter 11 Case under sections 1107 and 1108 of the Bankruptcy Code, Case No. 23-10938 ("**Case**"), hereby proposes the following First Amended Chapter 11 plan of liquidation pursuant to section 1121 of the Bankruptcy Code. Pioneer National Latex, Inc. ("**PNL**" and together with CAC, "**Debtors**"), filed Case No. 23-10939 ("**PNL Case**" and collectively the "**Cases**"), which is being jointly administered with the Case. This Plan does not apply to PNL or the PNL Case because PNL has no assets. Creditors holding claims solely against PNL are not entitled to vote on this Plan. Reference is made to the Disclosure Statement for risk factors and a summary and analysis of the Plan and certain related matters. Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

This Plan constitutes a liquidating Chapter 11 plan for Debtor. The Plan provides for Debtor's remaining assets to be liquidated, the proceeds to be distributed to holders of Allowed Claims in accordance with the terms of the Plan and the priority of claims provisions of the Bankruptcy Code. Except as otherwise provided by order of the Bankruptcy Court, distributions will occur on the Effective Date or as soon thereafter as is practicable and at various intervals thereafter. Debtor will be dissolved as soon as practicable after the Effective Date.

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, Debtor expressly reserves the right to alter, amend, or modify the Plan, one or more times, before its substantial consummation, for the resolution of its outstanding claims and equity interests.

**All holders of Claims against, and Interests in Debtor are encouraged to read the Plan, the Disclosure Statement, and the related solicitation materials in their entirety before voting to accept or reject the Plan.**

# ARTICLE I
# DEFINITIONS

**1.1.** **Scope of Definitions.** As used in the Plan, the following terms shall have the respective meanings specified below. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine. For the avoidance of doubt, the terms Debtor, Case, Bankruptcy Case, Chapter 11 Case, and Estate shall not include the plural, and shall exclusively refer to CAC.

**1.2.** **"Acquired Assets"** shall mean the "Acquired Assets" as such term is defined in the Asset Purchase Agreement.

**1.3.** **"Administrative Claim"** shall mean a claim under section 503(b) of the Bankruptcy Code that is entitled to priority under section 507(a)(2) of the Bankruptcy Code, including any actual and necessary expenses of operating the business of Debtor or preserving the Estate incurred after the Petition Date, but not including Fee Claims.

**1.4.** **"Administrative and Other Fee Claim Bar Date"** shall have the meaning set forth in Article 2.4 of the Plan.

**1.5.** **"Administrative Claims Reserve"** shall have the meaning set forth in Article 7.3 of the Plan.

**1.6.** **"Allowed"** shall mean, with respect to any Claim, (a) any Claim, proof of which is Filed with the Bankruptcy Court on or before the Claims Bar Date, Rejection Claim Bar Date, or which has been or hereafter is listed in the Schedules by Debtor as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been Filed on or before the Claim Objection Deadline, or as to which any objection has been determined by Final Order of the Bankruptcy Court (allowing such Claim in whole or in part), or (b) any Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order or (iii) pursuant to the terms of the Plan, including, but not limited to, the settlement procedures set forth in Article 7.4 of the Plan. In accordance with section 502(d) of the Bankruptcy Code, a Claim held by any Person or Entity that is subject to an Avoidance Action shall not be an Allowed Claim until such time as the avoidable transfer is returned, a final determination is made by the Bankruptcy Court that no avoidable transfer exists, or an agreement or settlement with respect thereto is reached between the Liquidating Agent and such Person or Entity.

**1.7.** **"Asset Notice"** shall have the meaning set forth in Article 4.3 of the Plan.

**1.8.** **"Asset Purchase Agreement"** shall mean the "Final APA" as such term is defined in the Sale Order, which includes all schedules, exhibits, attachments thereto , and any and all documents executed in connection with the Final APA, including that document titled "First Addendum to Asset Purchase Agreement" dated April 26, 2024 and attached to the Report of Sale filed on July 10, 2024 [*Doc. #466*].

**1.9.** **"Avoidance Actions"** shall have the same meaning set forth in Paragraph 3 of the First Addendum to the Asset Purchase Agreement, including any and all claims and causes of action of Debtor as of the Effective Date, arising under or made applicable through the Bankruptcy Code, including, without limitation, sections 544 through 551 and 553 thereof, provided Avoidance Actions shall not include any Released Claims or proceeds thereof . Further providing that pursuant to Paragraph 5 of the First Addendum to the Asset Purchase Agreement, Buyers shall receive all of the net proceeds of all Avoidance Actions, up to a total amount of Five-Hundred Twenty-Five Thousand ($525,000.00) Dollars (the "Buyer Net Proceeds"), without setoff or reduction. Once Buyers shall have been irrevocably paid in full the Buyer Net Proceeds from the Avoidance Actions, then the two members of the Liquidating Committee appointed by Buyers shall resign and cease to be members, leaving only the Estate Representative. The net proceeds thereafter recovered from the Avoidance Actions shall be for the benefit of Debtor's Bankruptcy estate, with all proceeds to be distributed in accordance with applicable Bankruptcy Law, as may be subsequently determined by the Bankruptcy Court and/or a confirmed Chapter 11 Plan, except that no such proceeds of Avoidance Actions shall be paid to White Oak or the Buyers, other than the Buyer Net Proceeds.

**1.10.** **"Ballot"** shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Allowed Claims in Classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

**1.11.** **"Bankruptcy Case"** shall have the meaning set forth in the Introduction of the Plan for the term "Case".

**1.12.** **"Bankruptcy Code"** shall mean the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101 *et seq.*, as now in effect or hereafter amended.

**1.13.** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Kansas.

**1.14.** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, in accordance with the provisions of 28 U.S.C. § 2075, as now in effect or hereafter amended, and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

**1.15.** **"Bar Dates"** shall mean the Claims Bar Date and the Rejection Claim Bar Date.

**1.16.** **"Beneficiaries"** shall mean the "Beneficiaries" as such term is defined in the Liquidating Trust Agreement.

**1.17.** **"Business Day"** shall mean any day other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006.

**1.18.** **"Buyers"** shall mean Pioneer Blue Balloon, LLC and Pioneer Red Balloon, LLC or their successors and assigns.

**1.19.** **"Cash"** shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

**1.20.** "**Cash Collateral Order**" means that certain Final Order Authorizing Use of Cash Collateral and Payment of Adequate Protection entered by the Bankruptcy Court on October 30, 2023 at Docket # 132.

**1.21.** **"Chapter 11 Case"** shall mean the Bankruptcy Case.

**1.22.** **"Claim"** shall mean a claim against Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

**1.23.** **"Claims Bar Date"** shall mean (a) March 20, 2024, with respect to claims of governmental units, and (b) November 21, 2023, with respect to all other claims.

**1.24.** **"Claim Objection Deadline"** shall mean the date that is sixty (60) days after the date of service of the Asset Notice as to Secured Claims, and one hundred and twenty (120) days after the date of service of the Asset Notice as to General Unsecured Claims, as such deadlines may be extended from time to time in accordance with the Plan. Any objection may be joined with other claims as permitted by Bankruptcy Rule 3007.

**1.25.** **"Class"** shall mean a category of holders of Claims or Interests, which are substantially similar in nature to each other, as classified pursuant to Article III of the Plan.

**1.26.** **"Class 6 Reserve"** shall have the meaning set forth in Article 7.3 of the Plan.

**1.27.** **"Closing"** shall mean the "Closing" as such term is defined in the Asset Purchase Agreement or June 28, 2024.

**1.28.** **"Committee"** shall mean the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case in accordance with section 1102 of the Bankruptcy Code, as reconstituted from time to time and existing as of the Confirmation Date.

**1.29.** **"Confirmation"** shall mean the entry of the Confirmation Order.

**1.30.** **"Confirmation Date"** shall mean the date of entry of the Confirmation Order.

**1.31.** **"Confirmation Hearing"** shall mean the hearing to confirm the Plan.

**1.32.** **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**1.33.** **"Conveyance Documents"** shall mean all documents necessary to effect and evidence the transfer of assets from Debtor to the Liquidating Trust in accordance with and as set forth in Article VI of the Plan.

**1.34.** "**Creditor**" shall mean any Person or Entity having a Claim against any Debtor, including, without limitation, a Claim that arose on or before the Petition Date or a Claim against (or administrative expense of) any Debtor's Estate of any kind specified in sections 502(g), 502(h), 502(i), or 503 of the Bankruptcy Code.

**1.35.** "**Debtor**" and "**Debtors**" shall have the meanings set forth in the Introduction of the Plan. Any reference to Debtor in the Plan or Disclosure Statement shall be read to include Debtor both before and after the Confirmation Date and the Effective Date, as applicable.

**1.36.** "**Disclosure Statement**" shall mean the disclosure statement with respect to the Plan, as approved by the Bankruptcy Court as containing "adequate information" in accordance with section 1125 of the Bankruptcy Code, including all exhibits and annexes thereto and any amendments or modifications thereof.

**1.37.** "**Disputed Claim**" shall mean any Claim (i) as to which an objection has been interposed on or before the Claim Objection Deadline and that has not been Allowed, (ii) that has been listed in the Schedules as disputed, contingent or unliquidated, and which has not otherwise been Allowed, or (iii) which is the subject of an Avoidance Action as contemplated by section 502(d) of the Bankruptcy Code.

**1.38.** "DIP Credit Agreement" shall have the same meaning as in the Asset Purchase Agreement including the First Addendum to Asset Purchase Agreement dated April 26, 2024.

**1.39.** "DIP Order" shall have the same meaning as in the Asset Purchase Agreement including the First Addendum to Asset Purchase Agreement dated April 26, 2024.

**1.40.** "**Effective Date**" shall mean the date on which each of the conditions set forth in Article 8.2 of the Plan has been satisfied or waived.

**1.41.** "**Entity**" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.42.** "**Estate**" shall mean the estate created for Debtor in the Case pursuant to section 541 of the Bankruptcy Code.

**1.43.** "**Fee Claim**" means a claim under sections 328, 330(a), 503 or 1103 of the Bankruptcy Code for the compensation of a Professional for services rendered or expenses incurred in the Chapter 11 Case on or prior to the Effective Date (including expenses of the members of the Committee).

**1.44.** "**File,**" "**Filed**" or "**Filing**" shall mean file, filed or filing with the Bankruptcy Court in accordance with its procedures.

**1.45.** "**Final Order**" shall mean an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding or other review or rehearing has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review or rehearing has expired.

1.46. **"General Unsecured Claim"** shall mean any Claim against the Debtor, other than an Administrative Claim, Fee Claim, Priority Tax Claim, Other Priority Claim, or Secured Claim.

1.47. **"Impaired"** shall have the meaning set forth in section 1124 of the Bankruptcy Code.

1.48. **"Initial Distribution Date"** shall have the meaning set forth in Article 7.1 of the Plan.

1.49. **"Interest"** shall mean, with respect to the Debtor, any legal or equitable interest in the Debtor, including any ownership interest or right to acquire any ownership interest in the Debtor.

1.50. **"Liens"** shall mean valid, enforceable and perfected liens, mortgages, security interests, pledges, charges, encumbrances, or other legally cognizable security devices of any kind.

1.51. **"Liquidating Agent"** shall mean the "Liquidating Trustee" as such term is defined in the Liquidating Trust Agreement.

1.52. **"Liquidating Trust"** shall mean the grantor trust that is created pursuant to the Plan to be administered by the Liquidating Agent for the benefit of the Estate, as provided for in the Plan and the Liquidating Trust Agreement.

1.53. **"Liquidating Trust Agreement"** shall mean the trust agreement for the Liquidating Trust as described in Article 6.3 of the Plan, substantially in the form attached hereto as Exhibit A.

1.54. **"Other Fee Claim"** means a Fee Claim of a Professional for Debtor or the Committee that is not a Post-Closing Fee Claim.

1.55. **"Other Fee Claim Reserve"** shall have the meaning set forth in Article 7.3 of the Plan.

1.56. **"Other Priority Claim"** shall mean any Claim against the Debtor, other than a Fee Claim, Administrative Claim, or Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.57. **"Person"** shall mean a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company, business trust, unincorporated organization or association joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

1.58. **"Petition Date"** shall mean September 22, 2023, the date upon which Debtors Filed their chapter 11 petitions with the Bankruptcy Court.

1.59. **"Plan"** shall mean this First Amended Chapter 11 Plan of Liquidation, all exhibits hereto, and any amendments or modifications hereof.

**1.60.** **"Post-Closing Fee Claim"** means a Fee Claim of a Professional for Debtor or the Committee for the period of time from Closing to the Effective Date.

**1.61.** **"Post-Closing Fee Claim Bar Date"** shall have the meaning set forth in Article 2.3 of the Plan.

**1.62.** **"Post-Closing Fee Claim Reserve"** shall have the meaning set forth in Article 7.3 of the Plan.

**1.63.** **"Post-Effective Date Limited Notice List"** shall mean the notice list described and created pursuant to Article 10.17 of the Plan.

**1.64.** **"Post-Closing Fee Claim Reserve"** shall have the meaning set forth in Article 7.3 of the Plan.

**1.65.** **"Priority Claims Reserve"** shall have the meaning set forth in Article 7.3 of the Plan.

**1.66.** **"Priority Tax Claim"** shall mean any Claim for taxes against Debtor, including without limitation any interest and penalties due thereon, that is entitled to priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.67.** **"Professionals"** shall mean those Persons or Entities (i) employed pursuant to an order of the Bankruptcy Court in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.68.** **"Property"** means all property of Debtor's Estate, other than the Acquired Assets, of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by Debtor, or acquired by Debtor's Estate, including, but not limited to, all property contemplated by section 541 of the Bankruptcy Code, provided that Property shall not include any Released Claims or proceeds thereof.

**1.69.** **"Pro Rata"** means, as of any distribution date, a proportionate share, such that the ratio of the consideration distributed on account of an Allowed Claim or Interest in a Class to the amount of such Allowed Claim or Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Interests in such Class to the amount of all Allowed Claims or Interests in such Class.

**1.70.** **"Rejection Claim Bar Date"** shall mean (i) with respect to executory contracts and unexpired leases rejected as provided herein, the date that is thirty (30) days after the Confirmation Date, and (ii) with respect to all other executory contracts and unexpired leases, the date previously established as the deadline for filing proofs of Claim with respect to Claims arising from the rejection of such executory contract or unexpired lease.

**1.71.** **"Released Claims"** shall mean any claims released, waived, discharged or acquitted under or related to : (i) the Asset Purchase Agreement, including the First Addendum to

Asset Purchase Agreement dated April 26, 2024; (ii) the DIP Credit Agreement; (iii) the DIP Order; (iv) the Cash Collateral Order; or (v) by operation of law or other Final Order of the Bankruptcy Court.

1.72. **"Released Parties"** shall have the meaning set forth in Article 10.8 of the Plan.

1.73. **"Remaining Actions"** shall mean any and all Avoidance Actions of Debtor and the Estate as of the Effective Date, excluding only: (i) the Acquired Assets; and (ii) any Released Claims or proceeds thereof

1.74. **"Remaining Actions Proceeds Waterfall"** shall mean the order of distribution of the proceeds of the Remaining Actions, together with the proceeds from all other Trust Assets, net of the Trust Expenses, which proceeds shall be distributed under the Plan and Liquidating Trust Agreement as follows: *first*, to Allowed Post-Closing Fee Claims of Professionals for Debtor and the Committee; *second*, to the Allowed White Oak Claim, up to a maximum of $525,000, without setoff or reduction; and *third*, in accordance with the priorities set forth in the Bankruptcy Code as set forth in Article V herein.

1.75. **"Sale Order"** shall mean the *Order Authorizing Sale of Acquired Assets Free and Clear of Liens* signed May 15, 2024 at Docket # 398.

1.76. **"Schedules"** shall mean the Schedules of Assets and Liabilities of Debtor Filed pursuant to Bankruptcy Rule 1007, as they may be amended from time to time.

1.77. **"Secured Claim"** shall mean that portion of a Claim that is secured by a properly perfected Lien on Property.

1.78. **"Trust Assets"** shall mean all Property of Debtor transferred to the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement, which shall include the Remaining Actions and any other Property of the Debtor as of the Effective Date, but shall exclude; (i) all Acquired Assets; and (ii) all Released Claims or proceeds thereof.

1.79. **"Trust Expenses"** shall have the meaning set forth in the Liquidating Trust Agreement for "Trust Administrative Expenses."

1.80. **"Trust Expense Reserve"** shall have the meaning set forth in Article 7.3 of the Plan.

1.81. **"Unimpaired"** shall mean any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

1.82. **"Voting Deadline"** shall mean the deadline established by order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

1.83. **"White Oak"** shall mean White Oak Commercial Finance, LLC, a Delaware limited liability company, and/or its assignees, nominees or designees.

**1.84. "White Oak Claim"** shall mean the claim of Buyers to the proceeds of the Avoidance Action pursuant to the Remaining Actions Proceeds Waterfall, as detailed in the First Addendum to Asset Purchase Agreement dated April 26, 2024.

**1.85.** "**White Oak Super-Priority Claim**" shall mean the remaining super-priority claim of White Oak under the DIP Order.

All terms not expressly defined herein shall have the respective meanings given to such terms in section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code or in the Sale Order. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply. Further, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Unless otherwise specified herein, any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors, assigns and affiliates.

## ARTICLE II
## METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS
## AND GENERAL PROVISIONS

**2.1. General Rules of Classification.** Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim qualifies within the description of that Class, and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally defined Class, it shall be included in the more specifically defined Class.

**2.2. Post-Closing Fee Claims and White Oak Claim.** Post-Closing Fee Claims and the White Oak are not classified in the Plan. The treatment of Post-Closing Fee Claims and the White Oak Fee Claim and consideration to be received by each holder of Post-Closing Fee Claims and White Oak is set forth in Article IV of the Plan.

**2.3. Bar Date for Post-Closing Fee Claims.** Unless otherwise ordered by the Bankruptcy Court, requests for payment of Fee Claims must be Filed and served on the Liquidating Agent, counsel to the Liquidating Agent and the United States Trustee, no later than the date that is forty-five (45) days after the Effective Date (the "Post-Closing Fee Claim Bar Date"). Any Person that is required to File and serve a request for payment of a Post-Closing Fee Claim and fails to timely File and serve such request, shall be forever barred, estopped and enjoined from asserting such Post-Closing Fee Claim or participating in distributions under the Plan on account thereof. Any objections to Post-Closing Fee Claims must be Filed and served on the requesting party, the Liquidating Agent, counsel to the Liquidating Agent, and the United States Trustee no later than the date that is sixty (60) days after the Effective Date, unless extended by the Bankruptcy Court. If any carve-out for professional fees is paid to a professional, and to the extent there is no existing order to pay fees and/or expenses of such professionals, such carve-out shall be held in a firm trust account pending any such further order of the Court.

**2.4. Bar Date for Administrative and Other Fee Claims.** Any Administrative Claim or Other Fee Claim incurred through and including the Effective Date, must be Filed and served

on the Liquidating Agent and counsel to the Liquidating Agent no later than the date that is thirty (30) days after the Asset Notice is served by the Liquidating Agent (the "<u>Administrative and Other Fee Claim Bar Date</u>"). Any Person that must File and serve a request for payment of an Administrative Claim or Other Fee Claim and fails to timely File and serve such request, shall be forever barred, estopped and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. Any objections to requests for payment of Administrative Claims or Other Fee Claims must be Filed and served on the requesting party, the Liquidating Agent, and counsel to the Liquidating Agent no later than the date that is sixty (60) days after the Asset Notice is served by the Liquidating Agent, unless extended by the Bankruptcy Court.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

**3.1.    Classes of Claims and Interests.** The following is the designation of the Classes of Claims and Interests under the Plan:

(a)    Class 1 Claims shall consist of all Other Fee Claims.

(b)    Class 2 Claims shall consist of all Administrative Claims.

(c)    Class 3 Claims shall consist of all Priority Tax Claims.

(d)    Class 4 Claims shall consist of all Other Priority Claims.

(e)    Class 5 Claims shall consist of all Secured Claims.

(f)    Class 6 Claims shall consist of all General Unsecured Claims.

(g)    Class 7 Interests shall consist of all Interests in Debtor.

## ARTICLE IV
## TREATMENT OF UNIMPAIRED CLAIMS

**4.1.    Post-Closing Fee Claims.**  Post-Closing Fee Claims are not classified under the Plan. Each holder of a Post-Closing Fee Claim agrees to receive payment of its Allowed Post-Closing Fee Claim when funds are available as determined by the Liquidating Agent in accordance with the Remaining Actions Proceeds Waterfall.

**4.2.    White Oak Claim and the White Oak Super-Priority Claim.** The White Oak Claim is not classified under the Plan. The White Oak Claim shall be deemed an Allowed Claim hereunder. Buyers agree to receive payment of the Allowed White Oak Claim when funds are available as determined by the Liquidating Agent in accordance with the Remaining Actions Proceeds Waterfall.  White Oak is the holder of the separate White Oak Super-Priority Claim which shall be an Allowed Claim under the Plan.  If there is Property of the Debtor, that is not proceeds of a Remaining Action, the proceeds of such Property all be paid first in satisfaction White Oak Super-Priority Claim Priority Claim, after satisfaction of such claim, the remaining proceeds of any non-Remaining Action, Debtor Property proceeds shall be paid to in the priority determined under the Plan.

**4.3.    Notice of Assets.** Not later than sixty (60) day following the payment of the Post-Closing Fee Claims and the White Oak Claim, in accordance with the Remaining Actions Proceeds Waterfall, if there remains Trust Property in the Trust thereafter, the Liquidating Agent shall File and serve upon the holders of Class 1 or Class 2 Claims, an Asset Notice ("**Asset Notice**"). The Asset Notice shall state that funds may be available for payment to Article V Claims and shall specify the date of the Administrative Claim Bar Date and the Other Fee Claim Bar Date.

## ARTICLE V
## TREATMENT OF IMPAIRED CLAIMS AND INTERESTS

**5.1.    Class 1 Other Fee Claims.** Class 1 Other Fee Claims are Impaired. Except to the extent that the holder of an Allowed Class 1 Other Fee Claim agrees otherwise, each holder of an Allowed Class 1 Other Fee Claim shall receive in respect of its Allowed Class 1 Other Fee Claim its Pro Rata share of the Trust Assets after payment of the Allowed White Oak Claim in accordance with the Remaining Actions Proceeds Waterfall. Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holders of Other Fee Claims. The holders of Claims in this Class are entitled to vote.

**5.2.    Class 2 Administrative Claims.** Class 2 Administrative Claims are Impaired. Except to the extent that the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall receive in respect of its Allowed Administrative Claim its Pro Rata share of the Trust Assets after payment of Allowed Class 1 Other Fee Claims. Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holders of Administrative Claims. The holders of Claims in this Class are entitled to vote.

**5.3.    Class 3 Priority Tax Claims.** Class 3 Priority Tax Claims are Impaired. Except to the extent that the holder of an Allowed Priority Tax Claim agrees otherwise, each holder of an Allowed Priority Tax Claim shall receive in respect of its Allowed Priority Tax Claim its Pro Rata share of the Trust Assets after payment of the Allowed Class 2 Administrative Claims. Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holders of Priority Tax Claims. The holders of Claims in this Class are entitled to vote.

**5.4.    Class 4 Other Priority Claims.** Class 4 Other Priority Claims are Impaired. Except to the extent that the holder of an Allowed Other Priority Claim agrees otherwise, each holder of an Allowed Other Priority Claim shall receive in respect of its Allowed Other Priority Claim its Pro Rata share of the Trust Assets after payment of Allowed Class 3 Priority Tax Claims and in the order specified in section 507 of the Bankruptcy Code. Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holders of Other Priority Claims. The holders of Claims in this Class are entitled to vote.

**5.5.    Class 5 Secured Claims.** Class 5 Secured Claims are Impaired. Debtor's Property will be liquidated and distributed as set forth herein. Any unpaid Secured Claims remaining after payment of Class 4 Other Priority Claims will be treated as Class 6 General Unsecured Claims and paid accordingly. The holders of Claims in this Class are entitled to vote.

**5.6.** **Class 6 General Unsecured Claims.** Class 6 General Unsecured Claims are Impaired. Except to the extent that the holder of an Allowed Other Priority Claim agrees otherwise, each holder of an Allowed General Unsecured Claim shall receive in respect of its Allowed General Unsecured Claim its Pro Rata share of the Trust Assets after payment of the Allowed Class 4 Other Priority Claims. Unless otherwise provided by an order of the Bankruptcy Court, no fees or penalties of any kind shall be paid to the holders of General Unsecured Claims. The holders of Claims in this Class are entitled to vote.

**5.7.** **Class 7 Interests.** Class 7 Interests are Impaired. The holders of Class 7 Interests shall receive no distribution. On the Effective Date, all Interests shall be deemed canceled, null and void and of no force and effect. Accordingly, the holders of Class 7 Interests are deemed to reject the Plan and are not entitled to vote.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF THE PLAN

**6.1.** **Corporate Action and Execution of Documents.** On the Effective Date and automatically and without further action, (i) each existing member of the board of directors, board of managers, or equivalent governing body of Debtor and all officers of Debtor, with the exception of Daniel A. Flynn, shall be deemed to have resigned, and (ii) Daniel A. Flynn shall be deemed, as applicable, the sole officer, director, manager, member, and/or shareholder of Debtor. The Plan shall be administered by the Liquidating Agent and all actions taken hereunder shall be taken in the name of the Liquidating Trust.  To the extent necessary, Debtor shall cooperate with the Liquidating Agent concerning actions that may only be taken in the name of the Debtor and which are necessary for the Liquidating Agent in executing the Liquidating Trust. Debtor shall deliver to the Liquidating Agent all documents including, without limitation, the Conveyance Documents, and perform all actions reasonably contemplated with respect to implementation of the Plan. Daniel A. Flynn shall continue to be the authorized representative to execute on behalf of each Debtor, in a representative capacity and not individually, any documents or instruments to be executed by such Debtor after the Effective Date in order to consummate the Plan.

**6.2.** **Execution of the Liquidating Trust Agreement.** The Liquidating Trust Agreement shall be executed by all necessary parties thereto on or before the Effective Date. On the Effective Date, the Liquidating Trust shall be established and become effective without further order of the Bankruptcy Court.

**6.3.** **The Liquidating Trust.** The Liquidating Trust established pursuant to the Liquidating Trust Agreement is established for the purpose of satisfying Allowed Claims by making distributions from the Trust Assets, through liquidation or distribution in kind as specified herein, net of all Trust Expenses, to the holders of Allowed Claims in accordance with the terms of the Plan. The Liquidating Trust shall have no objective of continuing or engaging in any trade or business, and shall not conduct business activities, except to the extent reasonably necessary to, and consistent with, the aforementioned purpose of the Liquidating Trust including any costs of administration

It is intended that the Liquidating Trust be classified for federal income tax purposes as a "liquidating trust" within the meaning of section 301.7701-4(d) of the Treasury Regulations. All

parties shall treat the transfers in trust as if all the transferred assets, including all the Trust Assets, had been first transferred to the Beneficiaries and then transferred by the Beneficiaries to the Liquidating Trust. The Beneficiaries shall be treated for all purposes of the Internal Revenue Code as the grantors of the Liquidating Trust and the owners of the Liquidating Trust. All income of the Liquidating Trust shall be taxed directly to its Beneficiaries (except to the extent the IRS is a Beneficiary).

All parties, including the Liquidating Agent and the Beneficiaries, shall value the Property transferred to the Liquidating Trust consistently for all federal income tax purposes. The Beneficiaries (except to the extent the IRS is a Beneficiary) shall be responsible for payment of any taxes due with respect to the operations of the Liquidating Trust.

The Liquidating Trust shall terminate as provided in the Liquidating Trust Agreement. During its existence, the Liquidating Trust shall not retain Cash in excess of a reasonable amount necessary to meet Claims and contingent liabilities (including Disputed Claims) or to maintain the value of the Trust Assets and reserves during liquidation.

The Liquidating Trust shall distribute at least annually to the Beneficiaries, unless the Liquidating Agent determines that it is not cost effective to do so, all its net income and all the net proceeds from any liquidation of Trust Assets, less such net income or net proceeds reasonably necessary to maintain the value of the Trust Assets or to meet Claims or contingent liabilities (including Disputed Claims) or reserves. The Liquidating Agent shall use its continuing good faith efforts to dispose of the Trust Assets, make timely distributions, and shall not unduly prolong the duration of the Liquidating Trust.

The Liquidating Agent shall make timely filings of annual federal income tax returns reflecting all items of income, gain or loss, deductions or credits of the Liquidating Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a). Consistent with its status as a grantor trust, the Liquidating Trust shall not be, and the Beneficiaries shall be, responsible for the payment of their allocable portion of any federal income tax liability related to the operation of the Liquidating Trust.

**6.4.    Transfer of Trust Assets to the Liquidating Trust.** On or before the Effective Date, Debtor shall convey and transfer all of the Trust Assets to the Liquidating Agent on behalf of the Liquidating Trust. Debtor shall convey and transfer to the Liquidating Agent, on behalf of the Liquidating Trust, for the benefit of the Beneficiaries as detailed in the Liquidating Trust Agreement, the Trust Assets, free and clear of all Claims and Liens except as set forth herein. The Liquidating Trust shall receive the Trust Assets and the proceeds thereof. No later than the Effective Date, pending the receipt of any necessary approvals and consents, the Conveyance Documents shall be fully executed and delivered to the Liquidating Trust. Pending delivery of the Conveyance Documents to the Liquidating Trust and subject to any necessary regulatory approvals and/or servicing consents, the Liquidating Agent, in its sole discretion, may take actions as are necessary to protect the Liquidating Trust's interests pursuant to the terms of the Liquidating Trust Agreement, provided nothing in the Plan or Liquidating Trust: (i) transfers Acquired Assets or Released Claims to the Liquidating Trust, (ii) releases any lien or claim of White Oak or Buyers in the Acquired Assets; or (iii) waives or releases any super-priority claim related to the DIP Order

remaining owed to White Oak or its successors or assigns, excluding the Avoidance Actions as previously agreed to in the First Addendum to Asset Purchase Agreement dated April 26, 2024

Except as provided herein, no asset of the Estate shall be deemed abandoned, and no cause of action shall be deemed released or compromised by or as a result of this Plan, its confirmation, or its treatment of any Claim or Creditor. Further, no defense, setoff, counterclaim or right of recoupment of Debtor, the Estate or the Liquidating Agent shall be deemed waived or compromised.

**6.5.     Rights, Powers and Duties of the Liquidating Agent.** Except as may be provided elsewhere in the Plan, the Liquidating Agent shall have the authority and be empowered to take all steps necessary to carry out its responsibilities under the Plan, including, but not limited to, investigating and prosecuting any Remaining Actions and making distributions with respect to the Trust Assets, through liquidation or distribution of such assets in kind as described herein. The Liquidating Agent shall have standing to pursue any Remaining Actions, and may assert any defense that may otherwise be asserted by a "trustee" under the Bankruptcy Code.

In exercising its rights and powers and carrying out its duties under the Plan and the Liquidating Trust Agreement, the Liquidating Agent shall have the authority to retain such professionals (including, without limitation, disbursing and transfer agents, legal counsel and/or other agents or advisors) on the Liquidating Agent's own behalf and on behalf of the Liquidating Trust, as the Liquidating Agent deems appropriate, and to compensate such professionals from the Trust Assets on customary terms reasonably acceptable to the Liquidating Agent, without any requirement of approval by the Bankruptcy Court, subject to the terms of the Liquidating Trust Agreement. Professionals so retained are not required to be "disinterested persons" (as such term is defined in the Bankruptcy Code) and may include, without limitation, any counsel or financial advisor to Debtor, the Committee or White Oak.

Except as expressly set forth herein, the Liquidating Agent shall have discretion to pursue or not to pursue any and all claims, rights, causes of action or defenses with regard to the Remaining Actions, as it determines are in the best interests of the Beneficiaries and consistent with the purposes of the Liquidating Trust. In all circumstances and in furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Agent shall act in the best interests of all Beneficiaries.

**6.6.     Dissolution of Debtor.** From and after the Effective Date, Debtor shall be deemed dissolved. Debtor or the Liquidating Agent, as the case may be, shall prepare all final tax returns and the Confirmation Order shall provide for the dissolution.   Daniel A. Flynn shall be the authorized signatory to execute the final tax returns and any other documents necessary to accomplish such dissolution.

**6.7.     Designation of Liquidating Agent and Terms of Compensation.** Upon the Effective Date, the Liquidating Agent shall be appointed. The Liquidating Agent shall serve until it resigns or is replaced in accordance with the Liquidating Trust Agreement. As consideration for the Liquidating Agent's services, the Liquidating Agent shall receive the compensation set forth in the Liquidating Trust Agreement.

**6.8.    The Liquidating Trust's Authority to Prosecute Remaining Actions.** Upon creation, the Liquidating Trust will be vested with all right, title, and interest in any Remaining Actions, and any proceeds from such Remaining Actions, whether from insurance or from any other source. Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Liquidating Agent shall have full and exclusive authority, without need for any Bankruptcy Court approval, but subject to the terms of the Liquidating Trust Agreement, to prosecute the Remaining Actions. The Liquidating Agent may commence or continue, in any appropriate court or tribunal, any suit or other proceeding for the enforcement of such causes of action, and, if deemed appropriate by the Liquidating Agent, to compromise, settle or abandon such litigation.

The failure of Debtor to specifically list any Remaining Action, right of action, suit or proceeding in its Schedules, the Disclosure Statement, or in the Plan does not, and will not be deemed to, constitute a waiver or release by Debtor of such Remaining Action and the Liquidating Agent will retain the right to pursue the same in its discretion, and, therefore, no preclusion doctrine, such as issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise) or laches will apply thereto upon or after Confirmation or consummation of the Plan. Further, recovery of any proceeds of any such Remaining Action will be deemed "for the benefit of the estate" as contemplated by section 550 of the Bankruptcy Code.

Provided nothing in the Plan or Liquidating Trust shall authorize the Liquidating Trust, Liquidating Trustee or any of the successors and assigns to prosecute any Released Claims or to bring any claim, demand or any Cause of Action against White Oak.

**6.9.    Investments.** Subject to the terms and conditions of the Liquidating Trust Agreement, all Cash held by the Liquidating Agent in any accounts or otherwise shall be invested in accordance with section 345 of the Bankruptcy Code, or as otherwise permitted by a Final Order of the Bankruptcy Court.

**6.10.   Resignation, Death or Removal.** The Liquidating Agent may resign, be removed, or be replaced only in accordance with the terms and conditions set forth in the Liquidating Trust Agreement, except as otherwise provided by an order of the Bankruptcy Court.

**6.11.   Winding Up Affairs.** Following the Confirmation Date, Debtor shall not engage in any business activities or take any actions, except those necessary to effectuate the Plan and wind up the affairs of Debtor. On and after the Effective Date, upon the request of the Liquidating Agent the Debtor shall take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by this Plan, the Liquidating Trust Agreement or the Confirmation Order.

**6.12.   Release of Liens.** Except as otherwise provided herein or in any contract, instrument or other agreement or document created in connection herewith, on the Effective Date, all mortgages, deeds of trust, Liens or other security interests against the Property shall be released, and all the right, title and interest of any holder of such mortgages, deeds of trust, Liens or other security interests shall revert to the Liquidating Agent on behalf of the Liquidating Trust.

# ARTICLE VII
## DISTRIBUTIONS UNDER THE PLAN

**7.1.    Distributions for Claims Allowed as of the Effective Date.** Except as otherwise provided herein or as ordered by the Bankruptcy Court, and subject to the terms of the Liquidating Trust Agreement, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable (the "Initial Distribution Date"). Any distribution to be made on the Effective Date pursuant to the Plan shall be deemed as having been made on the Effective Date if such distribution is made on the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next preceding Business Day.

**7.2.    Subsequent Distributions.** Any and all distributions made after the Initial Distribution Date shall be made, subject to the reservation of adequate funds contemplated by Article 7.3 of the Plan, in no event more than one year after the immediately preceding distribution date.

**7.3.    Reserve Accounts.**

(a)    <u>Reserve for Post-Closing Fee Claims</u>. On or as soon as practicable after the Effective Date, and subject to paragraph 4.1, the Liquidating Agent shall establish and maintain a reserve for Post-Closing Fee Claims (the "Post-Closing Fee Claims Reserve"). If, when, and to the extent any such Post-Closing Fee Claim becomes an Allowed Post-Closing Fee Claim, Cash held in reserve therefor shall be distributed by the Liquidating Agent to the holder of the Post-Closing Fee Claim in a manner consistent with distributions to similarly situated Post-Closing Fee Claims. The balance of the Post-Closing Fee Claims Reserve, if any, remaining after all Post-Closing Fee Claims have been resolved and paid, shall be distributed to other holders of Allowed Claims pursuant to the terms of the Plan and Liquidating Trust Agreement.

(b)    <u>Reserve for Other Fee Claims</u>. On or as soon as practicable after the Effective Date, and subject to paragraph 5.1, the Liquidating Agent shall establish and maintain a reserve for Other Fee Claims (the "Other Fee Claims Reserve"). If, when, and to the extent any such Other Fee Claim becomes an Allowed Other Fee Claim, Cash held in reserve therefor shall be distributed by the Liquidating Agent to the holder of the Other Fee Claim in a manner consistent with distributions to similarly situated Other Fee Claims. The balance of the Other Fee Claims Reserve, if any, remaining after all Other Fee Claims have been resolved and paid, shall be distributed to other holders of Allowed Claims pursuant to the terms of the Plan and Liquidating Trust Agreement.

(c)    <u>Reserve for Administrative Claims</u>. On or as soon as practicable after the Effective Date, and subject to paragraph 5.2, the Liquidating Agent shall establish and maintain a reserve for Administrative Claims (the "Administrative Claims Reserve"). If, when, and to the extent any such Administrative Claim becomes an Allowed Administrative Claim, Cash held in reserve therefor shall be distributed by the Liquidating Agent to the holder of the Administrative Claim in a manner consistent with distributions

to similarly situated Administrative Claims. The balance of the Administrative Claims Reserve, if any, remaining after all Administrative Claims have been resolved and paid, shall be distributed to other holders of Allowed Claims pursuant to the terms of the Plan and Liquidating Trust Agreement.

(d)     Reserves for Disputed Priority Tax and Other Priority Claims. Prior to any distributions to the holders of Allowed Class 4 Priority Tax or Class 5 Other Priority Claims, the Liquidating Agent shall establish and maintain reserves for all Disputed Priority Claims (the "Priority Claims Reserve"). With respect to such Disputed Priority Claims, if, when, and to the extent any such Disputed Priority Claim becomes an Allowed Priority Claim, the relevant portion of the Cash held in reserve therefor shall be distributed by the Liquidating Agent to the Creditor in a manner consistent with distributions to similarly situated Allowed Priority Claims. The balance of the Priority Claims Reserve, if any, remaining after all Disputed Priority Claims have been resolved shall be distributed to other holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement..

(e)     Reserves for Disputed Class 6 General Unsecured Claims. Prior to any distributions to the holders of Allowed Class 6 General Unsecured Claims, the Liquidating Agent shall establish and maintain reserves for all Disputed Class 6 General Unsecured Claims (the "Class 6 Reserve"). With respect to such Disputed Class 6 General Unsecured Claims, if, when, and to the extent any such Disputed Class 6 General Unsecured Claim becomes an Allowed Class 6 General Unsecured Claim, the relevant portion of the Cash held in reserve therefor shall be distributed by the Liquidating Agent to the Creditor in a manner consistent with distributions to similarly situated Allowed Class 6 General Unsecured Claims. The balance of the Class 6 Reserve, if any, remaining after all Disputed Class 6 General Unsecured Claims have been resolved shall be distributed to other holders of Allowed Claims pursuant to the terms of the Plan and the Liquidating Trust Agreement.

(f)     Reserve for Trust Expenses. On the Effective Date or as soon as practicable after the Effective Date, the Liquidating Agent shall establish and maintain a reserve to be used to pay Trust Expenses (the "Trust Expense Reserve"). Upon the closing of the Chapter 11 Case, the Liquidating Agent shall distribute any balance remaining in the Trust Expense Reserve to the holders of Allowed Claims in accordance with the Plan and the Liquidating Trust Agreement.

(g)     For the avoidance of doubt, White Oak and Buyers shall not be liable, obligated or responsible for funding any reserves of the Liquidating Trust or for any fees, costs or expenses of the Liquidating Trustee, the Liquidating Trust, the Advisory Trust Board or any of their professionals, agents or any other person or entity hired by any of them.

**7.4.     Settlement of Disputed Claims and Remaining Actions.** Objections to Claims may be litigated to judgment or withdrawn, and may be settled with the approval of the Bankruptcy Court, except to the extent that such approval is not necessary as provided in this section. After the Effective Date, and subject to the terms of the Plan, the Liquidating Agent may settle any Disputed Claim, Remaining Action, or any other matter, where the asserted amount of the Disputed Claim, Remaining Action, or other matter is $100,000 or less, without providing any notice to any

Creditor or other party-in-interest or obtaining an order from the Bankruptcy Court. All proposed settlements of Disputed Claims, Remaining Actions, or other matters where the asserted amount of the Disputed Claim, Remaining Action, or other matters exceeds $100,000 shall be subject to the approval of the Bankruptcy Court in accordance with the following procedure: (1) the Liquidating Agent shall give notice of the proposed settlement to the Post- Effective Date Limited Notice List; (2) the parties receiving notice shall have ten (10) days in which to File objections to the proposed settlement; (3) if no objections are timely Filed, the Liquidating Agent may consummate such settlement without further order of the Bankruptcy Court or may, at the Liquidating Agent's election, request entry of an order approving the proposed settlement by Filing such proposed order under certificate of counsel with no further notice to any party; and (4) if objections are timely Filed, the Liquidating Agent shall notice the proposed settlement for hearing upon at least five (5) Business Days' notice.

      **7.5.**     **Unclaimed Property.** If any interim distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property, along with any subsequent distribution to be made in accordance with the Plan, shall be forfeited by such holder whereupon all right, title and interest in and to the unclaimed property shall be held in reserve by the Liquidating Agent to be distributed to other holders of Allowed Claims in accordance with the terms of the Plan, the Liquidating Trust Agreement, and this paragraph. Distributions unclaimed for a period of ninety (90) days after they have been delivered (or attempted to have been delivered) in accordance with the Plan to the holders entitled thereto that: (i) are intended to be final distributions; and (ii) do not exceed $10,000 in the aggregate, shall, as soon thereafter as practicable, be donated to an organization designated by the Liquidating Agent and officially recognized by the Internal Revenue Service as a charitable organization, a contribution which would be deductible for federal income tax purposes, in the name of the unsecured Creditors of Debtor; provided, however, that if the giving over of such unclaimed property under this section would result in a donation greater than $10,000 but less than $100,000 in the aggregate, the Liquidating Agent must obtain leave of the Bankruptcy Court to make such donation; and provided further than if the giving over of such unclaimed property would result in a donation exceeding $100,000 in the aggregate, then such unclaimed property shall not be eligible for donation under this section, and the unclaimed property shall be held in reserve by the Liquidating Agent to be distributed to other holders of Allowed Class 6 General Unsecured Claims in accordance with the Plan.

      **7.6.**     **Withholding from Distributions.** Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder. All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes. The Liquidating Agent may withhold from amounts distributable to any Person or Entity any and all amounts, determined in the Liquidating Agent's reasonable, sole discretion, to be required by any law, regulation, rule, ruling, directive, or other governmental requirement.

      **7.7.**     **Fractional Cents.** Any other provision of the Plan to the contrary notwithstanding, no payment of fractions of cents will be made. Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

**7.8.    Payments of Less than Twenty-Five Dollars.** If, in the aggregate, Cash payments otherwise provided for by the Plan with respect to an Allowed Claim would be less than twenty-five ($25.00) dollars, notwithstanding any contrary provision of the Plan, the Liquidating Agent shall not be required to make such payment and such funds shall be held in reserve by the Liquidating Agent to be distributed to the holders of other Allowed Claims in accordance with the Plan and the Liquidating Trust Agreement.

**7.9.    Setoffs.** Except as otherwise provided for herein, the Liquidating Agent may, but shall not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that Debtor or the Estate may have against the Creditor, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by Debtor or the Estate of any claim they may have against the Creditor.

**ARTICLE VIII**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND EFFECTIVENESS OF THE PLAN**

**8.1.    Conditions Precedent to Confirmation of the Plan.** Confirmation shall not occur unless and until each of the following conditions has been satisfied or waived:

> (a)    The Bankruptcy Court shall have entered the Confirmation Order.

**8.2.    Conditions Precedent to Effectiveness of the Plan.** The Plan shall not become effective unless and until each of the following conditions has been satisfied or waived:

> (a)    The parties to the Liquidating Trust Agreement shall have executed the same;

> (b)    The Bankruptcy Court shall have entered the Confirmation Order; and

> (c)    The Confirmation Order shall have become a Final Order.

**8.3.    Waiver of Conditions.** Debtor may at any time, without notice or authorization of the Bankruptcy Court, waive the condition set forth in Article 8.2(c). The failure of Debtor to satisfy or waive such condition may be asserted by Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied or waived (including any action or inaction by Debtor). Debtor reserves the right to assert that any appeal from the Confirmation Order is moot after "substantial consummation" of the Plan, as that term is defined in section 1101(2) of the Bankruptcy Code.

**8.4.    Effect of Failure of Condition.** In the event that the condition specified in Article 8.2(c) of the Plan has not occurred or been waived on or before sixty (60) days after the Confirmation Date, the Confirmation Order may be vacated upon order of the Bankruptcy Court after motion made by Debtor or the Committee, or any party-in-interest and an opportunity for parties-in-interest to be heard.

19

**ARTICLE IX**
**RETENTION OF JURISDICTION AND EXECUTORY CONTRACTS**

**9.1.    Retention of Jurisdiction by the Bankruptcy Court.** Following the Confirmation Date and until such time as all payments and distributions required to be made, and all other obligations required to be performed, under the Plan have been made and performed by the Liquidating Agent and a final decree has been entered closing the Chapter 11 Case, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)    Claims. To determine the allowance, classification, or priority of Claims against Debtor upon objection by the Liquidating Agent or any other party-in-interest;

(b)    Injunction, etc. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Case on or before the Effective Date with respect to any Entity;

(c)    Professional Fees. To determine any and all applications for allowance of compensation and expense reimbursement of Professionals for periods before the Effective Date, as provided for in the Plan;

(d)    Dispute Resolution. To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan, Liquidating Trust Agreement and/or Confirmation Order and the making of distributions hereunder and thereunder, including, without limitation, any dispute concerning payment of Trust Expenses;

(e)    Executory Contracts and Unexpired Leases. To determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases, and any other issues with respect to the assumption or rejection of such contracts and leases;

(f)    Actions. To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in the Chapter 11 Case by or on behalf of Debtor or the Liquidating Agent, including, but not limited to, the Remaining Actions;

(g)    General Matters. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code or as may be requested by the Liquidating Agent;

(h)     Plan Modification. To modify the Plan, under section 1127 of the Bankruptcy Code, to remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(i)     Aid Consummation. To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person or Entity, to the full extent authorized by the Bankruptcy Code;

(j)     Protect Property. To protect the Property from adverse Claims or interference inconsistent with the Plan, including to hear actions to quiet or otherwise clear title to such Property based upon the terms and provisions of the Plan;

(k)     Abandonment of Property. To hear and determine matters pertaining to abandonment of Property;

(l)     Implementation of Confirmation Order. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(m)     Orders. Resolve any cases, controversies, suits, or disputes that may arise in connection with the interpretation or enforcement of any orders entered by the Bankruptcy Court during the Chapter 11 Case;

(n)     Trust Assets. To determine any issues or disputes relating to the Trust Assets; and

(o)     Final Decree. To enter a final decree closing the Chapter 11 Case.

**9.2.     Executory Contracts and Unexpired Leases.** All claims arising from the rejection of any executory contract or unexpired lease shall be subject to the applicable Rejection Claim Bar Date. All executory contracts or unexpired leases of Debtor that were not previously rejected shall be rejected effective as of the Confirmation Date.

# ARTICLE X
## MISCELLANEOUS PROVISIONS

**10.1.     Pre-Confirmation Modification.** On notice to and opportunity to be heard by the United States Trustee, the Plan may be altered, amended or modified by Debtor before the Effective Date as provided in section 1127 of the Bankruptcy Code.

**10.2.     Post-Confirmation Immaterial Modification.** After the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect, cure any omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such other matters as may be

necessary to carry out the purposes and effects of the Plan; provided, however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

**10.3.    Withdrawal or Revocation of the Plan.** Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If Debtor revokes or withdraws the Plan, then the Plan shall be deemed null and void.

**10.4.    Payment of Statutory Fees.** All fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date (if due) or by the Liquidating Agent when otherwise due out of the Trust Expense Reserve.

**10.5.    Role of the Committee.** Upon the Effective Date, the Committee shall be dissolved for all purposes.

**10.6.    Successors and Assigns.** The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of the heirs, executors, administrators, successors and/or assigns of such Persons or Entities.

**10.7.    Injunction. Except as otherwise provided in the Plan or an order of the Bankruptcy Court, on and after the Confirmation Date, all Persons and Entities who have held, hold or may hold Liens against, Claims against, or Interests in Debtor are, with respect to any such Liens, Claims or Interests, permanently enjoined, from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting Debtor, the Liquidating Trust, or the Liquidating Agent, or any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Entities; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against Debtor, the Liquidating Trust, or the Liquidating Agent, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Entities; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against Debtor, the Liquidating Trust, or the Liquidating Agent, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Entities; (d) asserting any right of setoff or subrogation of any kind, directly or indirectly, against any obligation due Debtor, the Liquidating Trust, or the Liquidating Agent, or any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing Entities; and (e) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan, provided that nothing herein enjoins Buyers from enforcing any rights under the Asset Purchase Agreement.**

**10.8.    Exculpation. Except as otherwise provided by the Plan or the Confirmation Order, on the Effective Date, Debtor, the Committee, the members of the Committee in their representative capacities, and/or any of such parties' respective current or former members,**

officers, directors, employees, advisors, attorneys, business consultants, representatives, financial advisors, investment bankers, fund managers or agents and any of such parties' successors and assigns (collectively, the "<u>Released Parties</u>") shall be deemed released by each of them against the other, and by all holders of Claims or Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission occurring during the Chapter 11 Case, including, without limiting the generality of the foregoing, all sales of Property, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which constitute willful misconduct, gross negligence, breach of fiduciary duty, or intentional fraud, and all such Persons, in all respects, shall be entitled to reasonably rely on the advice of counsel with respect to their duties and responsibilities in connection with Debtor's Chapter 11 Case and under the Plan. For the avoidance of doubt, nothing contained in the Plan or Liquidating Trust Agreement shall be deemed a release or waiver of any Claims or Remaining Actions Debtor or the Estate may hold against Debtor's members, directors, officers, employees, insiders, or affiliates, provided nothing exculpates any claims or rights of Buyers to enforce the Asset Purchase Agreement, including but not limited to any representations and warranties made therein.

**10.9.  Satisfaction of Claims.** The treatment of and consideration to be received by holders of Allowed Claims pursuant to this Plan shall be in full satisfaction, settlement and release of such holders' respective Allowed Claims against Debtor.

**10.10.  No Liability for Solicitation or Participation.** Pursuant to section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of this Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan.

**10.11.  Term of Injunctions and Stays.** Unless otherwise provided herein or in another order of the Bankruptcy Court, all injunctions or stays provided for in the Chapter 11 Case pursuant to sections 105, 362 and 524 of the Bankruptcy Code, or otherwise, and in effect on the Confirmation Date shall remain in full force and effect until the Effective Date.

**10.12.  Cancellation of Instruments.** Unless otherwise provided for herein, on the Effective Date, all promissory notes, instruments, indentures, agreements, or other documents evidencing, giving rise to, or governing any Claim against Debtor shall represent only the right, if any, to participate in the distributions contemplated by this Plan. All shares, instruments or other evidences of any Interest in Class 7 that constitute Interests in Debtor shall be cancelled as of the Effective Date.

**10.13.  Preservation of Insurance.** Debtor's release from and payment of Claims as provided in the Plan shall not diminish or impair the enforceability of any insurance policy that may cover Claims against Debtor (including, without limitation, its officers or directors) or any other Person or Entity.

**10.14. Cramdown.** To the extent any Impaired Class of Claims entitled to vote on the Plan votes to reject the Plan, Debtor reserves the right to request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to such Class.

**10.15. Governing Law.** Except to the extent that the Bankruptcy Code is applicable, and except as otherwise provided herein, the rights and obligations arising under the Plan shall be governed by and construed and enforced in accordance with the laws of the State of Kansas, without giving effect to rules governing the conflict of laws which would otherwise require the application of the law of another jurisdiction.

**10.16. Notices.** Any notice required or permitted to be provided under the Plan prior to the Effective Date shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

Prior to the Effective Date, if to Debtor:

> Daniel A. Flynn
> 1710 N. Duckcross Cove
> Wichita, KS 67206
> Tel: 316-204-8994
> Email: pbcdanf@gmail.com

with a copy to:

> Prelle Eron & Bailey, P.A.
> 301 N. Main St., Suite 2000
> Wichita, KS 67202
> Attn: David Prelle Eron
> Tel: (316) 262-5500
> Email: david@eronlaw.net

**10.17. Post-Effective Date Notice.** As of the Effective Date, there shall be a Post-Effective Date Limited Notice List. Persons on such Post-Effective Date Limited Notice List will be given notices of, and a right to object to, certain matters under the Plan (as described herein). Any Person desiring to be included in the Post-Effective Date Limited Notice List must (1) File a request to be included on the Post-Effective Date Limited Notice List and include thereon its name, contact person, address, telephone number, and email address, within thirty (30) days after the Effective Date, and (2) concurrently serve a copy of its request to be included on the Post-Effective Date Limited Notice List on the Liquidating Agent. On or before sixty (60) days after the Effective Date, the Liquidating Agent shall compile a list of all Persons on the Post-Effective Date Limited Notice List and File such list with the Bankruptcy Court and serve a copy of such list on the United States Trustee. The United States Trustee, counsel to White Oak, and the Trust Advisory Board shall be automatically included on the Post-Effective Date Limited Notice List and need not File a request to be included thereon.

**10.18. Saturday, Sunday or Legal Holiday.** If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such

payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**10.19.  Section 1146 Exemption.** Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the revesting, transfer or sale of any real or personal property of Debtor pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax or similar tax or fee.

**10.20.  Severability.** If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. In the event of any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan may, at Debtor's and/or the Committee's option, remain in full force and effect and not be deemed affected. However, Debtor reserves the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**10.21.  Headings.** The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

**10.22.  Acquired Assets**.  To the extent the Debtor or the Liquidating Trust or Liquidating Trustee receives any Acquired Assets or proceeds thereof, that party must within five business days turnover such property or proceeds to the Buyers.

**10.23. Preservation of Causes of Action, Excluding the Released Claims.** The Liquidating Agent shall retain all rights and all causes of action accruing to Debtor with respect to the Remaining Actions. Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan, including the release and exculpation provisions thereof, or the Confirmation Order shall be deemed to be a waiver or relinquishment of any such rights or causes of action. Nothing contained in this Plan, including the release and exculpation provisions thereof, or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense that Debtor has. Debtor shall have, retain, reserve, and the Liquidating Agent shall be entitled to assert, all such claims, causes of action, rights of setoff and other legal or equitable defenses that Debtor has as fully as if the Chapter 11 Case had not been commenced, and all of Debtor's legal and equitable rights respecting any claims, causes of action, rights of setoff and other legal or equitable defenses that are not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Case had not been commenced.  Provided that nothing in this Section or Plan, revives or undoes in any way any previous release or waiver approved by the Bankruptcy Court, including but not limited to those related to the Released Claims.

## ARTICLE XI
## CONFIRMATION REQUEST

Debtor hereby requests Confirmation of the Plan pursuant to sections 1129(a) and (b) of the Bankruptcy Code.

**CONTINENTAL AMERICAN CORPORATION**

By: */s/ Daniel A. Flynn*
Name: Daniel A. Flynn
Title: CEO

**PRELLE ERON & BAILEY, P.A.**

By: */s/ David Prelle Eron*
David Prelle Eron, #23429
301 N. Main St., Suite 2000
Wichita, KS 67202
Tel: (316) 262-5500
Email: david@eronlaw.net

*Attorneys for Debtor*

**EXHIBIT A**

**Liquidating Trust Agreement**

# LIQUIDATING TRUST AGREEMENT

## PREAMBLE

This Liquidating Trust Agreement (the "Trust Agreement") dated as of the Effective Date of the Plan (as defined below) between (i) Continental American Corporation, as Debtor, and (ii) Sharon Stolte, as Liquidating Trustee (in such capacity, together with her successors and assigns in such capacity, the "Liquidating Trustee"), is executed to facilitate the implementation of the *Chapter 11 Plan of Liquidation* of Debtor (the "Plan"), which, among other things, provides for the establishment of the Liquidating Trust (the "Trust") to retain and preserve assets for the benefit of the holders of Allowed Post-Closing Fee Claims and the White Oak Claim, in addition to the Allowed Claims in Classes 1-5 and Class 6 inclusive under the Plan. The Trust is being established in connection with the liquidation of the Debtor's assets.

## ARTICLE I
## DEFINITIONS

Unless otherwise defined below, all capitalized terms contained herein shall have the respective meanings as specified in the Plan or in the Bankruptcy Code as in effect on the Effective Date:

**1.1.** **Definitions.** As used herein, the following terms have the following meanings:

"Beneficial Interests" means the interests in the Liquidating Trust that are issued to Beneficiaries of the Liquidating Trust pursuant to this Trust Agreement.

"Beneficiaries" means, collectively, holders of, to the extent Allowed, Post-Closing Fee Claims, the White Oak Claim, Class 1 Other Fee Claims, Class 2 Administrative Claims, Class 3 Priority Tax Claims, Class 4 Other Priority Claims, and Class 6 General Unsecured Claims entitled to receive a distribution from the Liquidating Trust pursuant to the Plan and this Trust Agreement.

"Claims" means, collectively, the Allowed Claims under the Plan.

"Distribution" means the payment of Cash or transfer of property to the holders of Allowed Claims pursuant to the Plan.

"Distribution Date" means, with respect to all Claims, the date that is within ninety (90) days after the date on which the Liquidating Trustee determines in its sole and absolute discretion, that sufficient funds exist to (a) pay Allowed Claim of the highest priority of previously unpaid Claims and (b) deposit sufficient funds in the Distribution Reserve Account.

"Distribution Reserve Account" means an account established by the Liquidating Trustee to hold Cash reserved for the purpose of making Distributions to Disputed Claims if such Claims later become Allowed Claims. To the extent that the amount in the Distribution Reserve Account exceeds the amount necessary to pay the Allowed portion of originally Disputed Claims, that excess amount shall be redistributed pursuant to the Plan.

"Estate Property" means all rights, title, and interest in and to any property of every kind or nature owned by Debtor or the Estate as of the Effective Date, including generally all property covered and included by section 541.

"General Operating Account" means a separate trust account maintained by the Liquidating Trustee at a national banking association.

"Grantor" means Debtor.

"Liquidating Trust" means the Liquidating Trust created by this Trust Agreement.

"Liquidating Trustee" shall have the meaning set forth in the Preamble to this Trust Agreement.

"Quarterly Report" means an unaudited written report and account to be filed by the Liquidating Trustee with the Bankruptcy Court no later than thirty (30) days after the end of each quarter, and as soon as practicable after termination of the Liquidating Trust. This unaudited written report and account shall contain (a) the value of the Trust Assets and the amount of the Liquidating Trust's liabilities at the beginning and end of each such quarter or upon termination of the Liquidating Trust, as applicable; (b) all Distributions made by the Liquidating Trust during each such quarter or prior to terminating the Liquidating Trust; and (c) any action taken and deemed material by the Liquidating Trustee, in its sole and absolute discretion, in the performance of its duties under the Plan and the Liquidating Trust Agreement that has not previously been reported.

"Register" shall have the meaning set forth in Section 5.2 of this Trust Agreement.

"Trust Administrative Expenses" means all costs, expenses and fees, including, without limitation, all costs, expenses, and fees incurred by the Liquidating Trustee in employing attorneys, accountants, experts, consultants, advisors, investigators, or other professionals to represent or assist the Liquidating Trustee in carrying out the Liquidating Trustee's powers and duties under this Trust Agreement, incurred or reasonably estimated by the Liquidating Trustee in connection with (a) maintaining the Liquidating Trust and the Trust Assets, and (b) costs of compliance with applicable laws, and all sums payable hereunder to the Beneficiaries, Trust Advisory Board, and parties entitled to indemnification pursuant to this Trust Agreement. For the avoidance of doubt, Trust Administrative Expenses shall include the payment of fees and expenses required to maintain compliance with applicable law, including but not limited to the payment of fees as necessary to file tax returns for the Debtor (which may be necessary to avoid dismissal of the Chapter 11 Case) or the Liquidating Trust and the payment of statutory fees of the United States Trustee (incurred by the Debtor, as no such fees shall be incurred by the Liquidating Trust).

"Trust Advisory Board" means the committee to be formed to oversee the Liquidating Trustee, to be comprised as provided in Section 8.5 of this Trust Agreement.

## ARTICLE II
## ESTABLISHMENT OF TRUST

**2.1.    Declaration of Liquidating Trust.** To declare the terms and conditions of the Liquidating Trust and in consideration of the Plan's confirmation pursuant to the Bankruptcy Code, Debtor has executed this Trust Agreement and hereby absolutely transfers and assigns to the Liquidating Trust all of its right, title, and interest in and to the Trust Assets to have and to hold unto the Liquidating Trust forever, in trust nevertheless, under and subject to the terms and conditions set forth herein, for the benefit of the Beneficiaries.

**2.2.    Purpose.** The parties to this Trust Agreement hereby declare and agree that the Liquidating Trust is being established for the purpose of liquidating the Trust Assets and distributing the proceeds of such liquidation to the Beneficiaries, in accordance within the meaning of sections 671 *et seq.* of the Internal Revenue Code, with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust shall not be deemed a successor-in-interest of Debtor for any purpose other than as specifically set forth herein. The Liquidating Trust is intended to qualify as a "grantor trust" for federal income-tax purposes and, to the extent permitted by applicable law, state and local income-tax purposes, with the Beneficiaries treated as grantors and owners of the Liquidating Trust.

**2.3.    Liquidating Trustee's Acceptance.** The Liquidating Trustee accepts its appointment as the Liquidating Trustee and the obligations and duties imposed on it by this Trust Agreement. The Liquidating Trustee agrees to observe and perform those obligations and duties subject to the terms and conditions set forth herein.

**2.4.    Title to Trust Assets.** From and after the Effective Date, pursuant to, and at such times set forth in, the Plan, title to and all rights and interests in the Trust Assets shall be transferred to the Liquidating Trust free and clear of all liens, Claims, encumbrances or interests of any kind in such property of any other Person (including all liens, Claims, encumbrances or interests of creditors of, or holders of Claims against or Interests in Debtor) in accordance with sections 1123, 1141 and 1146(a) of the Bankruptcy Code, except as otherwise expressly provided for in the Plan, and the Liquidating Trustee, on behalf of the Liquidating Trust, shall receive the Trust Assets when they are transferred to the Liquidating Trust under the Plan. The transfer of the Trust Assets to the Liquidating Trust by Debtor is made for the benefit and on behalf of the Beneficiaries. Upon the transfer of the Trust Assets, the Liquidating Trust succeeds to all right, title and interest of Debtor and the Estate in the Trust Assets and Debtor and the Estate will have no further right or interest in or with respect to the Trust Assets or this Liquidating Trust.

**2.5.    Reporting of Transfer of Trust Assets.** For United States federal and applicable state income tax purposes, the transfer of the Trust Assets to the Liquidating Trust pursuant to, and in accordance with, the Plan shall be deemed to be, and shall be reported as, a disposition of the Trust Assets directly to, and for the benefit of, the Beneficiaries, for all purposes of the Internal Revenue Code (including, but not limited to, sections 61(a)(12), 483, 1001, 1012 and 1274), as provided for in the Plan in satisfaction of the Allowed Claims held by such Beneficiaries, immediately followed by a contribution of the Trust Assets by the Beneficiaries to the Liquidating Trust in exchange for the Beneficial Interests of the Beneficiaries. Upon the transfer of the Trust Assets to the Liquidating Trust, neither Debtor nor the Estate will have any further interest in or

3

with respect to the Trust Assets or the Liquidating Trust. The Beneficiaries will be treated as the grantors and deemed owners of the Liquidating Trust.

**2.6.    Reservation of Bankruptcy Rights.** To the full extent permitted by law, and without excluding or limiting other rights transferred to the Liquidating Trust, all rights under the Bankruptcy Code (a) are preserved for the benefit of the Liquidating Trust and its Beneficiaries and (b) may be exercised by the Liquidating Trustee subject to the provisions hereof.

**2.7.    Preservation of Privileges.** Debtor shall not be deemed to have transferred to the Liquidating Trustee any rights of Debtor or the Estate (including the Estate after the Confirmation Date) to hold, control, exercise, or waive any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) (collectively, the "Privileges"). All such Privileges shall remain in the Debtor or its representatives, as applicable, to the fullest extent permitted by law. The Liquidating Trust and Liquidating Trustee are not the successor in interest to the Debtor, but only the holder, recipient, and transferee of the Trust Assets.  The foregoing notwithstanding, the Debtor shall cooperate with the Liquidating Trustee to provide such information and documentation as is necessary or appropriate to the Liquidating Trustee's responsibilities hereunder, including providing any materials or communications necessary for prosecution of the Remaining Actions.

**2.8.    <u>No Funding of the Liquidating Trust by White Oak or Buyers</u>.** <u>For the avoidance of doubt, White Oak and Buyers shall not be liable, obligated or responsible for funding any reserves of the Liquidating Trust or for any fees, costs or expenses of the Liquidating Trustee, the Liquidating Trust, the Advisory Trust Board or any of their professionals, agents or any other person or entity hired by any of them.</u>

**2.9.    No Assumption of Liabilities.** The Liquidating Trustee, on behalf of the Liquidating Trust, shall receive the Trust Assets and agrees that all Trust Assets are being transferred, assigned and conveyed to the Liquidating Trust subject to no liabilities of Debtor or the Estate.

**ARTICLE III**
**LITIGATION**

**3.1.    Prosecution of Remaining Actions, Defense of Counterclaims, and Settlements Thereof.**

      (a)    The Liquidating Trustee shall be empowered to prosecute and settle any and all Remaining Actions.

      (b)    The Liquidating Trustee may settle any Remaining Actions in accordance with this Trust Agreement and the Plan.

**3.2.    Status of Liquidating Trustee.** The Liquidating Trustee shall be the "Estate Litigation Claims Representative" as the sole authorized representative of the Estate from and after the Effective Date within the meaning of sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code for purposes of administrating, investigating, litigating, and settling, the Remaining Actions, and with respect thereto shall have all the rights and powers of Debtor and the

4

Estate as provided for in the Bankruptcy Code with respect to the Liquidating Trust and the Trust Assets in addition to any rights and powers granted in this Trust Agreement and in the Plan. The Liquidating Trustee shall be a party in interest as to all matters relating to the Trust Assets over which the Bankruptcy Court has jurisdiction.

### 3.3. Retention of Attorneys, Accountants, and Other Professionals.

(a)     The Liquidating Trustee may retain such law firms as counsel to the Liquidating Trust as the Liquidating Trustee may select to address Claims, prosecute Remaining Actions, and to perform such other functions as may be appropriate in furtherance of the intent and purpose of this Trust Agreement.

(b)     The Liquidating Trustee may retain such other experts, advisors, consultants, or other professionals as the Liquidating Trustee may deem necessary or appropriate to assist the Liquidating Trustee in carrying out its powers and duties under this Trust Agreement.

(c)     The Liquidating Trustee may commit the Liquidating Trust to and provide such professional persons or entities compensation and reimbursement from the Trust Assets for services rendered and expenses incurred. The Liquidating Trustee shall make all reasonable and customary arrangements for payment or reimbursement of such compensation and expenses of the professionals (including, without limitation, negotiating schedules of payments, contingency fees, consenting to the withdrawal of professionals for non-payment of their fees, providing for substitution of professionals, etc.). The Liquidating Trustee shall pay compensation and expenses due to professionals from the Trust Assets as Trust Administrative Expenses.

### 3.4. Exoneration and Protection.

(a)     Third parties dealing with the Liquidating Trust shall look only to the Trust Assets to satisfy any liability incurred by the Liquidating Trust or the Liquidating Trustee to such parties. Neither the Liquidating Trustee nor any Liquidating Trust Beneficiary shall be individually or personally liable to any third party for any expense, claim, damage, loss, obligation, or liability of or incurred by the Liquidating Trust or incurred in connection with the administration of the Liquidating Trust or by reason of this Trust Agreement or any action taken hereunder or as a result hereof.

(b)     In engaging in any activity or transaction, the Liquidating Trustee shall conduct the operations of the Liquidating Trust in such a manner as to protect the Beneficiaries against any liability for liabilities of the Liquidating Trust.

(c)     The Liquidating Trustee and each member of the Trust Advisory Board shall be entitled to be indemnified by, and receive reimbursement from, the Trust Assets for any expense, claim, damage, loss, obligation, or liability of or to which the Liquidating Trustee or such Trust Advisory Board member may be subject by reason of this Trust Agreement or any action taken hereunder or as a result hereof.

5

The benefits of this Section 3.4(c) shall extend on the same terms to each officer and director of, and each person (if any) that controls, any such indemnified party. The foregoing notwithstanding, no Trust Advisory Board member is authorized to incur expenses subject to such reimbursement requirement unless explicitly stated herein or authorized by the Liquidating Trustee in writing.

## ARTICLE IV
## GENERAL POWERS, RIGHTS, AND OBLIGATIONS OF THE LIQUIDATING TRUSTEE

**4.1.    General Powers.** The Liquidating Trustee shall be vested with all the power and authority pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. In all circumstances, when dealing with the Trust Assets, the Liquidating Trustee shall act as the fiduciary of the Beneficiaries.

**4.2.    Duties of the Liquidating Trustee.** In particular, and without limitation, the Liquidating Trustee shall do the following:

(a)    carry out the terms of the Plan with respect to payments of the Beneficiaries and the Liquidating Trust;

(b)    accept the Trust Assets transferred and provided to the Liquidating Trust pursuant to the Liquidating Trust Agreement and the Plan;

(c)    pay Unimpaired and Impaired Claims as provided in the Plan and this Trust Agreement;

(d)    file any and all tax returns with respect to the Debtor or the Liquidating Trust and pay taxes properly payable by the Liquidating Trust, if any;

(e)    pay the fees, costs and expenses of the Liquidating Trust and Trust Advisory Board (if otherwise allowable herein) incurred after the Effective Date (without the necessity of Bankruptcy Court approval) including any insurance insuring the Liquidating Trustee or the Trust Advisory Board for the Trust Assets as provided in the Plan and this Trust Agreement;

(f)    perfect and secure its right, title and interest to any and all Trust Assets;

(g)    act as custodian of the Trust Assets and liquidate and reduce such assets to Cash at such times as the Liquidating Trustee deems appropriate to accomplish the purpose of the Liquidating Trust, in accordance with the Plan and this Trust Agreement;

(h)    prosecute objections to Claims in its name or the name of Debtor as the Liquidating Trustee deems appropriate, subject to the approval of the Trust Advisory Board;

(i)    pursue Avoidance Actions and other Remaining Actions and claims of the Estate pursuant to this Trust Agreement and the Plan, including, without limitation,

6

analyzing, resolving and, if necessary, prosecuting all known claims and Remaining Actions that the Estate may have against third parties as the Liquidating Trustee deems appropriate, subject to the approval of the Trust Advisory Board, excluding prosecution of any Released Claims[1];

(j)      enter into and consummate agreements to liquidate the Trust Assets and such other agreements as the Liquidating Trustee deems appropriate;

(k)      enforce contract rights in favor of the Liquidating Trust as the Liquidating Trustee deems appropriate;

(l)      enter into modifications or terminate existing contracts as the Liquidating Trustee deems appropriate;

(m)      reject any unexpired leases and executory contracts, in accordance with the Plan;

(n)      make any and all distributions from the Trust Assets subject to the reservation of adequate funds, to holders of unpaid Allowed Claims as they become Allowed and to holders of Allowed Interests in accordance with the terms of the Plan and this Liquidating Trust Agreement;

(o)      comply with all applicable laws and file any returns or audits required by federal and state law or regulation;

(p)      pay amounts owed to the Office of the United States Trustee by Debtor when due;

(q)      in the event that the Liquidating Trustee determines that the Beneficiaries or the Liquidating Trust may, will or have become subject to adverse tax consequences, take such commercially reasonable actions that will, or are reasonably intended to, alleviate such adverse tax consequences;

(r)      take any and all necessary actions as it shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations section 301.7701-3 (but not a publicly traded partnership under Tax Code section 7704), including, if necessary, creating or merging in to a Kansas limited liability partnership or limited liability company that is so classified, in the

---

[1] Buyers shall receive all of the net proceeds of all Avoidance Actions, up to a total amount of Five-Hundred Twenty-Five Thousand ($525,000.00) Dollars (the "Buyer Net Proceeds"), without setoff or reduction. Once Buyers shall have been irrevocably paid in full the Buyer Net Proceeds from the Avoidance Actions, then the two members of the Liquidating Committee appointed by Buyers shall resign and cease to be members, leaving only the Estate Representative. The net proceeds thereafter recovered from the Avoidance Actions shall be for the benefit of Debtor's Bankruptcy estate, with all proceeds to be distributed in accordance with applicable Bankruptcy Law, as may be subsequently determined by the Bankruptcy Court and/or a confirmed Chapter 11 Plan, except that no such proceeds from Avoidance Actions shall be paid to White Oak or the Buyers, other than the Buyer Net Proceeds.

event that the Liquidating Trust shall fail or cease to qualify as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d);

(s)     request any appropriate tax determination, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(t)     prepare the annual and final reports regarding the Liquidating Trust in accordance with the terms of the Plan and this Trust Agreement;

(u)     consult with and report to the Trust Advisory Board;

(v)     in its capacity as Liquidating Agent under the Plan, and in accordance with the Plan and applicable non-bankruptcy law, dispose of in accordance with applicable law or take such steps as may be necessary or appropriate to file with governmental or regulatory authorities any and all necessary documentation or filings in connection with the wind down and dissolution of Debtor and any non-debtor subsidiaries and branches; and

(w)     take any and all other actions that may be necessary and appropriate to accomplish the purpose of and carry out the provisions of this Trust Agreement and the Plan, including, without limitation, retaining and maintaining the books and records of Debtor and making such books and records available to other parties in interest, upon reasonable request.

**4.3.     Reserve Accounts.**

(a)     The Liquidating Trustee shall maintain separate reserve accounts in accordance with the Plan.

(b)     The Liquidating Trustee shall make any payments to the Unimpaired Claims through the reserve accounts as required under the Plan.

(c)     The Liquidating Trustee shall make distributions to the Beneficiaries as of the Initial Distribution Date and each Subsequent Distribution Date, subject to the reservation of adequate funds, through reserve accounts as required under the Plan.

(d)     The Liquidating Trustee, in consultation with the Trust Advisory Board, shall pay Trust Administrative Expenses from the Trust Expense Reserve required to be maintained under the Plan and distribute any remaining balance in the Trust Expenses Reserve in accordance with the Plan.

**4.4.     Records to be Kept and Reports to be Filed by the Liquidating Trustee.** The Liquidating Trustee shall maintain good and sufficient records of receipts, disbursements, and reserves of the Liquidating Trust. Such books and records shall be open to inspection at reasonable times upon reasonable request by any Liquidating Trust Beneficiary. Not later than thirty (30) days after the end of each quarter, and as soon as practicable after termination of the Liquidating Trust, the Liquidating Trustee shall file with the Bankruptcy Court a Quarterly Report.

**4.5.** **Limitations on the Liquidating Trustee.** Notwithstanding anything contained herein to the contrary, the Liquidating Trustee shall not conduct any trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. The Liquidating Trustee shall, on behalf of the Liquidating Trust, hold the Liquidating Trust out as a trust in the process of liquidation and not as an investment company. The Liquidating Trustee shall not engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations section 301.7701-4(d) while the Liquidating Trust qualifies as a liquidating trust, provided, however, that if the Liquidating Trust (or a Kansas limited liability or limited liability partnership into which it shall be converted) shall be classified as a partnership for federal tax purposes under Treasury Regulations 301.7701-3, the foregoing restrictions shall not apply. The Liquidating Trustee shall not become a market-maker for the Beneficial Interests or otherwise attempt to create a secondary market for the Beneficial Interests. The Liquidating Trustee shall be restricted to the liquidation of the Trust Assets on behalf, and for the benefit, of the Beneficiaries and the distribution and application of assets of the Liquidating Trust for the purposes set forth in this Trust Agreement, the Plan and the Confirmation Order, and the conservation and protection of the assets of the Liquidating Trust and the administration thereof in accordance with the provisions of this Trust Agreement, the Plan, and the Confirmation Order.

## ARTICLE V
## RIGHTS, POWERS, AND DUTIES OF LIQUIDATING TRUST BENEFICIARIES

**5.1.** **Identification of Beneficiaries; Allocation of Interests.**

(a) <u>Trust Beneficiaries</u>. In accordance with the Plan, the Beneficiaries of the Liquidating Trust shall be the holders of the Allowed Post-Closing Fee Claims, White Oak Claim, Class 1 Other Fee Claims, Class 2 Administrative Claims, Class 3 Priority Tax Claims, Class 4 Other Priority Claims, and Class 6 General Unsecured Claims entitled to receive a distribution from the Liquidating Trust pursuant to the Plan and this Trust Agreement.

(b) <u>Allocation of Interests</u>. In accordance with the Plan, each Beneficiary entitled to receive a distribution from the Liquidating Trust pursuant to the Plan and the Liquidating Trust Agreement shall receive Beneficial Interests in the Liquidating Trust (which shall include any underlying or related economic or other interest within or as a part thereof), which Beneficial Interests solely shall entitle the holder thereof to the Distributions from the Trust Assets as provided for herein and in the Plan.

(c) <u>Interests Beneficial Only</u>. The ownership of a Beneficial Interest shall not entitle any Beneficiary to any title in or to the Trust Assets (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of the Trust Assets or to require an accounting or make any investment decision with respect to or in respect of the Trust Assets.

**5.2.** **Evidence of Beneficial Interest.** The Beneficial Interests shall not be evidenced by any certificate, security, receipt or other writing. The Liquidating Trustee shall at all times

maintain a register (the "**Register**") reflecting the names and addresses of all Beneficiaries and their respective Allowed Claims and amounts or percentages of beneficial ownership in Trust Assets.

**5.3.    Exemption from Registration.** The Parties hereto intend that the rights of the Beneficiaries arising under this Trust Agreement shall not be "securities" under applicable law. But none of the Parties hereto represents or warrants that such rights shall not be treated as securities by Persons not a party to this Trust Agreement, nor do the Parties represent or warrant that such rights, if treated as securities, are exempt from registration under applicable securities laws. Should such rights be treated as securities, however, the Parties intend for the exemption to registration provided section 1145 of the Bankruptcy Code to apply.

**5.4.    Transferability.** Except as otherwise expressly provided in this Trust Agreement or in the Plan, all Distributions from the Liquidating Trust on account of Allowed Claims shall be made (or in the case of Disputed Claims, reserved on behalf of) to the holders of such Claims as determined as of the Effective Date.

**5.5.    Distributions to the Beneficiaries**.

(a)    <u>Conditions to Distributions; Warranty of Entitlement</u>. No Liquidating Trust Beneficiary shall be entitled to a Distribution from the Liquidating Trust unless and until such Liquidating Trust Beneficiary provides to the Liquidating Trustee such Liquidating Trust Beneficiary's tax-identification number and any required federal tax forms.  Each and every Person who receives and accepts a Distribution from the Liquidating Trust on account of an Allowed Claim is deemed to have warranted to the Liquidating Trust and the Liquidating Trustee that such Person is the lawful holder of the Allowed Claim, such Person is authorized to receive the Distribution, and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can, in any way, defeat or modify the Person's right to receive the Distribution.

(b)    <u>Withholding Taxes</u>. Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law in relation to a Distribution from the Liquidating Trust shall be deducted from the Distribution and remitted by the Liquidating Trustee to the applicable taxing authority(ies). To the extent that this provision affects a Liquidating Trust Beneficiary, such Liquidating Trust Beneficiary shall provide to the Liquidating Trustee all such information as the Liquidating Trustee requires to comply with such law(s), and no Distribution shall be made to such Liquidating Trust Beneficiary unless and until such information is provided.

(c)    <u>Setoffs</u>. The Liquidating Trustee may set off against any Claim and the payments or Distributions to be made pursuant to the Plan in respect of such Claim, any claim, right, or Cause of Action of any nature whatsoever that Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee may have against the holder of such Claim; *provided, however,* that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtor,

or the Liquidating Trustee of any such claim, right, or Cause of Action that Debtor or the Estate may have against such holder. Such setoffs shall not be subject to the requirements or restrictions of Bankruptcy Code section 553 concerning mutuality or when the respective items subject to setoff under this section of the Plan arose but shall be subject to the defenses and rights of the non-Debtor party. The holder of a Disputed Claim that asserts a right of setoff will retain that right, subject to any defenses of Debtor, the Estate, or the Liquidating Trustee until the earlier of the time when (a) the Disputed Claim becomes Allowed, in whole or in part, and (b) the Claim is disallowed by a Final Order of the Bankruptcy Court. Nothing contained in the Plan will constitute or be deemed a waiver of any claim, right, or Cause of Action that Debtor, the Estate, or Liquidating Trustee may have against any Person in connection with or arising out of any Claim.

(d)     Forms of Distributions. Any Cash payment to be made from the Liquidating Trust pursuant to this Trust Agreement and the Plan may be made by check or wire transfer, at the option of the Liquidating Trustee in its sole and absolute discretion.

(e)     Delivery of Distributions. Subject to Bankruptcy Rule 9010, Distributions to holders of Allowed Claims shall be made pursuant to the Plan and at the address each such holder as set forth on the proofs of Claim filed by such holders (or at the last known address of such a holder, per the Schedules or records, if no proof of Claim is filed or if Debtor or the Liquidating Trustee has been notified in writing of a change of address). If any Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Liquidating Trustee, or its designee, is notified in writing of such holder's then-current address; at which time, all missed Distributions shall be made to such holder without interest. Amounts in respect of undeliverable Distributions made through the Liquidating Trustee shall be returned to the Liquidating Trustee until such Distributions are claimed. All claims for undeliverable Distributions shall be made in writing to the Liquidating Trustee on or before the first anniversary of the returned Distribution. After such date, all unclaimed property shall revert to the Liquidating Trustee or any successor thereto, and the Claim of any holder with respect to such property shall be discharged and forever barred. The Liquidating Trustee may employ or contract with other entities to assist in or make the Distributions required under the Plan. The Liquidating Trustee and its agents and professionals are under no duty to take any action to either attempt to locate any holder of a Claim or obtain an executed Internal Revenue Service Form W-9 from any holder of a Claim.

(f)     Fractional Cents; *De Minimis* Distributions. Notwithstanding any other provision of the Plan, payments of fractions of cents will not be made. Whenever any payment of a fraction of a cent under the Plan would otherwise be called for, the actual payment made will reflect a rounding down of the fraction to the nearest whole cent. The Liquidating Trustee will not make any payment of less than twenty-five dollars ($25.00) on account of any Allowed Claim, and the Liquidating Trustee shall hold any such payment in reserve.

(g) <u>Interim and Final Distributions to the Beneficiaries</u>. The Liquidating Trustee may make interim and final Distributions in accordance with the Plan.

(h) <u>Disputed Distributions</u>. If a dispute arises as to the rightful owner of an Allowed Claim, thereby calling into question the rightful recipient of a Distribution from the Liquidating Trust, the Liquidating Trustee may, in lieu of making the Distribution, either (i) deposit the Distribution into the Distribution Reserve Account until a determination is made as to the rightful owner of the Distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the Distribution, or (ii) interplead the Distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the disputed Distribution and the Persons making claim to such Distribution, reserving the right to assert any and all claims that the Liquidating Trust/Liquidating Trustee may have in relation to such interpleader action.

## ARTICLE VI
## GENERAL OBLIGATIONS OF THE GRANTOR

**6.1. Cooperation.**

(a) Grantor shall reasonably provide the Liquidating Trustee with such access to its books and records as the Liquidating Trustee shall reasonably require for the purpose of performing its duties and exercising its powers hereunder.

(b) Grantor shall use its reasonable efforts to cause its former employees to be reasonably available as witnesses and to be available for such depositions, interviews, and other proceedings as the Liquidating Trustee shall reasonably deem necessary or appropriate in connection with the performance of its duties. Grantor shall be entitled to reimbursement for reasonable out-of-pocket expenses incurred in connection with the foregoing as Trust Administrative Expenses.

(c) Grantor shall execute and deliver to the Liquidating Trustee such power of attorney and other documents satisfactory to the Liquidating Trustee to enable the Liquidating Trustee to file pleadings and execute any documents as necessary or appropriate to prosecute the Remaining Actions and defend any counterclaims.

(d) Neither White Oak, the Buyers or any of their counsel or agents shall be obligated or responsible for prosecution of any Remaining Actions, or the costs or expenses of any Remaining Actions. if Upon reasonable request by the Liquidating Trustee and provided that White Oak or Buyer is compensated for its reasonable costs and expenses in doing so, White Oak or Buyer shall employ reasonable commercial efforts to provide any of the requested readily accessible Debtor books and records in its current possession to the Liquidating Trustee, further provided neither White Oak nor Buyer shall be obligated to do an ESI production.

## ARTICLE VII
## THE LIQUIDATING TRUSTEE

**7.1.    Liquidating Trustee Not a Liquidating Trust Beneficiary.** The Liquidating Trustee may not be a Liquidating Trust Beneficiary.

**7.2.    Resignation.** The Liquidating Trustee may resign as such by executing and delivering an instrument in writing to the Trust Advisory Board. In the event of its resignation, the Liquidating Trustee shall give at least sixty (60) days' notice of such resignation to the Trust Advisory Board. Such resignation will not be effective until expiration of that sixty-day notice period; *provided, however,* that the Liquidating Trustee shall continue to serve as Liquidating Trustee after resignation until such resignation is effective under this paragraph or appointment of a successor Liquidating Trustee by the Bankruptcy Court, whichever occurs earlier.

**7.3.    Removal.** For cause shown, the Trust Advisory Board may remove and replace the Liquidating Trustee upon filing a motion with the Bankruptcy Court and after notice and hearing.

**7.4.    Appointment of Successor Liquidating Trustee.** The Liquidating Trustee must continue to serve as the Liquidating Trustee until its death or incompetency (in the case of a Liquidating Trustee that is a natural person), dissolution (in the case of a Liquidating Trustee that is a corporation or other entity), resignation, or removal by the Bankruptcy Court. Such appointment shall specify the date on which such appointment shall be effective. Every successor Liquidating Trustee appointed hereunder shall execute, acknowledge, and deliver to the Trust Advisory Board and to the retiring Liquidating Trustee an instrument accepting such appointment, and thereupon such successor Liquidating Trustee, without any further act, deed, conveyance, shall become vested with all the rights, powers, trusts, and duties of the retiring Liquidating Trustee.

**7.5.    Trust Continuance.** The death or incompetency (in the case of a Liquidating Trustee that is a natural person), dissolution (in the case of a Liquidating Trustee that is a corporation or other entity), resignation, or removal of the Liquidating Trustee shall not operate to terminate the Liquidating Trust created by this Trust Agreement or to revoke any existing agency created pursuant to the terms of this Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee. In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall promptly (a) execute and deliver such documents, instruments, and other writings as may be requested by the Trust Advisory Board or reasonably requested by the successor Liquidating Trustee to effect the termination of the Liquidating Trustee's capacity under this Trust Agreement and the conveyance of the Trust Assets then held by the Liquidating Trustee to his successor; (b) deliver to the Trust Advisory Board or the successor Liquidating Trustee all documents, instruments, records, and other writings related to the Liquidating Trust as may be in the possession of the Liquidating Trustee; and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Liquidating Trustee.

**7.6.    Compensation.** To maximize the dollar amount of Trust Assets available for Distributions on account of Allowed Claims, the Liquidating Trustee shall be compensated as follows: $250/hour.  The hourly rate for the Liquidating Trustee's services, if any, as a professional employed by the Liquidating Trust may be different than the rate for services as Liquidating Trustee. In addition, the Liquidating Trustee shall be reimbursed 100% of all expenses incurred in

13

the fulfillment of its duties pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee may receive compensation and expense reimbursements on a quarterly basis at any time before the Liquidating Trust is terminated.

**7.7. Standard of Care; Exculpation.** The Liquidating Trustee shall perform the duties and obligations imposed on the Liquidating Trustee by this Trust Agreement with reasonable diligence and care under the circumstances. Along with its agents and representatives, the Liquidating Trustee shall not be personally liable, however, to the Liquidating Trust or to any Liquidating Trust Beneficiary except for their own acts that are judicially determined to be fraudulent or willful misconduct or gross negligence. Except as aforesaid, the Liquidating Trustee shall be defended, held harmless, and indemnified from time to time from the Trust Assets as a Trust Administrative Expense against any and all losses, claims, costs, expenses, and liabilities (including legal costs and expenses), and any costs of defending any action to which the Liquidating Trustee may be subject by reason of the Liquidating Trustee's execution in good faith of its duties under this Trust Agreement. The Liquidating Trustee's agents and representatives may be likewise defended, held harmless, and indemnified. The Liquidating Trustee may obtain for its benefit, the benefit of its agents and representatives, and the benefit of the Liquidating Trust, at the expense of the Liquidating Trust, as a Trust Administrative Expense, insurance against claims of liability, damage awards, and settlement.

**7.8. Reliance by Trustee.** The Liquidating Trustee may rely, and shall be fully protected personally in acting on, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that it has no reason to believe to be other than genuine and to have been signed or presented other than by the proper party or parties or, in the case of digital facsimile transmissions, to have been sent other than by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission, or receipt. In the absence of its willful misconduct or gross negligence, the Liquidating Trustee may rely as to the truth of statements and correctness of the facts and opinions expressed therein and shall be fully protected personally in acting thereon. The Liquidating Trustee may consult with legal counsel and shall be fully protected in respect of any action taken or suffered by it in accordance with the written opinion of legal counsel.

## ARTICLE VIII
## THE TRUST ADVISORY BOARD

**8.1. Trust Advisory Board.** On the Effective Date, a Trust Advisory Board shall be established and continue for the purpose of monitoring and overseeing: (a) the implementation of the Plan; (b) the Claims objection-and-resolution process; (c) the Distribution process, and (d) the pursuit and settlement of Remaining Actions. The Liquidating Trustee shall consult with the Trust Advisory Board on a quarterly basis or as otherwise agreed by the Liquidating Trustee and the Trust Advisory Board. The Trust Advisory Board shall continue to exist until such time as either the Trust Advisory Board deems it appropriate by a majority vote to dissolve itself or all members of the Trust Advisory Board resign; *provided, however,* that the Trust Advisory Board shall be dissolved no later than the date on which a Final Decree closing the Chapter 11 Case is entered.

14

**8.2.** **Approval of the Trust Advisory Board.** Notwithstanding anything in this Trust Agreement to the contrary, the Liquidating Trustee shall submit to the Trust Advisory Board for its review and prior approval the following matters and any other matters that expressly require the approval of the Trust Advisory Board pursuant to the terms of this Trust Agreement:

(a) Any proposed final settlement or disposition in connection with a Trust Asset that has an asserted value of less than $250,000 net of defenses, if any, which have been demonstrated to the reasonable satisfaction of the Liquidating Trustee; provided, that the Liquidating Trustee will be authorized and empowered to take such action without any further (i) action by the Trust Advisory Board or (ii) order of the Bankruptcy Court, after at least four (4) Business Days' written notice to the members of the Trust Advisory Board and either (A) no objection is received from any member of the Trust Advisory Board or (B) subject to a further written agreement between the Liquidating Trustee and the Trust Advisory Board;

(b) Any proposed final settlement or disposition in connection with the litigation or any other Trust Asset that has an asserted value of equal to or more than $250,000 net of defenses, if any, which have been demonstrated to the reasonable satisfaction of the Litigation Trustee;

(c) Any transaction to sell, assign, transfer or abandon any other Trust Assets in which the amount of the transaction exceeds such amount as may be determined from time to time by the Trust Advisory Board;

(d) Determinations of the amounts of the Trust Assets available for distribution;

(e) Determinations of the date and amount of all distributions made;

(f) Any determinations to retain attorneys, accountants or other professionals, excepting only the retention of the Liquidation Trustee or its firm as a professional;

(g) Any determinations to initiate lawsuits or proceedings other than objections to disputed claims;

(h) Any actions that would give rise to or alleviate adverse tax consequences to the Liquidating Trust or the Beneficiaries; and

(i) The reports and budgets described in Section 4.4 of this Trust Agreement.

**8.3.** **Review of Books and Records.** The Trust Advisory Board shall have the right to review all books and records maintained by the Liquidating Trustee in the administration of the Liquidating Trust, except such records as may be subject to a protective order or confidentiality agreement that would prohibit such Trust Advisory Board member or members from accessing. Upon reasonable request, the Liquidating Trustee shall make all such books and records available to the Trust Advisory Board.

15

**8.4.     Resignation.** A member of the Trust Advisory Board may resign in such capacity by executing and delivering an instrument in writing to the Liquidating Trustee and each of the remaining members of the Trust Advisory Board evidencing such resignation.

**8.5.     Initial Members.** The initial members of the Trust Advisory Board shall be (a) Joe Zupan as Owner of Hillsdale Development Co. (the "Estate Representative") and (b) David Montiel and Michael Fortino (collectively, the "Buyer Representatives"). Once the White Oak Claim is irrevocably paid in accordance with the terms of the Remaining Actions Proceeds Waterfall, the Buyer Representatives shall resign and cease to be Trust Advisory Board members.

**8.6.     Successor Members.** In the event of the death or resignation of a member of the Trust Advisory Board, the remaining members of the Trust Advisory Board shall have the authority to, and shall promptly, appoint a successor member to the Trust Advisory Board (who is or is serving as the representative of a Person that is a Beneficiary). Upon the appointment of a successor member to the Trust Advisory Board, the Trust Advisory Board shall promptly notify the Liquidating Trustee of such appointment. In the event of an inability to find a successor member willing to serve and the remaining members are less than three, then the Trust Advisory Board shall be disbanded.

## ARTICLE IX
## RETENTION OF JURISDICTION

**9.1.     Bankruptcy Court Jurisdiction.** The Bankruptcy Court shall retain original but not exclusive jurisdiction over the Remaining Actions and counterclaims, the Liquidating Trust, the Liquidating Trustee, and the Trust Assets, including, without limitation, the determination of all controversies and disputes arising under or in connection with this Trust Agreement.

## ARTICLE X
## TERMINATION

**10.1.     Duration of Liquidating Trust.** The Liquidating Trust shall continue to exist until the Liquidating Trustee has (a) administered all Trust Assets and made a final Distribution to the Beneficiaries, and (b) performed all other duties required by the Plan and this Trust Agreement.

## ARTICLE XI
## MISCELLANEOUS

**11.1.     Notices.** All notices, requests, or other communications required or permitted to be made in accordance with this Trust Agreement shall be (i) in writing, (ii) served on the parties at the addresses set forth below by certified mail, return-receipt requested, hand delivery, overnight delivery, first-class mail, or fax transmission, and (iii) deemed to have been given or made when actually delivered or received:

If to the Liquidating Trustee, at:

Sharon Stolte
Sandberg Phoenix & von Gontard, P.C.
4600 Madison Avenue, Suite 1000

Kansas City, MO 64112
Tel: (816) 627-5543
Email: sstolte@sandbergphoenix.com

If to the Trust Advisory Board, at:

Hillsdale Development Co.
Joe Zupan, Owner
P.O. Box 187
Ashland, OH, 44805
Tel: (419) 651-1200
Email: Hillsdale@zoominternet.net

If to the Beneficiaries, then to such Persons at their respective addresses set forth in the Register.

Any Person may change the address at which it is to receive notices under this Trust Agreement by furnishing written notice in accordance with the provisions of this Section 11.1 to the Liquidating Trustee.

**11.2. Effectiveness.** This Trust Agreement shall become effective on the Effective Date.

**11.3. Counterparts.** This Trust Agreement may be executed in one or more counterparts, each of which shall be deemed an original but which together shall constitute but one and the same instrument.

**11.4. Governing Law.** This Trust Agreement shall be governed by, construed under, and interpreted in accordance with the laws of the State of Kansas, without regard to its internal choice of law rules.

**11.5. Headings.** Sections, subheadings, and other headings used in this Trust Agreement are for convenience only and shall not affect the construction of this Trust Agreement.

**11.6. Severability.** Any provision of this Trust Agreement which is prohibited or unenforceable in any jurisdiction shall not invalidate the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable any such provision in any other jurisdiction.

**11.7. No Waiver.** The failure or delay on the Liquidating Trustee's to exercise any right or remedy conferred on his pursuant to this Trust Agreement shall not affect such right or remedy, nor shall it constitute the Liquidating Trustee's waiver of such a right or remedy. Similarly, the resort to one form of remedy by the Liquidating Trustee shall not constitute a waiver of any alternative remedies available to them under this Trust Agreement.

**11.8. Modification of Agreement.** This Trust Agreement may only be amended, modified or otherwise altered by an instrument in writing signed by each of the parties hereto and approved by the Bankruptcy Court.

17

**11.9. Successors.** This Trust Agreement shall bind and inure to the benefit of the Beneficiaries and the parties hereto and their respective successors and assigns; provided, however, that the benefits hereunder may not be assigned or otherwise transferred by any Liquidating Trust Beneficiary other than (a) to any relative, spouse, or relative of the spouse of such holder; (b) to any trust or estate in which such holder has a majority of the beneficial interest (excluding contingent interests); (c) to any corporation, partnership, or other organization in which such holder is the beneficial owner of a majority of the voting securities or equity interest, or which owns a majority of the voting securities or beneficial interest of such holder; and (d) upon the death or dissolution of such holder in accordance with the operation of law; provided, however, that any such transfer shall be effected in compliance with the Securities Act of 1933, as amended, and the rules and regulations of the Securities and Exchange Commission thereunder, and any other applicable federal or state securities law.

**11.10. Inconsistency with the Plan.** In the event of any inconsistency between the Plan and any provision of this Trust Agreement, the applicable terms of the Plan shall be controlling.

**IN WITNESS WHEREOF,** the parties hereto have executed this Trust Agreement or caused this Trust Agreement to be duly executed by their respective officers thereunto duly authorized as of the date first indicated above.

**CONTINENTAL AMERICAN CORPORATION**

By: */s/ Daniel A. Flynn*
Name: Daniel A. Flynn
Title: CEO

**LIQUIDATING TRUSTEE**

*/s/ Sharon Stolte*
Sharon Stolte